## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

SANJAY GUPTA, an individual,    )
    )
       Plaintiff,    )
    )    Case No. _____
    v.    )
    )
TERESA K. WOODRUFF, THOMAS  )
JEITSCHKO, SAMUEL L. STANLEY, )
JR., NICOLE SCHMIDTKE,    )
ALLISON TOWE, ANN AUSTIN,    )
and EMILY GERKIN GUERRANT,  )
current and former employees of   )
Michigan State University, sued in  )
his or her personal and official    )
capacities, jointly and severally,   )
    )
       Defendants.    )

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Sanjay Gupta, by and through his attorneys, Katten & Temple, LLP, for his Complaint against Defendants, states as follows:

## Introduction

Plaintiff Sanjay Gupta loyally served his alma mater, Michigan State University, as a tenured faculty professor and as the most successful and widely respected Dean of the Eli Broad College of Business in the history of the College until Defendants improperly and unjustifiably removed Gupta's appointment as Dean and endowed chair position based on false pretexts and intentionally defamed and stigmatized him with false statements.

1

Defendant Teresa Woodruff, then-Provost and now Interim President, orchestrated multiple violations of Gupta's due process rights, tortiously interfered with his contract and business relationship with MSU, and defamed him in a power scheme to ensure that Gupta would not be named successor to outgoing former President Samuel Stanley, Jr., and to enhance Woodruff's personal ambition to become President.  Defendants Stanley, Jeitschko, Schmidtke, Towe, Austin and Guerrant participated in violating Gupta's rights and defaming him.

The facts establish that Gupta did *not* violate any mandatory reporting policy, promptly acted to protect students and complied with published MSU Title IX policies (including as stated in a 2017 Jones Day Report published by MSU), and acted with integrity, transparency and professionalism at all times as Dean of the Eli Broad College of Business.

Unlike Defendants, Gupta has fully cooperated in good faith with the Board's investigation, and has sought to clear his name and obtain due process ever since he was surprised by the abrupt and public termination of his appointment as Dean on August 12, 2022, coupled with false and defamatory statements stigmatizing his good name and reputation. Despite Gupta's extensive efforts to air publicly the facts and to clear his name by attempting to work with Defendants and MSU's administration, those efforts have failed and he has no choice but to resort to judicial assistance by bringing his claims as set forth below.

## Jurisdiction and Parties

1.      This is an action for due process violations under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983; and for tortious interference and defamation under Michigan law.

2.      This Court has federal subject matter jurisdiction over Gupta's 42 U.S.C. §1983 claims pursuant to 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction over Gupta's state law claims pursuant to 28 U.S.C. §1367.

3.      Plaintiff Sanjay Gupta, Ph.D., is a tenured faculty member of Michigan State University ("MSU"). Gupta served as the Dean of the Eli Broad College of Business of MSU pursuant to his 2015 contract, which MSU renewed for another five-year term in 2020. Gupta's claims arise out of actions taken against him by Defendants for alleged failure to re-report intoxication of a college professor that had already been reported to MSU's Office of Institutional Equity ("OIE"), and other false allegations of purported leadership failures, including a purported failure to "investigate" a possible violation of MSU's Relationship Violence and Sexual Misconduct Policy under Title IX, 20 U.S.C. §1681, *et seq.*

4.      Defendant Teresa K. Woodruff is Interim President of MSU who joined MSU in August 2020 as the Provost and Executive Vice President of Academic Affairs, responsible for oversight of Dean Gupta. Woodruff reportedly left Northwestern University in 2020 two months after a petition by black, Latinx, Indigenous, LGBTQ+ and other students of marginalized identities called for her

3

removal. *See* https://dailynorthwestern.com/2020/05/07/campus/tgs-dean-teresa-woodruff-to-depart-for-msu-after-25-years-at-northwestern-leaving-behind-a-mixed-legacy/.

5.     Defendant Thomas D. Jeitschko is Interim Provost and Executive Vice President of Academic Affairs of MSU and formerly the Senior Associate Provost, responsible for assisting the Provost.

6.     Defendant Samuel Stanley, Jr., is the former President of MSU who resigned effective November 4, 2022. Stanley had responsibility for oversight of the Provost.

7.     Defendant Nicole Schmidtke is MSU's Title IX Coordinator, responsible for MSU's compliance with Title IX, including oversight and implementation of Title IX policies and grievance procedures and training.

8.     Defendant Allison Towe is MSU's OIE Civil Rights Investigator, responsible for investigating OIE reports.

9.     Defendant Ann Austin is the Interim Associate Provost and Associate Vice President for Faculty and Academic Staff Affairs, known as FASA, supervised by Defendants Woodruff and Jeitschko.

10.     Defendant Emily Gervin Guerrant is the Vice President and University Spokesperson, responsible for media and communications.

11.     All of the individual Defendants are sued both in their personal and official capacities.

12. The events at issue in this Complaint occurred in East Lansing, Michigan, and thus venue is proper in this District.

## Facts

## Sanjay Gupta's Successful MSU Leadership

13. Sanjay Gupta earned his Ph.D. from MSU, after earning a master of accountancy from Bowling Green State University, a bachelor of laws from Calcutta University in India, and a bachelor of commerce from the University of Mumbai.

14. After graduating from MSU's Ph.D. program, Gupta served at the W. P. Carey School of Business at Arizona State University, earning tenure and holding several position over his 17 years there, including the first Henry & Horne Professorship in Accountancy, Dean's Council of 100 Distinguished Scholars, and faculty director of the master of accountancy and information systems and the master of taxation programs.

15. Gupta returned to MSU to give back to his alma mater, joining the Broad College in 2007 as the Russell E. Palmer Endowed Professor of Accounting and chair of the Department of Accounting and Information Systems. He was appointed associate dean for the MBA and professional master's programs in July 2012. He served as the Eli and Edythe L. Broad Dean of the Broad College from 2015 until August 12, 2022.

16. As associate dean, Gupta instituted successful curricular innovations in the MBA and professional master's programs. the Weekend MBA program, and facilitated the launch of new master's programs in business analytics and

management, strategy, and leadership. Under Gupta's leadership, the average GMAT scores of entering students rose by 25 points, and the MBA program increased its position in global and national rankings.

17.     As the eleventh Dean of the Broad College, Gupta was highly successful. Collaborating with faculty, staff, students, alumni and other stakeholders, Gupta led the Broad College by initiating and implementing comprehensive strategic planning, aligned with MSU's strategic priorities and core values, enhancing recognition, reputation, and rankings of the Broad College and its people.

18.     Specifically, as Dean, Gupta championed five strategic themes: (1) digital transformation of business, (2) global mindset, (3) entrepreneurship and innovation, (4) ethics and integrity, and (5) diversity, equity and inclusion ("DEI"). Gupta's guiding principles for execution as Dean were "speedy action, commitment to excellence, continuous measurement, robust collaboration, and complete accountability and transparency."

19.     As Dean, Gupta outperformed his goals, achieving top 25 rankings overall in the undergraduate program with six Broad College programs ranked in the top 25 nationally, and top 20 among public universities for the MBA program. Under Gupta's leadership, the Broad College's research rankings, programs, facilities and services for students flourished.

20.     Gupta's strategic thinking and leadership extended more broadly university-wide. Under his vision, the Broad College is leading the first

comprehensive cross-college initiative to support entrepreneurship and innovation education at MSU.

21.     Gupta also led the Broad College's leadership role in the university-wide ethics initiative to create the MSU Ethics Institute to support curriculum development, research and scholarship.

22.     Also, as Dean, Gupta initiated significant DEI programs within the Broad College, including appointing a new tenure position of Associate Dean for DEI, and promoting women, minorities and other diverse backgrounds.

23.     Finally, Gupta, as a result of his efforts in leading the Broad College to recognition, ranking, research and academic success, was able to recruit and obtain significant donations to the Broad College and MSU, exceeding his capital campaign goals by 143% and obtaining the largest single donation ever to MSU.

24.     Not surprisingly, therefore, prior to Defendants' misconduct, Gupta was considered as a highly respected candidate to serve as the next President of MSU.

## Gupta's June 16, 2022, Review

25.     On or about June 16, 2022, Gupta met with then-Provost Woodruff for his annual review, which was very positive as Woodruff complimented Gupta on his success as Dean of the Broad College, including the rankings, research, the development of the MSU Ethics Institute, and Gupta's implementation and promotion of the Diversity, Equity and Inclusion Plan and with the Relationship Violence and Sexual Misconduct Plan.

26.     During that review, Woodruff asked Gupta about his future aspirations, and he told her that if asked, he would be happy to serve upon the conclusion of then-President Stanley's term.

### Defendants' Scheme to Violate Gupta's Rights and Stigmatize His Good Name to Eliminate Woodruff's Competition in Her Personal Pursuit of the Presidency

27.     Also on June 16, 2022, the OIE Title IX Director, Defendant Schmidtke, emailed an "early" notification to Gupta as Dean of the Broad College, the unit administrator for a professor who was the subject of the OIE reports on April 23, 2022, regarding the April 22, 2022, end-of-year MBA program event.

28.     MSU's Title IX policies and procedures provided that OIE was responsible for making an "early notification" of any OIE reports to Faculty and Academic Staff Affairs ("FASA"), which is part of the Office of the Provost.

29.     Defendant Schmidtke therefore sent her June 16, 2022, early notification email not only to the unit administrator (Dean Gupta), but also to FASA.

30.     As Dean, Gupta promptly arranged for his staff to contact FASA to seek guidance regarding and to collaborate as to next steps.

31.     The FASA employee promptly notified Defendant Jeitschko about the early notification of the Broad College professor.

32.     On or about Friday, June 17, 2022, and continuing on Monday, June 20, 2022, Defendant Jeitschko, Gupta, and others at OIE and FASA collaborated to send a notice to the professor.

33.     Gupta reminded FASA and OIE that the professor was leaving MSU as of June 30, 2022, as previously planned, and that the professor had not been interacting with students since the semester ended April 22, 2022.

34.     On or about June 20, 2022, Gupta spoke to OIE investigator Towe and voluntarily disclosed to her the limited information known to him, which was "intoxication" and "inappropriate" behavior told to him by his administrators and by the professor.

35.     On or about June 22, 2022, members of the Board of Trustees advised Defendant Stanley that they had lost confidence in his administration's handling of MSU's Title IX reporting process and asked him about possible successors. Stanley identified the three executive vice presidents who reported directly to him (which included Defendant Woodruff), and when asked to identify someone outside of his administration, he identified Gupta.

36.     Later that day on June 22, 2022, an OIE investigator contacted Gupta, purportedly for information "involving *a* potential mandatory reporting failure," but OIE did not inform Gupta at that time that he allegedly had failed to report anything, or that anyone had filed a report with OIE alleging any mandatory reporting violation as to Gupta.

37.     OIE never issued any written notice to Gupta of an alleged OIE report filed as to him.

38.     Gupta fully and timely disclosed all information he had, fully cooperated with OIE, and was fully transparent at all times.

39.     Gupta had no duty to re-report anything that had already been reported to OIE by his direct reports as a possible RVSM Policy issue under MSU's clearly established policies, including the policies published by MSU in the 2017 Jones Day Report of alleged sexual assault within MSU's football program. Attached as Exhibit 1, and incorporated into this Complaint, is a true and correct copy of the 2017 Jones Day Report published by MSU that clearly sets forth MSU's policies that no administrator has a duty to "re-report" a possible RVSM matter that has been reported by another person.

40.     Moreover, MSU's OIE training of administrators expressly confirms that administrators who become aware of OIE reports of possible RVSM Policy matters that have been made by those under the administrators' supervision do not have any duty to "re-report" under the mandatory reporting policy.

41.     No administrator other than Gupta has been removed or disciplined as a result of a failure to "re-report" to OIE.

42.     In addition, the 2017 Jones Day Report clearly establishes that all persons are *prohibited* from making any inquiries or investigating any possible RVSM matter, particularly once that matter has been reported to OIE for investigation. Indeed, MSU disciplined an employee for making inquiries and investigating allegations of possible sexual misconduct as reported in the 2017 Jones Day Report.

43.     Gupta fully complied with MSU's published RVSM reporting policies.

### The Facts About the MBA Professor and OIE Reporting

44.     On Friday, April 22, 2022, classes for the MBA program ended for the semester. The MBA program held an end-of-the-year event that evening.

45.     The average age of the graduate students in the MBA program is approximately 28 years old. Students in the successful MBA program were 100% employed in internships and full-time employment positions, and promptly left campus at the end of the semester for those opportunities.

46.     Gupta did not attend nor have the MBA program end-of-the-year event on his calendar.  He traveled out of town for a business conference from April 23, 2022, returning later on April 26, 2022.

47.     While Gupta was traveling on April 26, he received a phone call from one of his administrative personnel in the MBA program who told Gupta that one or more students had informed another MBA program administrator that a professor had become intoxicated at the end-of-the-year event and had acted "inappropriately." The first administrator told Gupta the matter was being reported to OIE.

48.     Gupta subsequently spoke to the second administrator who told Gupta the professor's name and repeated that one or more students had said that the professor had become intoxicated and acted "inappropriately" and was dancing. The second administrator told Gupta that he had reported or was reporting the matter to OIE.

49.     Neither administrator observed any of the alleged conduct they reported to OIE.

50.     At no time did either administrator inform Gupta that there were any allegations of any relationship violence, stalking, or any sexual misconduct.

51.     Gupta immediately considered the safety of students on April 26, taking into account that the semester had ended, students had left campus for their internships, and thus the professor would not have any potential contact with any students.

52.     In addition, when Gupta's administrator told Gupta the name of the professor who was being reported to OIE in late April 2022, Gupta was not aware of any prior allegations of any OIE issues concerning that professor. Gupta subsequently confirmed that the professor had never had any prior allegations or possible issues concerning any potential OIE issues during the professor's employment at MSU.

53.     Independent of and in advance of the April 22, 2022, event, in March 2022, the professor had previously notified Gupta and others at MSU that he was leaving MSU for a position at another university due to personal reasons. Gupta had already taken steps beginning in March 2022 to replace this professor, who was expected to resign effective June 30, 2022.

54.     In compliance with MSU's policies, including but not limited to the 2017 Jones Day Report, MSU's Title IX training, , and his prior OIE compliance, including explicit guidance from MSU's general counsel's office on the RVSM Policy, Gupta did not "re-report" the intoxication and "inappropriate" behavior told to him by his administrators because that information had already been reported to OIE.

55.     OIE has confirmed that it received multiple reports on April 23, 2022.

56.     Nor did Gupta commence any investigation or inquiry of the professor or any other person, in compliance with MSU's policies and practices, including but not limited to the 2017 Jones Day Report, and all of the Title IX training by MSU that Gupta received.

57.     Gupta promptly acted to consider student safety and welfare and properly concluded that no student was at risk after the end of the semester.

58.     Gupta promptly directed the MBA administrators to implement procedures for serving alcohol at any future events attended by students to control and limit alcohol consumption by a ticket or token process and to require a responsible faculty member or administrator to remain at any event site until the end of the event and students had left.

59.     On or about May 4, 2022, at the conclusion of a previously scheduled, regular meeting with the professor at issue regarding transition matters, the professor told Gupta that he was sorry he had become intoxicated.

60.     Again, Gupta did not investigate or inquire further of the professor as directed by MSU's Title IX policies and procedures, including in the 2017 Jones Day Report and in all of MSU's Title IX training, because the intoxication had already been reported to OIE for investigation.

### OIE's Flawed Processes

61.     MSU's flawed Title IX and OIE investigation processes are widely reported.

62. For example, on November 4, 2022, the MSU Board of Trustees published a report by the Honigman law firm that found that the administration had violated the requirement to certify all Title IX violations. The Honigman firm found that there were significant breakdowns in MSU's Title IX reporting processes.

63. The MSU Board of Trustees Vice Chair and Chair of the Audit, Risk and Compliance Committee of the Board stated publicly "The investigation's findings confirm that little, if anything, was done by the President to address the certification concerns raised by the Board for over two years." *See* https://www.wilx.com/2022/11/05/law-firm-determines-msu-did-not-properly-certify-title-ix-violations-2021/.

64. OIE's Title IX processes failed in this matter.

65. In or about June and July 2022, OIE falsely accused one of the administrators who had reported the April 22, 2022 incident to OIE and who had told Gupta he was doing so, of allegedly violating the mandatory reporting policy.

66. OIE later admitted that its accusation was untrue because the administrator had in fact reported to OIE in April 2022 as that administrator had told Gupta, but OIE had failed to "upload[ the report] into our system."

67. OIE failed to give proper written notice and due process to Gupta regarding an alleged OIE reporting issue concerning Gupta's alleged failure to re-report.

68.     Unbeknownst to Gupta, OIE concluded that he had purportedly failed to report "sexual misconduct." Gupta, however, never was notified of any "sexual misconduct."

69.     Instead, as detailed above, Gupta was notified, in his capacity as Dean, by two of his administrative reports, that they had been informed of "intoxication" and "inappropriate" behavior at an event, and that they were reporting to OIE. Gupta had no duty to re-report under MSU's policies.

70.     Nor was there any duty to re-report when the professor subsequently told Gupta he was sorry he had been intoxicated.

71.     No MSU Title IX reporting policy requires reporting of "intoxication." Rather, the RVSM Policy requires reporting of relationship violence, sexual misconduct, and stalking.

72.     In any event, on June 2022 Gupta reported to OIE what the professor had said. After Gupta spoke with OIE in June 2022, however, OIE did not follow up with him.

73.     Despite all of the multiple reports and information received, OIE never bothered to open a formal investigation of the professor until July 28, 2022.

74.     On or about August 2, 2022, while Gupta was commencing an international business trip from August 2 to August 11, 2022, Gupta received an email from OIE with a written report dated August 8, 2022, falsely stating he had failed to report "sexual misconduct" that his two administrators had purportedly told him about in April 2022.

75.     The August 8, 2022, OIE report recommended that Gupta take a refresher training course on mandatory RVSM reporting training. The August 8, 2022, OIE report did not recommend any other discipline.

76.     Gupta had to contact OIE multiple times for the recommended refresher training course.  He promptly completed the 15-minute course which did not address re-reporting or any policies that would have required him to have reported anything to OIE regarding the professor at issue.

77.     Upon receipt of the August 2 email, Gupta saw that the OIE August 8 report was untrue and misstated the facts, including what he told OIE in June 2022. Gupta further noted that the OIE August 8 report was inconsistent on its face and contrary to public MSU Title IX policies, including but not limited to the 2017 Jones Day Report.

78.     Gupta promptly sent the August 2 email to then-Provost Woodruff to notify her and to arrange a meeting to discuss the OIE report flaws. Because Gupta was en route to the airport for his international business trip, he could not meet until after he returned the evening of August 11, 2022.

79.     Upon his return on August 11, 2022, Gupta learned that Defendant Woodruff had scheduled an 8:00 a.m. meeting with him on August 12, 2022.

80.     Consistent with MSU's prior policies, processes and practices, Gupta reasonably anticipated that he would have a meaningful opportunity to discuss the facts with Defendant Woodruff and correct the errors in the OIE report.

81.     Also consistent with MSU's policy of allowing for appeals of OIE reports and findings after investigations, Gupta timely requested of OIE that OIE afford him an extension of the 10-day time period to appeal any OIE report findings because of his international business trip to India from August 2 to August 11, 2022.

82.     OIE refused to allow Gupta any right to appeal, claiming he had no right to appeal its false report.

### August 12, 2022, Termination

83.      At the August 12, 2022, meeting, Defendant Woodruff commenced the meeting by informing Gupta that he had just "resigned" as Dean, purportedly because she had concluded he had a failure in leadership for several reasons. Defendant Woodruff did not provide any prior written notice of these purported reasons.

84.     Defendant Woodruff did not provide Gupta any meaningful opportunity to present the facts, which would have refuted her shocking statements.

85.     The purported "resignation" was involuntary. Defendant Woodruff terminated and removed Gupta as Dean of the Broad College.

86.     Defendant Woodruff provided previously prepared written termination notices to Gupta at the August 12, 2022 meeting, notifying him that his Dean appointment terminated immediately. Defendant Woodruff's written notice stated: "Effective, August 12, 2022, you will return to the faculty as a tenured professor, unaccompanied by a named or endowed professorship."

87.     During his tenure as Dean from 2015 to August 12, 2022, Gupta had an endowed chair position. At the time of the termination on August 12, 2022, Gupta's endowed chair position provided for $60,000 annual compensation and up to $15,000 for expenses.

88.     Gupta's 2015 employment agreement appointing Gupta Dean of the Broad College expressly provides that "Upon your return to the faculty, *you will be appointed* as a John A. Hannah Professor, Broad Professor, or other available *endowed* professorship in the Broad College, with research support in effect at that time." (Emphasis added.)

89.     Defendant Woodruff, however, refused to appoint Gupta with an endowed professorship, with research support, upon his return to faculty on August 12, 2022.

90.     Defendant Woodruff's written termination notice notified Gupta that his annualized salary was immediately being changed to a 9-month, academic salary, resulting in a reduction in annual compensation of approximately $100,000.

91.     Defendant Stanley publicly stated that he approved of, agreed with and endorsed all of Defendant Woodruff's statements and conduct in terminating Gupta.

92.     Unbeknownst to Gupta, Defendants Woodruff, Jeitschko, Austin, and Stanley pre-planned the August 12, 2022, termination, orchestrating the process behind-the-scenes in an effort for Woodruff to smear and stigmatize Gupta's good name and thereby eliminate her competitor.

93.     On information and belief, Schmidtke and Towe facilitated the wrongful termination of Gupta, working with other Defendants.

94.     After the August 12, 2022, 8:00 a.m. termination meeting, Defendants, including Defendant Guerrant, publicly disseminated defamatory statements, falsely alleging that Gupta had resigned because he had violated the RVSM Policy.

95.     As a result of Defendants' defamatory statements, it was publicly reported and widely believed that Gupta had engaged in sexual misconduct himself. Gupta, for example, was falsely referred to as "the next Larry Nassar." Those public reports were absolutely false, as Defendants know.

96.     Defendants, however, refused to publish a retraction of their false and defamatory statements about Gupta.

97.     Also immediately after the August 12, 2022 8:00 a.m. termination meeting, Defendant Woodruff telephoned a prominent MSU alum, well known to Gupta and from whom Gupta had arranged to make one of the largest donations ever to MSU. Gupta had previously introduced Woodruff to the donor.

98.     Defendant Woodruff telephoned the donor after terminating Gupta as part of her scheme to attempt to take control of and to take credit for such donor relationships cultivated by Gupta and to secure her power base.

### Woodruff's Pretextual Reasons for the Adverse Employment Actions

99.     Because of Gupta's stellar record and reputation for high integrity, many people were surprised about Defendants' very public termination and defamatory statements about Gupta, including the Board of Trustees.

100.    The Board of Trustees requested that Defendant Woodruff provide an explanation of the basis for the removal of Gupta as Dean and other adverse employment actions.

101.    On or about August 18, 2022, Defendant Woodruff provided a written statement to the Board of Trustees stating her five purported rationales for the removal.

102.    Each of the five purported rationales was a pretext. None of the five purported rationales is supported by the facts.

103.    First, Woodruff falsely claimed that Gupta had a duty to re-report, but as set forth in detail above he did not.

104.    Second, Woodruff falsely claimed that Gupta should have investigated and questioned the professor at issue about the events at the end-of-the-year event. As set forth in detail above, Gupta was *prohibited* from investigating and questioning the professor.

105.    Third, Woodruff falsely claimed that Gupta had a duty to notify FASA about the OIE reporting. MSU's Title IX policies and procedures impose any reporting duty on OIE, not the Dean. In any event, Gupta promptly directed his staff to notify FASA upon receipt of the early OIE notification.

106.    Fourth, Woodruff falsely claimed that Gupta had somehow allowed the professor to resign in response to the OIE report, and to submit papers to human resources personnel in FASA for certain leave-to-retire benefits. As set forth above, the professor had, in March 2022, informed appropriate personnel that he was

leaving MSU, which would be effective June 30, 2022. As for the leave benefits, Gupta was not aware of nor involved in any of the administrative process regarding leave benefits that the professor had applied for or may have been entitled to receive.

107.    Fifth, Woodruff falsely claimed that Gupta had somehow improperly allowed the professor to teach at another school during the summer break contrary to MSU policies. That claim is entirely false. For several years, the Provost Office had previously reviewed and approved in writing the professor's summer coursework. Moreover, Gupta as Dean was not involved in the process of that review and approval, which was handled by other Broad College administrative personnel working with the Provost Office.

108.    Thus, Defendant Woodruff's stated rationales for the removal of Dean Gupta and other adverse employment actions were false and pretextual.

<u>**Defendants' Violations of Gupta's Due Process Rights**</u>

109.    Defendants failed to give proper written notice of any purported policy violations or other due process to defend himself.

110.    Specifically, OIE failed to give Gupta proper written notice that he allegedly failed to report to OIE.

111.    Woodruff failed to give Gupta any notice of her purported rationales for terminating him and returning him to the faculty without an endowed professorship. Woodruff never afforded Gupta any meaningful opportunity to respond to any of the five purported rationales.

112.   Defendants failed to comply with MSU policies and procedures and Broad College policies and procedures that required proper review by a properly constituted committee prior to removal of any endowed chair position. Moreover, Defendants failed to comply with those policies and procedures which required that any endowed chair position be removed only for cause.

113.   Defendants refused to permit Gupta to refute or appeal the false findings in the OIE August 8 report.

114.   Defendants refused to permit Gupta to file a grievance for the adverse employment actions.

115.   Defendants refused to grant Gupta's request for a name-clearing hearing.

116.   Defendants' disciplinary and adverse employment actions – immediate termination of the Dean appointment and immediate termination of the endowed chair position – were unwarranted and overly harsh as compared to all other similarly situated personnel.

117.   On information and belief, Defendants discriminated against Gupta in treating him far differently from any other person who was not Indian.

118.   All other MSU faculty and administrators who allegedly violated the mandatory reporting policy were treated far differently than Defendants treated Gupta. No other MSU personnel were removed from their administrative position, endowed chair, or publicly excoriated in the same manner that Defendants imposed on Gupta.

**The Quinn Emanuel Investigation: Gupta's Transparency and Full Cooperation and Defendants' Efforts to Stop and Interfere with the Investigation**

119.   On or about August 30, 2022, because Defendant Woodruff's purported rationales for terminating Gupta raised many questions, the Board of Trustees retained outside counsel, Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), to conduct two important independent reviews and to report its findings to the Board.

120.   As the Board publicly explained on October 11, 2022, the first review involved a comprehensive assessment of the policies and procedures of the Office for Civil Rights and Title IX Education and Compliance. The second review examined the circumstances surrounding the departure of Sanjay Gupta as the Dean of the Eli Broad College of Business.

121.   The Board wrote on October 11, that the Board's "Bylaws make clear that the Board is tasked with ensuring that University employees are treated 'in accordance with the law and [the University's] internal policies and regulations, including oversight of a program structured along the fundamentals of basic due process[] for the hearing and resolving of important, significant, and serious employee complaints,' and the Board must take 'prompt action on urgent . . . personnel matters necessary to the best interests of the University.'" (Oct. 11, 2022 Email from Board of Trustees, quoting the Bylaws, Art. 7, ¶¶ 4, 5, 15).

122.   The Board also noted that its Policy Manual required the Board and the Committee on Audit, Risk and Compliance to protect the University from risk,

"drive accountability," and "'review any violations and failures to comply with federal, state, and local laws, rules and regulations, as well as institutional policies.'" (Oct. 11, 2022, Email from Board of Trustees, quoting the Policy Manual, 01-01-09).

123.   The Board stated that it expected the Quinn Emanuel investigation would "provide clarity regarding the facts leading to Dr. Gupta's departure, including whether the University's procedures were carried out in compliance with federal, state, and local laws, rules and regulations, and institutional policies.

124.   Defendants Stanley and Woodruff, however, publicly opposed the investigation into their conduct and refused to cooperate in the investigation. Defendants Stanley and Woodruff publicly discouraged MSU personnel from providing facts to Quinn Emanuel.

125.   Defendant Jeitschko, who has authority as Interim Provost to review and approve promotions submitted by Broad College, has also intimidated MSU employees from cooperating and providing facts in the investigation.

## Defendants' False and Defamatory Statements

126.   As detailed above, Defendants have publicized repeated false and defamatory statements regarding Gupta that are defamatory *per se*.

127.   First, the August 8 OIE Report contains false statements as detailed above.

128.   Second, Defendant Austin prepared a memorandum that was disseminated to others purportedly justifying the pretextual reasons for the

wrongful termination, and that memorandum contains false and defamatory statements.

129.   Third, the press release and statements to the press by Defendant Guerrant regarding Gupta on or about August 12 and August 15, 2022, were false and defamatory because they falsely state that Gupta voluntarily resigned because of his purported violation of the mandatory reporting policies, "concerns about leadership," and "poor administrative oversight." Defendant Guerrant's statement impugned Gupta's "integrity and professionalism."

130.   At a MSU Faculty Senate meeting on September 13, 2022, Defendant Woodruff made further false and defamatory statements, falsely asserting that MSU "policies and procedures were all duly followed" in her termination of Dean Gupta, and that the decision was "neither capricious nor malicious." Defendant Woodruff knew these statements were false or recklessly disregarded the truth.

131.   In addition, Defendant Jeitschko made further false and defamatory statements to Broad College alumni during a Homecoming event on or about October 13, 2022, when he falsely stated that Gupta had engaged in numerous wrongful behaviors that were the rationales for termination and that the Quinn Emanuel investigation would confirm these purported rationales. These statements were false and defamatory and made with malice and with knowledge of or reckless disregard for the truth.

### Irreparable Harm Suffered by Gupta as a Result of Defendants' Actions

132.   Gupta has suffered irreparable harm to his reputation. For example, as a result of Defendants' defamatory statements, members of the public continue to believe that Gupta was removed because he purportedly committed some sexual offense.

133.   Gupta's good name has been stigmatized by the public, defamatory statements described above.

134.   If the OIE report is not corrected and Gupta is not reinstated as Dean, he will suffer irreparable harm to his reputation, and he will be unable to obtain employment commensurate with his expertise and experience.

135.   Indeed, Gupta has already been foreclosed from career opportunities as a result of the due process violations, tortious interference, and defamation by Defendants, including opportunities to serve on boards of directors.

136.   Defendants Woodruff, Jeitchsko, Austin, Guerrant, Schmidtke and Towe have the authority to grant any and all equitable relief to Plaintiff to rectify Defendants' constitutional violations.

<u>COUNT I – 42 U.S.C. §1983 – Fourteenth Amendment</u>
<u>Procedural Due Process</u>
<u>Property and Liberty Interests</u>
(as to all Defendants)

137.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

138.   The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

139.   Fourteenth Amendment due process protections are required in higher education disciplinary decisions at public institutions.

140.   Plaintiff had a property interest in his 2015 employment agreement in having Defendants comply with the MSU policies and procedures preventing any removal of his endowed chair except pursuant to cause as found by a properly constituted committee.

141.   Plaintiff was entitled to notice and a meaningful opportunity to be heard, and prior to the deprivation of his property interest.

142.   Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity of which he cannot be deprived by the state absent due process.

143.   Plaintiff is entitled to process commensurate with the seriousness of the allegations and the discipline imposed and repercussions he was facing. Here, the allegations are of the utmost seriousness, have lifelong ramifications, and are extremely defamatory in nature.

144.   Defendants know that Plaintiff has a clearly established right to due process protections, and a reasonable person would know that failing to apply those standards of review would violate Plaintiff's due process rights.

145.   Providing a due process protection imposes no administrative burden on MSU, which provides due process for persons accused of violating the RVSM Policy.

146.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has and will suffer irreparable harm, injury, and damages, including but

not limited to the loss of the Dean appointment, the loss of the endowed chair, loss of board and other future opportunities, mental and emotional distress, humiliation and embarrassment, and loss of personal and professional reputation.

## COUNT II – Tortious Interference with Contract
(as to Defendants Woodruff, Jeitschko, Stanley and Austin)

147.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

148.     Plaintiff had a valid employment contract with MSU pursuant to his 2015 employment agreement.

149.     Defendants knew about Plaintiff's 2015 employment contract appointing him Dean of the Broad College, which was renewed in 2020.

150.     Plaintiff's employment contract with MSU also included the policies and procedures for removal of an endowed chair position, which required certain processes and establishment of cause for removal.

151.     Defendants intentionally interfered with Plaintiff's employment contract, causing MSU to breach the contract by, among other things, removing the endowed chair position without cause and without following the MSU policies; and failing to return Plaintiff to the faculty with an endowed professorship.

152.     Plaintiff suffered damage as a result of the breach of the contract, including but not limited to loss of income and loss to personal and professional reputation.

153.     Defendants tortiously interfered with Plaintiffs' contract by acting intentionally with malice and were unjustified in making their false statements

28

about the purported rationales for termination and removal for the purpose of invading Plaintiff's contract rights.

### COUNT III – Tortious Interference with Business Relationship
(as to Defendants Woodruff, Jeitschko, Stanley and Austin)

154.     Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

155.     Plaintiff had a valid business relationship with MSU as Dean of the Broad College.

156.     Defendants knew about Plaintiff's 2015 employment contract appointing him Dean of the Broad College, and providing him an endowed chair position, which was renewed in 2020.

157.     Defendants knew that Plaintiff had successfully performed in his role as Dean and enjoyed broad support among the Broad College faculty, students and alumni, and Defendants knew that as a result of Plaintiff's successful MSU career, he was being considered as of June 2022 as a candidate to succeed Defendant Stanley as President.

158.     Plaintiff had a reasonable expectation that his business relationship as Dean and as endowed chair would continue.

159.     Defendants intentionally interfered with Plaintiff's business relationship, causing MSU to disrupt that business relationship by, among other things, removing him as Dean and removing his endowed chair position without cause and without following the MSU policies; and by failing to return Plaintiff to the faculty with an endowed professorship.

160.   Plaintiff suffered damage as a result of the breach of the contract, including but not limited to loss of income and loss to personal and professional reputation.

161.   Defendants tortiously interfered with Plaintiff's business relationship with MSU by acting intentionally with malice and Defendants were unjustified in making their false statements about the purported rationales for termination and removal for the purpose of invading Plaintiff's contract rights.

## COUNT IV – Defamation
(as to all Defendants)

162.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

163.   Defendants made repeated false and defamatory statements concerning Plaintiff, as detailed above.

164.   Defendants' false and defamatory statements were not privileged communications and were made to third parties, including the press, the Board of Trustees, MSU faculty members, and Broad College alumni.

165.   Defendants' false and defamatory statements were defamatory *per se* because they impugned Plaintiff's reputation and employment status.

166.   Defendants made such false and defamatory statements negligently, recklessly without regard to the truth, knowing that the statements were false, and/or acted with malice toward Plaintiff in making them in order to impugn Plaintiff and prevent him from being a viable candidate for the Presidency for their own personal benefit in promoting Defendant Woodruff as President.

## <u>RELIEF REQUESTED</u>

Plaintiff demands judgment against Defendants as follows:

### A. **Equitable Relief:**

1.  An injunction from this Court reinstating Gupta as Dean of the Broad College and reinstating his endowed chair position because the process that led to his removal was unconstitutional and deprived Plaintiff of due process and violated his constitutional rights;

2.  A ruling that, as a matter of law, Plaintiffs' due process and constitutional rights were violated;

3.  An injunction from this Court prohibiting any further acts of discrimination, intimidation, or retaliation; and

4.  An award of interest, costs, and reasonable attorneys' fees; and

5.  Any additional equitable relief that appears appropriate at the time of final judgment.

### B. **Legal Relief:**

1.  Compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled;

2.  Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

3.  An award of interest, costs, reasonable attorneys' fees, and expert witness fees.

## <u>JURY DEMAND</u>

Plaintiff Sanjay Gupta, by and through his attorneys, demands a trial by jury of all of the issues in this cause that are so triable.

Dated: February 24, 2023                    Respectfully submitted,

                                            /s/ *Nancy A. Temple*
                                            Nancy A. Temple
                                            Matthew Koschnitzki
                                            Katten & Temple, LLP
                                            209 S. LaSalle Street, Suite 950
                                            Chicago, IL 60604
                                            (312) 663-0800
                                            ntemple@kattentemple.com
                                            mkoschnitzki@kattentemple.com