**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SANJAY GUPTA,

                    Plaintiff,                                    Case No. 1:23-cv-00201

v.                                                  Hon. Paul L. Maloney

TERESA K. WOODRUFF, et al.,

                    Defendants.

---

**DEFENDANTS' BRIEF IN SUPPORT OF OMNIBUS MOTION TO DISMISS**
**PLAINTIFF SANJAY GUPTA'S COMPLAINT**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................. iii

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF THE FACTS .......................................................................... 5

    A.    Plaintiff's Employment with MSU ......................................................... 5

    B.    MSU's Mandatory Reporting Protocol ................................................... 6

    C.    OIE's Investigation into Plaintiff's Mandatory Reporting Failure ....................... 8

    D.    Plaintiff's Resignation as Dean ............................................................ 11

    E.    Plaintiff's Claims and Allegations Concerning Defendants ................................ 12

        1.    Defendant Woodruff ................................................................... 12

        2.    Defendant Stanley ...................................................................... 13

        3.    Defendants Jeitschko and Austin ................................................. 14

        4.    Defendants Schmidtke and Towe .................................................. 15

        5.    Defendant Guerrant .................................................................... 15

III.   ARGUMENT .................................................................................................... 16

    A.    Standard of Review .............................................................................. 16

        1.    Motion to Dismiss, Fed. R. Civ. P. 12(b)(1) ................................. 16

        2.    Motion to Dismiss, Fed. R. Civ. P. 12(b)(6) ................................. 16

    B.    Eleventh Amendment Sovereign Immunity Requires Dismissal of All Claims Against Defendants (Counts I-IV) .............................................. 17

        1.    Claims Pled Against Defendants in Their Official Capacities Are Barred by Sovereign Immunity ..................................................... 17

        2.    *Ex Parte Young* Doctrine Bars Plaintiff's Request for Relief ................. 18

            i.    "Reinstatement" of Plaintiff's Endowed Chair Position is Not Proper .................................................................. 19

            ii.    Declaratory Relief is Not Appropriate under *Ex Parte Young* ...................................................................... 20

            iii.   Other Equitable Relief is Improper under *Ex Parte Young* ......... 21

        3.    Plaintiff's Claims for Prospective Injunctive Relief Fail for Lack of Redressability ........................................................................... 21

        4.    Defendants are Entitled to Qualified Immunity for All Claims Against Them in Their Individual Capacities ................................. 23

C.	Plaintiff's Section 1983 Due Process Claim Fails as a Matter of Law (Count I) ..................................................................................... 25

    1.	Plaintiff Has Insufficiently Pled Individualized Violations by Defendants ........................................................................... 25

    2.	Plaintiff Did Not Have a Protected Property Interest under his 2015 Offer Letter ......................................................................... 29

    3.	Plaintiff Has Not Stated a Liberty Interest Right to His Reputation ....... 31

    4.	Plaintiff's Procedural Due Process Claim Fails Even if Plaintiff Could Identify a Protected Interest .......................................... 33

D.	Defendants Are Also Entitled to Governmental Immunity Under Michigan Law on Plaintiff's State Law Claims (Counts II-IV) ............................ 34

E.	Plaintiff's Defamation Claim is Insufficiently Pled and Fatally Flawed (Count IV) ....................................................................................... 37

    1.	Defendant Towe ...................................................................... 42

    2.	Defendant Austin .................................................................... 43

    3.	Defendant Guerrant ................................................................. 43

    4.	Defendant Woodruff ................................................................ 44

    5.	Defendant Jeitschko ................................................................ 45

F.	Plaintiff Fails to State a Tortious Interference Claim (Counts II and III) ............ 46

IV.	CONCLUSION ........................................................................................ 50

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) .......................................................................16, 27, 36

*Ajuba Int'l, L.L.C. v. Saharia*,
  871 F. Supp. 2d 671 (E.D. Mich. 2012)...................................................................46

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999)....................................................................................................25

*Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.*,
  602 F. Supp. 2d 829 (W.D. Mich. 2008) ...........................................................49, 50

*ASARCO, Inc. v. Kadish*,
  490 U.S. 605 (1989)..................................................................................................22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................16, 25, 26

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................16, 17, 27

*Board of Regents v. Roth*,
  408 U.S. 564 (1972)..................................................................................................29

*Boler v. Earley*,
  865 F.3d 391 (6th Cir. 2017) ..............................................................................18, 21

*Brown v. City of Niota, Tennessee*,
  214 F.3d 718 (6th Cir. 2000) ...................................................................................31

*Bullock v. Bd. of Regents*,
  1989 WL 140167 (6th Cir. Nov. 21, 1989)..............................................................30

*Cahoo v. SAS Analytics Inc.*,
  912 F.3d 887 (6th Cir. 2019) ...................................................................................23

*California v. Texas*,
  141 S. Ct. 2104 (2021)..............................................................................................22

*Center for Bio-Ethical Reform v. Napolitano*,
  648 F.3d 365 (6th Cir. 2011) ...................................................................................17

*Chambers v. City of Detroit,*
    786 F. Supp. 2d 1253 (E.D. Mich. 2011) ...................................................47

*Clemente v. Vaslo,*
    679 F.3d 485 (6th Cir. 2012) ...................................................................24

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,*
    508 F.3d 327 (6th Cir. 2007) .....................................................................6

*Courser v. Allard,*
    969 F.3d 604 (6th Cir. 2020) ...................................................................47

*Crestmark Bank v. Electrolux Home Prod., Inc.,*
    155 F. Supp. 3d 723 (E.D. Mich. 2016) ............................................48, 49

*Crosby v. Univ. of Kentucky,*
    863 F.3d 545 (6th Cir. 2017) ...................................................................29

*D.C. v. Wesby,*
    138 S. Ct. 577 (2018) ...............................................................................24

*Doe v. Claiborne County,*
    103 F.3d 495 (6th Cir. 1996) ...................................................................25

*Doe v. N. Michigan Univ.,*
    393 F. Supp. 3d 683 (W.D. Mich. 2019) .................................................35

*Dvorak v. Wright State Univ.,*
    1997 WL 1764779 (S.D. Ohio Sept. 3, 1997) ....................................19, 20

*Fisher v. Detroit Free Press,*
    404 N.W.2d 765 (Mich. Ct. App. 1987) ..................................................40

*Foote v. Dow Chem. Co.,*
    2010 WL 173777 (Mich. Ct. App. Jan. 19, 2010) ...................................47

*Frumkin v. Bd. of Trustees, Kent State Univ.,*
    626 F.2d 19 (6th Cir. 1980) .....................................................................33

*Galli v. Kirkeby,*
    248 N.W.2d 149 (Mich. 1976) .................................................................36

*Gardner v. Heartland Indus. Partners, LP,*
    715 F.3d 609 (6th Cir. 2013) .............................................................46, 50

*Garvie v. Jackson,*
    845 F.2d 647 (6th Cir. 1988) ...................................................................30

*Gavitt v. Born*,
    835 F.3d 623 (6th Cir. 2016) ...........................................................................24

*George v. Wayne Cty.*,
    1997 WL 33350581 (Mich. Ct. App. Apr. 18, 1997) ............................................35

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ...........................................................................................38

*Gies v. Flack*,
    495 F. Supp. 2d 854 (S.D. Ohio 2007) ...........................................................20, 21

*Gilbert v. Homar*,
    520 U.S. 924 (1997) ...........................................................................................33

*Glazer v. Lamkin*,
    506 N.W.2d 570 (Mich. Ct. App. 1993) ............................................................38

*Gonyea v. Motor Parts Fed. Credit Union*,
    480 N.W.2d 297 (Mich. Ct. App. 1991) .........................................................38, 39

*Green v. Mansour*,
    474 U.S. 64 (1985) ..........................................................................................19, 20

*Green v. Mason*,
    504 F. Supp. 3d 813 (S.D. Ohio 2020) ..............................................................38

*Grossman v. Smart*,
    807 F. Supp. 1404 (C.D. Ill. 1992) ....................................................................38

*Guzall v. Michigan State Univ.*,
    Case No. 20-000189-MK (Mich. Ct. Cl. Feb. 1, 2020) ....................................36, 40

*Heike v. Guevara*,
    2010 WL 538300 (E.D. Mich. Feb. 9, 2010), aff'd, 519 F. App'x 911 (6th Cir.
    2013) .......................................................................................................18, 37, 39

*Heyne v. Metro. Nashville Pub. Sch.*,
    655 F.3d 556 (6th Cir. 2011) ...........................................................................26

*Hildebrant v. Meredith Corp.*,
    63 F. Supp. 3d 732 (E.D. Mich. 2014) ...............................................................40

*Hill v. Bd. of Trustees of Mich. State Univ.*,
    182 F. Supp. 2d 621 (W.D. Mich. 2001) .............................................................18

*Humphrey v. Mabry*,
    482 F.3d 840 (6th Cir. 2007) ...........................................................................26

*Hunter v. Bryant*,
    502 U.S. 224 (1991) ..................................................................................23

*Ireland v. Edwards*,
    584 N.W.2d 632 (Mich. Ct. App. 1998) ...............................................40

*Jeffries v. Celeste*,
    654 F. Supp. 305 (S.D. Ohio 1986) .......................................................20

*Kaminski v. Coulter*,
    865 F.3d 339 (6th Cir. 2017) ................................................................30

*Kaplan v. Univ. of Louisville*,
    10 F.4th 569 (6th Cir. 2021) ................................................29, 30, 32

*Kevorkian v. Am. Med. Ass'n*,
    602 N.W.2d 233 (Mich. Ct. App. 1999) ...............................................44

*Kollaritsch v. Mich. State Univ. Bd.of Trs.*,
    944 F.3d 613 (6th Cir. 2019) ................................................................23

*Kreipke v. Wayne State Univ.*,
    807 F.3d 768 (6th Cir. 2015) ............................................34, 35, 36, 42

*Kuhn v. Washtenaw Cty.*,
    709 F.3d 612 (6th Cir. 2013) ................................................................48

*Lakeshore Cmty. Hosp., Inc. v. Perry*,
    538 N.W.2d 24 (Mich. Ct. App. 1995) .................................................46

*Lanman v. Hinson*,
    529 F.3d 673 (6th Cir. 2008) ..........................................................26, 27

*LRL Props. v. Portage Metro Hous. Auth.*,
    55 F.3d 1097 (6th Cir. 1995) ................................................................29

*Ludwig v. Bd. of Trs. of Ferris State Univ.*,
    123 F.3d 404 (6th Cir. 1997) ................................................................31

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...............................................................................22

*Lyshe v. Levy*,
    854 F.3d 855 (6th Cir. 2017) ................................................................16

*Lytle v. Malady*,
    579 N.W.2d 906 (1998) .........................................................................30

*Maiberger v. City of Livonia*,
    724 F. Supp. 2d 759 (E.D. Mich. 2010)....................................................................47, 48, 49

*Malley v. Briggs*,
    475 U.S. 335 (1986)........................................................................................................24

*Mertik v. Blalock*,
    983 F.2d 1353 (6th Cir. 1993) .........................................................................................31

*Midkiff v. Adams Cty. Reg'l Water Dist.*,
    409 F.3d 758 (6th Cir. 2005) ...........................................................................................29

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990)......................................................................................................41, 44

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)) .......................................................................................................24

*Nair v. Oakland Cty. Cmty. Mental Health Auth.*,
    443 F.3d 469 (6th Cir. 2006) ...........................................................................................16

*Nehls v. Hillsdale Coll.*,
    178 F. Supp. 2d 771 (E.D. Mich. 2001), aff'd, 65 F. App'x 984 (6th Cir. 2003).............37, 41

*New Albany Tractor v. Louisville Tractor*,
    650 F.3d 1046 (6th Cir. 2011) .........................................................................................17

*Nieman v. NLO, Inc.*,
    108 F.3d 1546 (6th Cir. 1997) .........................................................................................23

*Odom v. Univ. of Mich.*,
    2017 WL 2117978 (E.D. Mich. May 16, 2017)................................................................16

*Orr v. Argus-Press Co.*,
    586 F.2d 1108 (6th Cir. 1978) .........................................................................................42

*Papasan v. Allain*,
    478 U.S. 265 (1986)........................................................................................................18

*Paul v. Davis*,
    424 U.S. 693 (1976)........................................................................................................31

*Pearson v. Callahan*,
    555 U.S. 223 (2009)........................................................................................................24

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..........................................................................................................17

*Prysak v. R.L. Polk Co.*,
    483 N.W.2d 629 (Mich. Ct. App. 1992) .................................................................38

*Pucci v. Nineteenth Dist. Ct.*,
    628 F.3d 752 (6th Cir. 2010) ...............................................................................30

*Quinn v. Shirey*,
    293 F.3d 315 (6th Cir. 2002) ...............................................................................32

*R. K. by and through J. K. v. Lee*,
    53 F.4th 995 (6th Cir. 2022) ................................................................................22

*Reed v. Michigan Metro Girl Scout Council*,
    506 N.W.2d 231 (Mich. Ct. App. 1993) .................................................................47

*Regents of the Univ. of Cal. v. Doe*,
    519 U.S. 425 (1997) .............................................................................................17

*Estate of Ritter v. Univ. of Michigan*,
    851 F.2d 846 (6th Cir. 1988) ...............................................................................17

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966) ...............................................................................................38

*Rouch v. Enquirer & News of Battle Creek Michigan*,
    487 N.W.2d 205 (Mich. 1992) ..............................................................................39

*Ryniewicz v. Clarivate Analytics*,
    803 F. App'x 858 (6th Cir. 2020) .....................................................................39, 44

*Sarkar v. Doe*,
    897 N.W.2d 207 (Mich. Ct. App. 2016) .................................................................40

*Seaton v. TripAdvisor LLC*,
    728 F.3d 592 (6th Cir. 2013) ...........................................................................40, 44

*Sheets v. Mullins*,
    287 F.3d 581 (6th Cir. 2002) ...............................................................................24

*Siegert v. Gilley*,
    500 U.S. 226 (1991) .............................................................................................31

*Smith v. Anonymous Joint Enter.*,
    793 N.W.2d 533 (Mich. 2010) ..............................................................................40

*Smith v. Wrigley Mfg.*,
    749 F. App'x 446 (6th Cir. 2018) .....................................................................26, 28

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)..................................................................................21, 22

*Stark v. City of Memphis*,
    2020 WL 8770177 (W.D. Tenn. Feb. 18, 2020), *report and recommendation
    adopted*, 2021 WL 597880 (W.D. Tenn. Feb. 16, 2021)......................................26

*Stoudemire v. Michigan Dept. of Corr.*,
    705 F.3d 560 (6th Cir. 2013) .................................................................25

*Terhune v. Frank*,
    1993 WL 316006 (W.D. Mich. Apr. 23, 1993) ................................................47, 48

*Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*,
    978 F. Supp. 2d (W.D. Mich. 2013), aff'd, 759 F.3d 522 (6th Cir. 2014) .......................37, 40

*Thomas v. Noder-Love*,
    621 F. App'x 825 (6th Cir. 2015) .............................................................17

*Tomkiewicz v. Detroit News, Inc.*,
    635 N.W.2d 36 (Mich. Ct. App. 2001) .........................................................39

*Tumbarella v. Kroger Co.*,
    271 N.W.2d 284 (Mich. Ct. App. 1978) .....................................................37, 43

*Urban Associates, Inc. v. Standex Elecs., Inc.*,
    216 Fed. App'x. 495 (6th Cir. 2007) .......................................................48, 49

*Vt. Agency of Nat. Res. v. United States ex rel. Stevens*,
    529 U.S. 765 (2000)...........................................................................22

*Walsh v. Taylor*,
    689 N.W.2d 506 (Mich. Ct. App. 2004) .....................................................34, 35

*Weisbord v. Michigan State Univ.*,
    495 F. Supp. 1347 (W.D. Mich. 1980) .........................................................17

*Whiting v. Allstate Ins. Co.*,
    433 F. App'x 395 (6th Cir. 2011) ..........................................................37, 38

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989)..........................................................................17, 18

*Ex Parte Young*,
    209 U.S. 123 (1908)......................................................................18, 20, 21

**Statutes**

42 U.S.C. § 1983................................................................................ *passim*

ix

MCL 600.2911 ....................................................................................................37

MCL 600.2911(2)(b) ...........................................................................................37

MCL 691.1407(3) ................................................................................................34

**Court Rules**

Fed. R. Civ. P. 8(a)(2) .........................................................................................16

Fed. R. Civ. P. 9(g) .............................................................................................37

Fed. R. Civ. P. 12(b)(1) .......................................................................................15

Fed. R. Civ. P. 12(b)(6) ...........................................................................5, 15, 35

**Other Authorities**

U.S. Const. Amend. I ...........................................................................................38

U.S. Const. Amend. XIV ........................................................................25, 29, 31

U.S. Const. Amend. XI ............................................................................. *passim*

## I.      INTRODUCTION

Plaintiff Sanjay Gupta's Complaint should be seen as what it is: a desperate, last-ditch plea for this Court to take on the role of super-personnel department of a public institution of higher education.  After Michigan State University's ("MSU" or the "University") Office of Institutional Equity ("OIE") concluded that Plaintiff, then-Dean of the Eli Broad College of Business ("Broad" or "Broad College"), violated the University's Relationship Violence and Sexual Misconduct and Title IX Policy ("RVSM Policy") by failing to report sexually inappropriate conduct by a Broad College associate dean, MSU leadership concluded that Plaintiff's actions fell below MSU's high standards and no longer supported his at-will appointment as an MSU dean.  Even assuming the truth of the wildly false allegations Plaintiff makes about numerous MSU officials – each of whom is entitled to immunity in this case – he has failed to state a viable claim.

MSU requires employees to take with the utmost sincerity their responsibility to report any information they receive about potential sexual misconduct within MSU programs and activities. In fact, MSU's clear policies explaining such mandatory reporting requirements and trainings are provided to all employees, including Plaintiff.  Violations of these vital policies are taken with great seriousness, particularly for University leaders, who are expected to exhibit the highest degree of fidelity, transparency, and responsibility with regard to addressing alleged inappropriate behavior by personnel under their leadership.  At the time he was found to have violated the RVSM policy, Plaintiff was one of MSU's most visible academic leaders.  The consequences of his violation – which Plaintiff now attempts to construe as the basis for a federal lawsuit – are the natural result of his own poor judgment, leadership failures, and noncompliance.

As explained in OIE's investigation report, in April 2022, Plaintiff received notice from two subordinates that a professor – who was an Associate Dean within the Broad College and Plaintiff's direct report – was intoxicated and acted inappropriately at a Broad event, including by

1

reportedly dancing suggestively with students, engaging in behavior that was sexual in nature, and potentially touching a student.  The two subordinates were concerned enough about this conduct to promptly bring it to Plaintiff's attention, identify it as reportable misconduct, and ultimately report the incident themselves to OIE, the unit that investigates alleged violations of the RVSM Policy.  Plaintiff, however, did nothing.  He then *admitted* that the professor in question confided in Plaintiff that he was "very sorry" for his behavior at the event, acknowledging that "something happened that should not have."  With this firsthand information, including an admission of wrongdoing and responsibility by the professor that was unavailable to *anyone* else, Plaintiff, again, did nothing.

Importantly, Plaintiff failed to report what he learned about the Associate Dean's conduct to OIE – as required by University policy – or to anyone at all.  Instead, as his own allegations make clear, Plaintiff *assumed* someone else would handle it.  He also dismissed any concerns for student safety based on his assumption and *post hoc* rationalization that students would be safe from further misconduct because it was the end of the semester, the Associate Dean did not have any prior allegations concerning his conduct, and the Associate Dean was leaving MSU in a few months anyway.  Simply put, Plaintiff hid what he knew and alleges that he made *ad hoc* interim measure determinations about the safety of students without notifying or consulting the MSU units who are tasked with making those determinations.  All of this severely undercuts the culture of transparency, responsibility, and accountability that MSU strives to maintain.  Accordingly, Plaintiff's serious leadership failures predictably led to the erosion of MSU's confidence in him continuing in his at-will position as Dean.

When MSU learned that Plaintiff may have failed to report, OIE gave him notice and an opportunity to be heard.  He took that opportunity and provided a statement to OIE.  OIE

considered the entire investigatory record, including Plaintiff's statement, and determined that he violated the Mandatory Reporting Protocol of MSU's RVSM Policy.  As required, OIE provided its findings to the Provost's Office to consider whether any actions were warranted, copying the Provost, the recently-appointed Interim Associate Provost and Vice President for Faculty and Academic Affairs ("FASA," which is part of the Provost's Office), and a FASA Director.

After reviewing OIE's findings and receiving input from then-President Defendant Stanley and FASA leadership, then-Provost Defendant Woodruff concluded that Plaintiff had failed in his role as Dean and should no longer hold that administrative position.  Woodruff met with Plaintiff to discuss the matter and provided Plaintiff the opportunity to resign from his position as Dean in lieu of being removed.  Plaintiff accepted that opportunity and announced his resignation as Dean of the Broad College on August 12, 2022.  Thereafter, Plaintiff returned to – and remains in – a tenured faculty position, consistent with his Dean appointment letter.

Plaintiff now brings this four-count Complaint against seven current and former MSU employees alleging, illogically, that Defendant Woodruff, with the assistance of the other Defendants, sought to eliminate Plaintiff from a purported short list to be the next President of MSU – *before* then-President, Defendant Stanley, had ever announced his intent to step down.  To get there, the Complaint asserts baseless and fundamentally flawed procedural due process violations under 42 U.S.C. § 1983 (Count I), and state common law claims of defamation (Count IV) and tortious interference with a contract and business relationship (Counts II and III).  Plaintiff's claims fail even at the initial pleading stage and must be dismissed.

First, all federal and state law claims against Defendants in their official and individual capacities are barred by Eleventh Amendment immunity or qualified immunity.  As to the common

law state claims, Michigan's governmental immunity statute also applies to bar these claims.  Even setting immunity aside, Plaintiff fails to state a legal claim upon which relief can be granted.

Regarding his Section 1983 claim, Plaintiff does not properly plead a property or liberty interest of which he was deprived because: (a) his Dean role was an at-will relationship that could be terminated for any reason at any time; (b) he voluntarily relinquished any right to his previous position; and (c) he has no liberty interest in his reputation where the only alleged public statements at issue were true and related to his misconduct within employment.  Even if he could establish a constitutionally protected interest, Plaintiff fails to assert specific or individualized conduct by Defendants that violated his constitutional rights, and he received all the process he was due when given notice and offered an opportunity to provide a statement to OIE and during his meeting with Defendant Woodruff.  Moreover, Plaintiff does not allege that he asked any one or more of the named Defendants for a name-clearing hearing (nor was he entitled to one), which is fatal to his reputational due process claim.

Plaintiff's defamation claim fails to identify *any* actual statements by Defendants that would constitute defamation *per se*, nor has he alleged special damages as is required to establish defamation *per quod*.  Further, the defamation claim is also subject to well-established qualified privilege defenses.  Indeed, Plaintiff's claim is inherently rooted in comments that he *does not allege any Defendant ever made at all* but that are instead opinions he baldly claims were purportedly formed by some unidentified members of the public concerning Plaintiff's engagement in sexual misconduct and/or that Plaintiff was the "next Larry Nassar."  Defendants made no such statements and are not even alleged to have done so.  More importantly, however, the allegedly defamatory comments concern the same indisputable truth: *Plaintiff violated MSU's Mandatory Reporting Protocol under the RVSM Policy, as determined by OIE, and Plaintiff failed*

*to live up to and enact his responsibility as an MSU leader, as determined by the Provost, the President, and others*.  Truth, despite Plaintiff's preference to ignore it, is an absolute defense to his defamation claim.

As to Plaintiff's tortious interference claims, each of the Defendants is or was an MSU employee and, thus, were not third parties to his employment agreement.  Further, each Defendant acted with qualified privilege and within the scope of their employment, to benefit MSU and enforce applicable mandatory reporting policies and leadership responsibilities.

It is self-evident that compliance with MSU policies is essential to Plaintiff's former role. The MSU community deserves to know that its employees, specifically its leaders, do everything in their control to promote a safe environment for students.  Plaintiff's own conduct has led him here – not any manufactured due process violations or so-called tortious conduct by Defendants.

For all these reasons and those set forth below, Defendants request that this Court dismiss Plaintiff's Complaint in its entirety with prejudice.

## II.      STATEMENT OF THE FACTS[1]

### A.      Plaintiff's Employment with MSU

In 2007, Plaintiff started his employment with MSU as the Russell E. Palmer Professor of Accounting, an endowed professorship within Broad College.  (Compl. ¶ 15, PageID.5).  Plaintiff also served administratively within Broad College – initially in 2007, as Chair of the Department of Accounting and Information Systems; and starting in July 2012, as Associate Dean for the MBA and professional master's programs. (*Id.*).  In 2015, Plaintiff was offered and accepted an appointment as the Eli and Edythe L. Broad Dean of Broad College ("Dean").  (*Id.* ¶ 3, PageID.3;

---

[1] Although the Complaint contains many false allegations that Defendants unequivocally deny, for the purposes of this Motion only, Defendants assume – as they must in a motion to dismiss under Rule 12(b)(6) – that the sufficiently pled facts alleged in the Complaint are true.

Ex. 1, Plaintiff's May 5, 2015 Offer Letter (the "2015 Offer Letter")).[2]   As Dean, Plaintiff received

an initial salary of $425,000 on an annual (12 month) basis plus research funding equivalent to

that received by named endowed professors in Broad College, not to be less than $30,000 per year.

(Ex. 1).

Plaintiff's appointment as Dean was expressly at-will, allowing the President and the

Provost to discontinue the appointment "at any time."   (*Id.*).   Significantly, in accepting the role

of Dean, Plaintiff "relinquish[ed]" his previous appointment.   (*Id.*).   He was also informed that

when and if his duties as Dean were to end, Plaintiff would return to a tenured faculty role.   (*Id.*).

Plaintiff's position as Dean was renewed for another five-year term in 2020, on the same

terms, and he remained in the position until his August 12, 2022 resignation.   (Compl. ¶¶ 3, 15,

PageID.3, 5).   He is currently a tenured Professor of Accounting and Information Systems.   (*Id.* ¶¶

3, 86, PageID.3, 17).

## B.     MSU's Mandatory Reporting Protocol

MSU's RVSM Policy sets forth the obligations of responsible employees to report potential

misconduct in accordance with the Reporting Protocol for Relationship Violence and Sexual

Misconduct (the "Mandatory Reporting Protocol").   (Ex. 2, RVSM Policy; Ex. 3, University

Reporting  Protocol: Relationship Violence, Sexual Misconduct, and Stalking).[3]   Specifically,

---

[2]  Because Plaintiff repeatedly refers to and relies on several documents not attached to his
Complaint, including the 2015 Offer Letter, the Court may consider such documents in connection
with this motion.  *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–
36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims,
it may be considered without converting a motion to dismiss into one for summary judgment.").

[3]  The RVSM Policy in effect during the time period relevant to this matter is properly attached as
Ex. 2, considering Plaintiff has directly cited to the RVSM Policy and Mandatory Reporting
Protocol within his Complaint.  (*See, e.g.*, Compl. ¶¶ 39, 43, 54, PageID.10, 12).  The Mandatory
Reporting Protocol, which is cited within the RVSM Policy, is attached as Ex. 3 and is also publicly
available here: https://civilrights.msu.edu/policies/reporting_protocols.pdf.

Section VI of the RVSM Policy provides: "University faculty, staff, academic staff, and volunteers, unless specifically exempted . . . ___must promptly report incidents of prohibited conduct that they observe or learn about in their professional capacity or in the context of their work___ and that involve a member of the University community . . . or which occurred at a University-sponsored event."  (Ex. 2 at 12) (emphasis added).  Under the RVSM Policy, prohibited conduct includes sexual harassment and sexual assault.  (*Id.* at 4–7).

The Mandatory Reporting Protocol further provides that "[a]ll conduct listed as Prohibited Conduct in the RVSM Policy is Reportable Conduct," including "Sexual Misconduct."  (Ex. 3 at 2).  Under the Protocol, responsible employees "must promptly report incidents . . . of sexual misconduct."  (*Id.*).  Further, responsible employees "must report all details known to them about the incident, including: what happened, who was involved, when the incident occurred, and where the incident occurred."  (*Id.* at 2–3).

Responsible employees must report prohibited conduct *even if* they believe others have reported, or may subsequently report, the same information.  There is no exemption in the RVSM Policy or Mandatory Reporting Protocol for prior or assumed reporting by others.  And there is certainly no ambiguity about reporting obligations when a member of the MSU community, like Plaintiff, received information directly from an alleged perpetrator that, for example, the perpetrator was "sorry" for being "intoxicat[ed]" and "act[ing] inappropriately," (Compl. ¶¶ 34, 47, 59, PageID.9, 11, 13), and that "something happened that should not have."  (Ex. 4, OIE Failure to Mandatory Report Memorandum, Case No 2022-00907 at 2).[4]

Individuals who violate the Mandatory Reporting Protocol "may be subject to corrective

---

[4] Plaintiff expressly identifies and incorporates the "OIE Report" into the Complaint (*see* Compl. ¶¶ 74, 75, 77, PageID.15-16), and therefore it may be considered by the Court.

or disciplinary action, up to and including dismissal." (Ex. 3 at 5). Potential violations of the

Mandatory Reporting Protocol are investigated by OIE. (*Id.*). In such an instance, OIE is tasked

with documenting any findings in a memorandum, which is sent to the employing unit to determine

whether any action is warranted. (*Id.*).[5]

## C.     OIE's Investigation into Plaintiff's Mandatory Reporting Failure

On April 23, 2022, MSU's OIE received information that a Broad College professor – who

also served as an Associate Dean and directly reported to Plaintiff – became intoxicated at a

University-sponsored event and may have sexually harassed and/or sexually assaulted one or more

students. (Ex. 4). On April 26, 2022, other Broad personnel notified Plaintiff that this professor

had acted "inappropriately" with students at an MSU-sponsored event. (Compl. ¶¶ 47-48,

PageID.11). And on June 16, 2022, OIE notified Plaintiff that the professor was being reported

---

[5] Bizarrely, Plaintiff's Complaint points to a June 2017 third-party investigation by the law firm Jones Day to summarize MSU's reporting protocols and bolster his claims. (Compl. Ex. 1, PageID.34-47). That report by a third-party, however, analyzes an outdated and inapplicable MSU policy. Further, a comparison between the Jones Day report and this case only emphasizes the degree to which Plaintiff acted inappropriately. The Jones Day report recounts that MSU's head football coach immediately called MSU's Title IX Office and "promptly and accurately" reported potential misconduct, despite having almost no information because he believed that a student *may have* told him something that could have implicated the RVSM Policy. (*Id.* at 6, PageID.40-41). The investigation found that a second employee, like Plaintiff, was reported to have knowledge of potential misconduct and *did not* report to OIE because he understood that his supervisor was going to report the conduct. (*Id.* at 9, PageID.43). As a result, the second employee was *suspended*, and the report determined that the second employee had violated the mandatory reporting protocols – regardless of whether anyone else reported the conduct. (*Id.*). The report also states that the Senior Athletic Director, unlike Plaintiff, contacted OIE to confirm a report had been made. (*Id.* at 7, PageID.41). In addition, the Jones Day report discusses and does not find fault with staff members who: (i) became aware of a potential incident after a report was made to OIE; (ii) did not learn any details regarding the incident itself; and (iii) only heard that an investigation was underway after the incident had been reported to OIE and after MSU PD had identified the players who might be implicated in the incident. (*Id*. at 10, PageID.44). The Plaintiff in this case, on the other hand, did – among other things – learn details about the incident – including directly from the alleged perpetrator and from two of his faculty members – and failed to report.

for potential misconduct under the RVSM Policy.  (*Id.* ¶ 27, PageID.8).

On June 20, 2022, Plaintiff met with FASA and the Office of Support and Equity, at which time Plaintiff revealed that on May 4, 2022, the professor in question had notified Plaintiff that he had "overdrank and . . . acted inappropriately," and the professor apologized for his behavior.  (*Id.* ¶¶ 59, 60, PageID.13; Ex. 4).  Further, Plaintiff advised the group that he had "pertinent" information to share with OIE about the conduct – information he had failed to report to OIE for months.  (Ex. 4).  In the Complaint, Plaintiff concedes that he was concerned enough about the allegations to have "considered the safety of students" as early as April 2022.  (Compl. ¶ 51, PageID.12).  However, he chose not to report the issue because: (1) "the semester had ended . . . and thus the professor would not have any potential contact with students"; (2) Plaintiff was not "aware of any prior allegations of any OIE issues concerning that professor"; and (3) the professor "was expected to resign effective June 30, 2022" for unrelated reasons.  (*Id.* ¶¶ 51–53).  MSU has designated procedures and personnel, including the RVSM Policy and OIE, tasked with making these determinations explicitly so that they are not made *ad hoc* and without transparency by individual leaders like Plaintiff, as Plaintiff well knew.  And what Plaintiff did not do, of course, was confirm with OIE that it had received a report about this incident – or, more importantly, report what he knew firsthand – or take any action to address the report and self-disclosure of his direct report's misconduct.

On June 22, 2022, OIE Investigator Defendant Towe met with Plaintiff regarding his "potential mandatory reporting failure."  (*Id.* ¶ 36, PageID.9; Ex. 4).  During the meeting, Plaintiff confirmed to Defendant Towe that the professor under investigation had reached out to Plaintiff and stated he was "very sorry," that he had drank too much, and that "something [had] happened that should not have."  (Ex. 4).  Plaintiff also admitted that two of his subordinates – an Associate

Dean and Director of the MBA program – had separately informed him that the professor was engaging in "inappropriate" behavior and that they would "tak[e] care of" the situation and update him. (*Id*.).

Defendant Towe additionally interviewed the Associate Dean and Director. (*Id*.). The Associate Dean reported that he may not have identified the professor by name when speaking to Plaintiff, but confirmed that he advised Plaintiff that a faculty member was reportedly "dancing inappropriately," that the behaviors would be reported to OIE, and that Plaintiff then contacted the Director for additional information. (*Id*.). The Director reported that he informed Plaintiff that the professor was "behaving inappropriately to students," dancing "suggestively" with students, and may have touched a student. (*Id.*). The Director felt that while he "made it clear to [Plaintiff that the professor's] behavior was sexual in nature," Plaintiff instead focused on the potential intoxication level of the professor. (*Id.*).[6]

Based on the information available to OIE, including Plaintiff's own statement, OIE determined that Plaintiff violated his mandatory reporting obligations under the RVSM Policy. (*Id*.). Specifically, OIE determined that while Plaintiff "denie[d] information provided to him was sufficient to file a report with OIE, [the Associate Dean's and Director's] statements strongly support[ed] otherwise." (*Id*.).

Accordingly, on August 8, 2022, OIE issued a memorandum that included a finding and recommended training. (*Id.*). OIE referred the matter to then-Provost Defendant Woodruff, Defendant Austin (the recently appointed Interim Associate Provost and Vice President of FASA), and a Director of FASA to review and consider whether any actions were warranted, with the

---

[6] In his Complaint, Plaintiff alleges that these individuals informed him that the professor was "intoxicated" and "acted 'inappropriately'" and "was dancing" and that this conduct was reportable to OIE. (Compl. ¶¶ 47-48, PageID.11).

direction that OIE be notified of any actions taken.  (*Id.*).  OIE had no other involvement in the matter, except to provide training to Plaintiff on the Mandatory Reporting Protocol upon request.

After FASA, in consultation with others, reviewed and considered OIE's memorandum and its findings, Defendant Austin was asked to prepare a memorandum to Defendant Woodruff with recommendations.  (Ex. 5, August 8, 2022 Letter from Austin to Woodruff).[7]  Consistent with those recommendations, and after consulting with others, Defendant Woodruff determined that Plaintiff should no longer serve as Dean of the Broad College.

**D.    Plaintiff's Resignation as Dean**

On August 12, 2022, Plaintiff met with Defendant Woodruff, who informed him of her lack of support for his continued leadership and the reasoning behind that decision.  Woodruff provided Plaintiff the opportunity to respond and resign, and informed him that he would "return to faculty as a tenured professor, unaccompanied by a named or endowed professorship."  (Compl. ¶¶ 83, 86, PageID.17).  According to Plaintiff, Defendant Woodruff advised Plaintiff that "she had concluded a failure in leadership for several reasons."  (*Id.* ¶ 83; *see also id.* ¶¶ 103-107, PageID.20-21).

Plaintiff then resigned.  After his resignation, he received notice confirming acceptance of his resignation, the process for his return to faculty, and logistical details.  (*Id.* ¶ 86, PageID.17; Ex. 6, August 12, 2022 Letter).[8]  He also received the option to seek research assignment sabbatical through August 15, 2023 at his current rate of pay and a salary of $428,372 upon return to faculty

---

[7] The Plaintiff explicitly cites to the August 8, 2022 memorandum between Austin and Woodruff, and relies on this document for all of his claims against Defendant Austin.  (*See*, *e.g.*, Compl. ¶ 128, PageID.24).  It is therefore properly before the Court.

[8] Plaintiff expressly identifies and incorporates the written notice provided to Plaintiff subsequent to his resignation (PageID.17, ¶ 86), and therefore it may be considered by the Court and is appropriately attached as Ex. 6.

– and Plaintiff took that research assignment, accepting the terms of his resignation.  (Ex. 6).

**E.     Plaintiff's Claims and Allegations Concerning Defendants**

Against each Defendant, Plaintiff brings a procedural due process claim under Section 1983 and a defamation claim (Counts I and IV).  The Section 1983 claim is premised on an alleged deprivation without due process of an alleged property interest in his Dean appointment and under the 2015 Offer Letter in an "endowed chair position," and of an alleged liberty interest in Plaintiff's reputation.  (Compl. ¶¶ 140, 142, 146, PageID.27-28).

Plaintiff also asserts claims of tortious interference with contract and tortious interference with business relationship against Defendants Woodruff, then-MSU President Samuel Stanley, then-Senior Associate Provost Jeitschko, and Austin (Counts II and III).  Specifically, Plaintiff alleges Defendants tortiously interfered with Plaintiff's 2015 Offer Letter and/or business relationship with MSU by removing Plaintiff from being Dean, and failing to return him to an endowed chair position and an endowed professorship.  (*Id.* ¶¶ 151, 159, PageID.28-29).

**1.     Defendant Woodruff**

Defendant Woodruff is the former Provost and the current Interim President of MSU.[9]  (*Id.* ¶ 4).  According to Plaintiff, Woodruff and other Defendants participated in a "scheme" to oust Plaintiff and "stigmatize [his] good name" in order to advance Woodruff's ambition to become President of the University.  (*Id.* ¶ 92, PageID.18).  Plaintiff further alleges that the reasons Defendant Woodruff gave the Board of Trustees for Plaintiff's "removal. . . as Dean and other adverse employment actions" were pretextual.  (*Id.* ¶¶ 100-108, PageID.20-21).  This is the extent

---

[9] MSU's Board of Trustees unanimously appointed Woodruff to the interim role on October 31, 2022.

of factual allegations provided to support this alleged "scheme."[10]  Plaintiff does not even bother to explain why Defendants would act to support Woodruff in this regard.

Plaintiff alleges that Woodruff failed to give him written notice of, and a "meaningful opportunity" to respond to, "her purported rationales for terminating him and returning him to the faculty without an endowed professorship."  (*Id.* ¶¶ 83-84, 111, PageID.17, 21).  Plaintiff also alleges that Woodruff made "defamatory" statements about him at a September 13, 2022 MSU Faculty Senate meeting by merely stating that MSU procedures "were all duly followed" in his case and that the decision to terminate him as Dean was "neither capricious nor malicious."  (*Id.* ¶ 130, PageID.25).  Plaintiff's Complaint fails to allege that Woodruff had any involvement in OIE's investigation and further avoids that FASA recommended, with others' consultation and support, to Woodruff that Plaintiff no longer serve as the Dean.

### 2.    Defendant Stanley

Plaintiff alleges that former President Stanley publicly approved of and endorsed Defendant Woodruff's statements and conduct after Plaintiff was removed from the position of Dean.  Yet, Plaintiff fails to point to any actual statement – defamatory or otherwise – made by Stanley.  (*Id.* ¶ 91, PageID.18).  Plaintiff also generally alleges, without more, that Stanley assisted in a pre-planned removal of Plaintiff as Dean.  (*Id.* ¶ 92).  Plaintiff does not provide any factual support for this general allegation.

---

[10] The allegation that Woodruff "schemed" with other Defendants to oust Plaintiff to benefit Woodruff is implausible.  Plaintiff does not allege that Woodruff had any role in OIE's investigation, or in FASA's recommendation that Plaintiff no longer serve as Dean after consulting different University units.  Additionally, by Plaintiff's own admission, Woodruff gave Plaintiff a "very positive" annual review just a few weeks before his resignation (PageID.7, ¶ 25), which belies the idea that she was trying to undermine Plaintiff.  Furthermore, Defendant Stanley did not resign until November of 2022. (*Id.* ¶ 6, PageID.4).  Thus, at the time of Plaintiff's resignation as Dean, the President's role was unavailable, and Plaintiff does not allege that Woodruff was aware of any purported shortlist to replace Stanley at some unknown time.

### 3.      Defendants Jeitschko and Austin

Defendant Jeitschko (then-Senior Associate Provost) and Defendant Austin (Interim Associate Provost and Vice President of FASA, appointed July 2022) are generally alleged to also have assisted in a "pre-planned" removal of Plaintiff as Dean "behind-the-scenes," without any specific allegations as to how or to support that they violated Plaintiff's due process rights.  (*Id.* ¶ 92, PageID.18).  Significantly, Plaintiff does not allege, because he cannot, that either Defendant Austin or Jeitschko had the authority to remove Plaintiff as Dean, or in fact removed him as Dean.

Indeed, a mere four paragraphs in Plaintiff's lengthy Complaint mention Defendant Austin at all.[11]  (*Id.* ¶¶ 9, 92, 128, 136, PageID.4, 18, 24, 26).  At most, Defendant Austin is alleged to have prepared an internal memorandum to her supervisor (then-Provost Woodruff, who also oversaw Plaintiff's employment) recommending that Plaintiff no longer serve as Dean and setting forth the rationale for this opinion, which Plaintiff generally alleges contained false and "defamatory" statements – no specific statements therein being identified.  (*Id.* ¶ 128, PageID.24-25; Ex. 5).

Plaintiff pleads no facts to support that Defendant Jeitschko had any role in Plaintiff's removal as Dean.  Instead, he is alleged to have made certain unknown defamatory statements at a Homecoming event on October 13, 2022, by stating Plaintiff engaged in wrongful behaviors and that there were rationales for his termination as Dean which would be confirmed.  (¶ 131, PageID.19).  And Defendant Jeitschko is baldly alleged to have "intimidated MSU employees from cooperating and providing facts in the investigation" by an outside law firm – an investigation

---

[11] Notably, the Complaint does not mention Defendant Austin when it refers to FASA during June 2022, nor could it, as she was not serving as Interim Associate Provost and Associate Vice President for FASA at that time.  Defendant Austin was Interim Dean of the College of Education at that time and had no awareness of or involvement in this situation; Plaintiff does not, nor can he, allege otherwise.

that occurred months after Plaintiff's transition out of the Dean role.  (*Id.* ¶ 125, PageID.24).

### 4.    Defendants Schmidtke and Towe

Without providing any facts, Plaintiff alleges that upon "information and belief" Defendant Schmidtke (Title IX Coordinator and Director of Anti-Discrimination Policy Response) and Defendant Towe (OIE Investigator) "facilitated in the wrongful termination of Plaintiff" (*Id.* ¶ 93, PageID.19) and failed to provide sufficient due process as it related to Plaintiff's failure under the Mandatory Reporting Protocol (*Id.* ¶ 110, PageID.21).  Otherwise, Plaintiff alleges generally that the August 8 OIE Report contains – in his mind – false and thus defamatory statements.  (*Id.* ¶ 127, PageID.24).

### 5.    Defendant Guerrant

Defendant Guerrant is MSU's Vice President for Media and Public Information and University Spokesperson.  Plaintiff does not allege, as he cannot, that Guerrant had any involvement at all in the investigation into his conduct or any decisions concerning his employment.  Rather, his only allegations against Guerrant are that she, in her capacity as the University Spokesperson, responded to press inquiries by providing the University's statement concerning Plaintiff's resignation as Dean.[12]  Plaintiff claims that this statement, which he does not attach to his Complaint, was defamatory.  (*Id.* ¶¶ 94, 129, PageID.19, 25).

_____

[12] Notably, Plaintiff requested all of Guerrant's communications via FOIA and therefore possesses the exact statement he claims is defamatory but has tellingly chosen to characterize it rather than provide it in full to the Court to review.  (PageID.25, ¶ 129).

## III.    ARGUMENT

### A.    Standard of Review

#### 1.    Motion to Dismiss, Fed. R. Civ. P. 12(b)(1)

"A motion to dismiss on the ground that sovereign immunity bars the plaintiff's claims is properly treated as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." *Odom v. Univ. of Mich.,* 2017 WL 2117978, at *2 (E.D. Mich. May 16, 2017); *see also Nair v. Oakland Cty. Cmty. Mental Health Auth.,* 443 F.3d 469, 476 (6th Cir. 2006).   In addition, "[w]hether a party has standing is an issue of the court's subject matter jurisdiction under [Rule] 12(b)(1)." *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).   Plaintiff bears the burden of establishing jurisdiction.  *Odom,* 2017 WL 2117978, at *2.

#### 2.    Motion to Dismiss, Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, Plaintiff must assert sufficient factual allegations to establish that his claims are "plausible on [their] face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Following the two-step process set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), courts first disregard "mere recitals of the elements of a cause of action, supported by mere conclusory statements."   Thus, allegations based upon "information and belief" are insufficient because they "are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency."  *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013).  Second, courts review any remaining allegations to determine whether they "plausibly" entitle the plaintiff to relief.  *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 567).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Sixth Circuit has explained that "the combined effect of *Twombly* and *Iqbal* require [a] plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor v. Louisville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011). In other words, a "plaintiff may not use the discovery process to obtain these facts after filing suit." *Id.* Accordingly, a complaint that does not provide the "when, where, in what or by whom" to support conclusory allegations fails to state a claim. *Center for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011).

**B.      Eleventh Amendment Sovereign Immunity Requires Dismissal of All Claims Against Defendants (Counts I-IV)**

**1.      Claims Pled Against Defendants in Their Official Capacities Are Barred by Sovereign Immunity**

Any claims against Defendants brought in their official capacity – and any requests for relief flowing from those claims – are barred by sovereign immunity.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. Amend. XI. Absent a waiver, the Eleventh Amendment "forbids a citizen from bringing suit for monetary damages in federal court against a state, state agent, or state instrumentality without that state's consent." *Thomas v. Noder-Love*, 621 F. App'x 825, 831 (6th Cir. 2015) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984) (federal and state law claims against state and state officials barred by Eleventh Amendment).

It is well-established that state colleges and universities are arms of the state that are immune from suit in federal court under the Eleventh Amendment. *Estate of Ritter v. Univ. of Michigan*, 851 F.2d 846, 850 (6th Cir. 1988) (holding that University of Michigan is immune under

the Eleventh Amendment); *Hill v. Bd. of Trustees of Mich. State Univ.*, 182 F. Supp. 2d 621, 625 (W.D. Mich. 2001) ("MSU is an 'arm of the state' entitled to Eleventh Amendment immunity").[13] This protection extends to suits against state officials in their official capacity, which, as "a suit against the official's office . . . is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Permitting a suit against a state official or employee in their official capacity to proceed when the suit against the state would be barred would otherwise allow parties "to circumvent congressional intent by a mere pleading device." *Id.*[14]

> ## 2. *Ex Parte Young* Doctrine Bars Plaintiff's Request for Relief

An exception to the immunity conferred by the Eleventh Amendment is when a plaintiff "brings claims for prospective [injunctive] relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (citing *Ex Parte Young*, 209 U.S. 123 (1908)). As the Supreme Court emphasized, "*Young*'s applicability has been tailored to conform as precisely as possible to those specific situations . . . in which a violation of federal law by a state official is ongoing[,] as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as . . . cases in which the relief against the state official directly ends the violation of federal law[.]" *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986). Put differently, even under the *Young* doctrine, "[r]elief that in essence serves to compensate a party injured in the past by an action of a

---

[13] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Heike v. Guevara ("Heike I")*, 654 F. Supp. 2d 658, 672 (E.D. Mich. 2009) (explaining that State employees sued in their official capacities "are not 'persons' within the meaning of § 1983"), *aff'd*, 519 F. App'x 911 (6th Cir. 2013); *Weisbord v. Michigan State Univ.*, 495 F. Supp. 1347, 1355 (W.D. Mich. 1980).

[14] While Eleventh Amendment immunity can be waived, Plaintiff does not allege that Defendants or MSU have waived their immunity.

state official" remains barred under the Eleventh Amendment if the relief "is expressly denominated as damages" or if the relief is "tantamount to an award of damages. . . even though styled as something else." *Id.* at 278.

Plaintiff primarily requests four forms of equitable relief: (1) an injunction reinstating him as Dean of Broad College; (2) an injunction "reinstating his endowed chair position;" (3) a declaratory ruling that, as a matter of law, his due process and constitutional rights were violated; and (4) an injunction from this Court prohibiting "any further acts of discrimination, intimidation, or retaliation." (Compl. at 31).[15]  Plaintiff's request to be reinstated as Dean of the Broad College – which is not a form of relief that any of the named Defendants can provide – is addressed in Section B.3 below, and Plaintiff's other requests for equitable relief are addressed here and are barred by the doctrine of sovereign immunity.

### i.    "Reinstatement" of Plaintiff's Endowed Chair Position is Not Proper

Plaintiff requests that the Court enter an injunction against Defendants "reinstating" his "endowed chair position." (Compl. at 31).  Prior to his appointment as Dean of Broad College, Plaintiff held an endowed position as the Russell E. Palmer Professor of Accounting, and had been chair of the Department of Accounting and Information Systems.  As his offer letter states, Plaintiff relinquished that position in 2015 when he accepted the appointment as Dean of Broad College. (Ex. 1).  During his seven-year tenure as Dean, Plaintiff therefore did not hold any chair position,

---

[15] Plaintiff's remaining forms of relief, styled as "legal" relief, to the extent they are sought from Defendants in their official capacities, are undoubtedly barred by the Eleventh Amendment.  The Eleventh Amendment "prohibit[s] the award of money damages or restitution" where there is "a dispute about the lawfulness of respondent's past actions."  *Green v. Mansour*, 474 U.S. 64, 73 (1985).  As a result, to the extent Plaintiff seeks monetary relief from Defendants in their official capacities – for example, "back pay with benefits, front pay with benefits, compensatory damages, punitive damages, interest, and costs" – those requests for relief would be barred under the Eleventh Amendment.  *Dvorak v. Wright State Univ.*, 1997 WL 1764779, at *8 (S.D. Ohio Sept. 3, 1997).

at any time.  And he did not receive, nor was he entitled to, an endowed chair position when he resigned as Dean.  (*Id.*).[16]

Further, Plaintiff cannot be "reinstated" to a position he did not hold at the time of the conduct in question.  *See Jeffries v. Celeste*, 654 F. Supp. 305, 307 (S.D. Ohio 1986) (permitting plaintiffs to seek injunctive relief, "such as reinstatement to their *former* positions") (emphasis added); *Gies v. Flack*, 495 F. Supp. 2d 854, 865 (S.D. Ohio 2007) (concluding that the *Young* doctrine would bar "reinstatement to a position that [the plaintiff] had not previously held").[17] Plaintiff's request to be reinstated to an "endowed chair position" he did not hold at the time of the alleged misconduct is precisely the kind of "compensatory" relief that is barred by the Eleventh Amendment.  *Dvorak v. Wright State Univ.*, 1997 WL 1764779, at *11 (S.D. Ohio Sept. 3, 1997) (denying plaintiff's request for a tenured position she claimed she should have received).

### ii.      Declaratory Relief is Not Appropriate under *Ex Parte Young*

Plaintiff's request for a ruling that "as a matter of law" his "due process and constitutional rights were violated" is similarly barred under the *Ex Parte Young* doctrine.

The Eleventh Amendment prohibits awarding "a declaratory judgment" that would have "much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment."  *Green v. Mansour*, 474 U.S. 64, 73 (1985).  "Although a request for a declaration that past official acts were illegal

---

[16] Plaintiff's 2015 Offer Letter only provides that "upon [Plaintiff's] return to the faculty, you will be appointed as a John A. Hannah Professor, Broad Professor, or other available endowed professorship in the Broad College."  (Ex. 1.)  This is distinct from an "endowed chair position" into which Plaintiff is now demanding reinstatement.

[17] Nor does the plain meaning of the term "reinstate" support Plaintiff's apparent claim that the Court can "reinstate" him to a position he did not hold prior to the events at issue in this case.  *See, e.g.*, Black's Law Dictionary ("to place again in a former state, condition, or office; to restore to a state or position from which the object or person had been removed").

does not directly seek monetary relief . . . , such a request, if it is clearly an indirect means of seeking retroactive monetary relief, is barred by the Eleventh Amendment, nonetheless." *Gies*, 495 F. Supp. 2d at 863; *Dvorak*, 1997 WL 1764779, at *10 ("Plaintiff's request for a 'declaration that the Defendants' conduct violated her rights' – which is, not coincidentally, phrased in the past tense – applies to wholly past conduct by the Defendants and is, thus, a request for retroactive relief.")   That is precisely what Plaintiff seeks here.   Accordingly, Plaintiff's requests for declaratory relief are prohibited by the Eleventh Amendment.

### iii.   Other Equitable Relief is Improper under *Ex Parte Young*

Finally, Plaintiff requests an injunction prohibiting Defendants from "any further acts of discrimination, intimidation, or retaliation."   (PageID.8).   Plaintiff, who makes only passing reference to alleged retaliation and discrimination (*see Id.* ¶ 117, PageID.22), does not specify any acts of discrimination, intimidation, or retaliation whatsoever, let alone that such conduct is continuing.    These threadbare recitals and vague request for injunctive relief are not sufficient under *Ex Parte Young*.  *See e.g., Boler,* 865 F.3d at 412 (finding that plaintiffs had not sufficiently invoked the *Ex Parte Young* doctrine by including injunctive relief in the prayer for relief, because "it was not clear what injunctive relief [wa]s sought" and there was "no indication as to what th[e] injunctive relief might be.").

### 3.   Plaintiff's Claims for Prospective Injunctive Relief Fail for Lack of Redressability

Plaintiff's claims for prospective injunctive relief – most notably that he be reinstated as Dean of Broad College – must be dismissed for a separate reason: they lack the essential, jurisdictional requirement of redressability.  Defendants cannot provide the prospective injunctive relief Plaintiff seeks.  Plaintiff therefore lacks standing to pursue these claims for injunctive relief against the named Defendants.

To establish Article III standing, Plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Unless and until Plaintiff satisfies each element, this Court lacks jurisdiction over the controversy.  Thus, "[t]he plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.  Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Id.* (alteration in original) (citation and internal quotation marks omitted).

Redressability is "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000).  "To satisfy the redressability element of standing, the plaintiff must show that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *R. K. by and through J. K. v. Lee*, 53 F.4th 995, 1001 (6th Cir. 2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  Moreover, "[r]emedies . . . ordinarily operate with respect to specific parties." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (internal quotation marks omitted).  Thus, redressability is less likely where the prospective benefit to the plaintiff depends on the actions of independent actors.  *See ASARCO, Inc. v. Kadish,* 490 U.S. 605, 615 (1989).  Here, Plaintiff's Complaint is utterly devoid of any factual allegations that any one or more of Defendants has authority to effectuate the relief he requests vis-à-vis reinstatement of the Dean position or his former endowed chair title.

The core of Plaintiff's prospective injunctive relief is that Defendants should restore his position as Dean and promote him to an endowed teaching position.  But none of the named defendants – alone, or acting together – can unilaterally appoint Plaintiff as Dean of Broad College.

As Plaintiff's own offer letter states, "final approval for your appointment rests solely with the MSU Board of Trustees." (Ex. 1).  In addition, MSU's Bylaws for Academic Governance similarly provide that the appointment of a Dean requires the recommendation of the University President <u>and</u> the approval of the Board of Trustees.  (*See* Ex. 7, Bylaws for Academic Governance, § 2.1.2 ("An academic administrator is a faculty member who has authority and responsibility delegated by the President and the Board of Trustees for the administration of a unit.")).[18]  Broad College's policies on endowed positions similarly require that endowed positions can only be appointed by the Dean of Broad College.  (*See* Ex. 8, Broad College Policies on Named/Endowed Faculty Positions ("The Dean of the Broad College of Business shall have authority to award named/endowed positions.")).  At bottom, even if the Court were to grant Plaintiff the injunctive relief he seeks, Plaintiff fails to allege that Defendants can provide it, because they cannot.

### 4. Defendants are Entitled to Qualified Immunity for All Claims Against Them in Their Individual Capacities

Defendants are also entitled to qualified immunity from claims brought against them in their individual capacities.  "Qualified immunity shields government officials from standing trial for civil liability in their performance of discretionary functions, unless their actions violate clearly established rights."  *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 626 (6th Cir. 2019) (citing *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019)).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).

The law of qualified immunity seeks to strike a balance between "the need to hold public

---

[18] The Bylaws for Academic Governance (attached as Ex. 7) and the Broad College's policies on named and endowed positions (attached as Ex. 8) are public records over which the Court may take judicial notice on a motion to dismiss.  *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).

officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Gavitt v. Born*, 835 F.3d 623, 641 (6th Cir. 2016) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)); *see also Pearson*, 555 U.S. at 231 (stressing "the importance of resolving immunity questions at the earliest possible stage in the litigation").

Once a defendant raises the defense of qualified immunity, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). To overcome a qualified immunity defense, a plaintiff must show that: (1) the official's conduct violated a constitutional right; and (2) the right was clearly established. *Clemente v. Vaslo*, 679 F.3d 485, 489 (6th Cir. 2012). The bar for a clearly established right is high, requiring "a high degree of specificity," focused on "the crucial question of whether the official acted reasonably in the particular circumstances that he or she faced." *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018). And even where the law is "clearly established" and an official's conduct is "clearly defined," qualified immunity also protects an individual if it was objectively reasonable for them to believe their acts were lawful at the time the challenged acts took place. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As set forth below, the Complaint fails to allege the violation of any constitutional right held by Plaintiff. Nor has Plaintiff sufficiently alleged that any of Defendants' actions violated a "clearly established" right. Indeed, Plaintiff concedes that his conduct was investigated by OIE. (Compl. ¶ 36, PageID.9). That investigation concluded that Plaintiff violated the University's policies and procedures. Plaintiff also concedes that MSU leadership concluded that Plaintiff had

24

failed in his leadership for several additional reasons.  (*Id.* ¶ 83, PageID.17).  Following this, he was asked to resign his at-will position as Dean of Broad College – which he did.  Plaintiff's efforts to articulate a "clearly established" right amount to little more than his disagreement with the outcome of MSU's investigation and MSU leadership's assessment of his own leadership and judgement.  And, where the outcome is clearly consistent with MSU policies governing that decision, he asserts that those policies must be flawed.  (*See Id.* ¶¶ 61-81, PageID.13-17).  But an assertion that Plaintiff is entitled to a different outcome, or a different process, is not a sufficient allegation to substantiate that Defendants violated a "clearly established" right.  Thus, the doctrine of qualified immunity is fatal to Plaintiff's remaining claims.

**C.     Plaintiff's Section 1983 Due Process Claim Fails as a Matter of Law (Count I)**

In addition to being barred by immunity, Plaintiff's Section 1983 claim must be dismissed for failure to state a claim.  To state a claim under Section 1983, Plaintiff must allege that a person acting under color of state law violated a right provided to him by the United States Constitution.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "[T]he existence of a constitutional right must be the threshold determination in any section 1983 claim."  *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996).  Plaintiff premises his claim on an alleged failure to provide due process under the Fourteenth Amendment, but he fails to adequately plead that any of Defendants' conduct violated his constitutional rights.  Nor is Plaintiff's Section 1983 claim – which is based on his alleged protected interests in his former administrative titles and his "good name, reputation, honor and integrity" – cognizable.  Accordingly, Plaintiff's Section 1983 claim should be dismissed with prejudice as to all Defendants.

**1.     Plaintiff Has Insufficiently Pled Individualized Violations by Defendants**

A plaintiff asserting a Section 1983 claim "must plead *each* Government-official defendant, through the official's *own individual actions*, has violated the Constitution," or Plaintiff

has failed to state a legal claim. *Iqbal*, 556 U.S. at 676 (emphasis added). Accordingly, Plaintiff must "allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008); *see also Stoudemire v. Michigan Dept. of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013) ("[Q]ualified immunity must be assessed in the context of each individual's specific conduct." (internal quotation marks omitted)). Blanket acts alleged against all defendants, without more, are insufficient. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011); *see also Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (qualified immunity applies where allegations are based on "collective" knowledge).

The Complaint fails to assert specific or individualized conduct by each Defendant that violated Plaintiff's constitutional rights.[19] What Plaintiff suggests is a "scheme" to violate his rights and remove him as Dean amounts to little more than a series of appropriate business decisions, by a group of MSU officials and employees, to recommend that Plaintiff resign his at-will position as Dean due to his mandatory reporting and leadership failures, a recommendation accepted by the then-President and then-Provost.[20]

Taking each Defendant in turn, Plaintiff fails to plausibly state a § 1983 claim against Schmidtke and Towe for any of their individual actions. Plaintiff, in a single sentence, merely

---

[19] Indeed, despite making numerous conclusory conspiracy-like allegations against Defendants, Plaintiff notably fails to assert an actual conspiracy cause of action against Defendants because any such cause of action would be similarly meritless.

[20] Plaintiff fails to allege that Defendant Guerrant had any involvement whatsoever in violating his constitutional rights. On that basis alone, any Section 1983 claim against Guerrant should be dismissed with prejudice. *See Stark v. City of Memphis*, 2020 WL 8770177, at *15 (W.D. Tenn. Feb. 18, 2020) (dismissing charges against defendant where complaint "contains no specific allegations of any actions" taken by a named defendant), *report and recommendation adopted*, 2021 WL 597880 (W.D. Tenn. Feb. 16, 2021).

opines that Schmidtke and Towe violated his rights because, "on information and belief," Schmidtke and Towe facilitated the wrongful termination of Gupta, working with other Defendants." (Compl. ¶ 93, PageID.19). But these are "precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told [courts] to ignore when evaluating a complaint's sufficiency." *16630 Southfield Ltd. P'ship*, 727 F.3d at 506; *see also Smith v. Wrigley Mfg.*, 749 F. App'x 446, 448 (6th Cir. 2018) (generic "recitations of the elements [of a claim] unenhanced by specific facts" cannot survive a motion to dismiss). This statement is far too conclusory to meet Plaintiff's pleading burden.

Plaintiff's allegations against Austin, Jeitschko, and Stanley are similarly threadbare and conclusory. Plaintiff alleges that these three Defendants violated his rights because they, along with Woodruff, "pre-planned" his termination from his appointment as Dean "behind-the-scenes in an effort for Woodruff to smear and stigmatize Gupta's good name and thereby eliminate her competitor." (PageID.18, ¶ 92). These allegations are as threadbare as they are incomprehensible. At bottom, these statements amount to little more than the uncontroversial assertion that three university officials participated – in some unspecified way – in the decision to recommend that Plaintiff step down as Dean. But participation or involvement by three university officials, without more, is insufficient to allege that these three Defendants violated Plaintiff's constitutional rights. *See Lanman*, 529 F.3d at 687 (granting summary judgment for claims against individual defendants where allegations are limited to assertions that the defendants were "present" or "perhaps involved" in an adverse action against the plaintiff, where the plaintiff "fail[s] to allege, with any particularity, the unconstitutionality" of their individual actions).

For similar reasons, Plaintiff's allegations against Defendant Woodruff also fail. For Woodruff, Plaintiff strings together a series of paltry recitations of the elements held together by

the unspecified, unsupported assertion that, after learning that Plaintiff had violated the University's mandatory reporting policies and otherwise did not take action with respect to the inappropriate conduct of a direct report, Woodruff asked Plaintiff to resign only to "smear and stigmatize him" and thereby "eliminate her competitor" for the presidency. (PageID.18, ¶ 92).[21] But Plaintiff fails to allege any unconstitutional acts by Woodruff. Stripping away Plaintiff's farfetched and unsupported assertions about Woodruff's motives, he alleges that: (1) Woodruff asked him to resign his at-will position as Dean; (2) she would have removed him as Dean if he had not voluntarily resigned; and (3) by taking these steps, he now no longer serves as Dean.[22] None of these acts is unconstitutional. In fact, each is consistent with MSU policy and procedure and Plaintiff's offer letter, which sets out the *at-will* nature of his administrative role. Plaintiff, once again, fails to meet his pleading burden or allege facts sufficient to establish his 1983 claim.[23]

---

[21] At no point does Plaintiff supply any factual support for this baseless allegation, which undergirds much of his Complaint.

[22] While Plaintiff alleges that the "rationales" for Defendant Woodruff to request Plaintiff's resignation were "pretextual" and not "supported by the facts," (PageID.20-21, ¶¶ 101-108), an undisputed and crucial consideration for Woodruff (and FASA) – Plaintiff's mandatory reporting failure – was independently investigated and determined by OIE, not Woodruff. More to the point, allegations that Woodruff – in exercising her discretion over an at-will position – relied on OIE's conclusion that Plaintiff failed to report are not and cannot be sufficient to make out a claim of an unconstitutional act by Woodruff. Moreover, Plaintiff grossly misrepresents what he calls the other "purported rationales" for Woodruff (and FASA) with respect to Plaintiff.

[23] In a single sentence in his Complaint, Plaintiff asserts – without any factual basis – that "on information and belief, defendants discriminated against Gupta in treating him far differently from any other person who was not Indian." (PageID.22 ¶ 117). Plaintiff follows that claim with the allegation that "all other MSU faculty and administrators who allegedly violated" the University's mandatory reporting policy were "treated far differently." (*Id.* ¶ 118). Plaintiff's threadbare allegations "mirror those we have seen and rejected – naked recitations of the elements unenhanced by specific facts." *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x at 448 (dismissing age discrimination complaint where plaintiff failed to provide "specifics regarding the other employees or their different treatment").

**2.      Plaintiff Did Not Have a Protected Property Interest under his 2015 Offer Letter**

Plaintiff's Complaint fails to clear even the basic hurdles of a Section 1983 claim.  Even if Plaintiff could successfully plead individualized conduct by each Defendant, his due process claim – in which he lays claim to his former Dean and chair titles – must still be dismissed because Plaintiff has failed to identify a cognizable property interest of which he was deprived.

For a procedural due process claim, a plaintiff must establish a constitutionally protected liberty or property interest and show that such an interest was deprived without appropriate process.  *Board of Regents v. Roth,* 408 U.S. 564, 569-70 (1972); *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1108 (6th Cir. 1995).  The Sixth Circuit applies a two-part analysis to procedural due process claims.  First, "the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment.  Only after identifying such a right [does the court] continue to consider whether the deprivation of that interest contravened notions of due process."  *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 762-63 (6th Cir. 2005) (internal quotation marks omitted).

As set forth above, the 2015 Offer Letter did not appoint Plaintiff to an endowed chair position, as he alleges in Count I, and he expressly relinquished his former chair position when he accepted the offer to be Dean.  (Ex. 1.)  The 2015 Offer Letter appointed Plaintiff as the Eli and Edythe L. Broad Dean.  (*Id.*)  "As a general rule, Sixth Circuit caselaw establishes that tenured university professors do not have a constitutionally protected property interest in administrative posts."  *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 579 (6th Cir. 2021) (internal quotation marks omitted) (affirming dismissal of due process claim based on plaintiff's removal from chair position because "no process was due" absent an express guarantee of removal for cause); *see also Crosby v. Univ. of Kentucky*, 863 F.3d 545, 552-55 (6th Cir. 2017) (holding that a tenured professor lacked

a protected property interest in his at-will administrative position of chairperson of his department, and thus, his removal as chairperson did not violate his procedural due process rights and affirming lower court's decision granting defendant's motion to dismiss).  This is particularly true where a contract does not expressly create a right to removal for cause.  *Kaplan*, 10 F.4th at 580; *see also Garvie v. Jackson*, 845 F.2d 647, 651-52 (6th Cir. 1988) (holding that defendants were entitled to qualified immunity because they reasonably believed the plaintiff to be subject to removal from a department head position on a basis other than cause when the written appointment stated that department heads "serve at the pleasure of the Chancellor");  *Bullock v. Bd. of Regents*, 1989 WL 140167, at *3 (6th Cir. Nov. 21, 1989) (holding that a tenured professor had no protected property interest in her directorship position where the record demonstrated that she had tenure "only in her capacity as an academic professor").

Here, Plaintiff's 2015 Offer Letter makes plain that: (1) Plaintiff's appointment as the Eli and Edythe L. Broad Dean could "be discontinued" at any time; and (2) Plaintiff indisputably "relinquish[ed]" his previous appointment.  (Ex. 1).[24]  Because the 2015 Offer Letter establishes that his appointment was at-will, Plaintiff has identified no cognizable property interest for which process is owed, and accordingly his due process claim fails.[25]

---

[24]   Notably, Michigan law "generally presumes that employment relationships are 'at-will' arrangements; at-will employees, in turn, have no property interest in their continued employment." *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 766 (6th Cir. 2010) (citing *Lytle v. Malady*, 579 N.W.2d 906, 910–11 (Mich. 1998)).

[25] Count I of Plaintiff's Complaint fails to allege any property interest in an endowed professorship, but even if it did, Sixth Circuit "case law makes clear that a claim for a due-process violation does not lie where the thrust of the plaintiffs' argument is simply breach of contract." *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017).  A claim by Plaintiff to an endowed professorship once he returned to faculty, if any, would require review of the underlying 2015 contract with MSU, which was not executed by any of the Defendants in this case and which defeats a due process claim.  *Id.*  ("[I]t is neither workable nor within the intent of [Section] 1983 to convert every breach of contract claim against a state into a federal claim.").

### 3.  Plaintiff Has Not Stated a Liberty Interest Right to His Reputation

Plaintiff additionally lacks any protected liberty interest in his reputation such that he would be entitled to a name-clearing hearing.  In *Paul v. Davis*, 424 U.S. 693 (1976), the Supreme Court established that an interest in reputation, standing alone, is insufficient to implicate a protected interest.  Specifically, "reputation alone, apart from some more tangible interests," is not a "'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."  *Id.* at 701; *see also Siegert v. Gilley*, 500 U.S. 226, 233 (1991) (rejecting a due process claim and holding "that injury to reputation by itself was not a 'liberty' interest protected under the Fourteenth Amendment").  In the employment context, an employee is required to show a "loss, infringement or denial of a government right or benefit previously enjoyed by him, coupled with communications by government officials having a stigmatizing effect."  *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993).  As stated, Plaintiff has not alleged an underlying loss of a protected liberty interest.

The Sixth Circuit has identified five elements that must be satisfied to establish that a plaintiff was deprived of a liberty interest sufficient to entitle him to a name-clearing hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment; Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance; Third, the stigmatizing statements or charges must be made public; Fourth, the plaintiff must claim that the charges made against him were false; Lastly, the public dissemination must have been voluntary.

*Brown v. City of Niota, Tennessee*, 214 F.3d 718, 722-23 (6th Cir. 2000) (quoting *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997)).

Plaintiff's deficient pleading clearly falls short on each of these elements.  Significantly, the Fourteenth Amendment provides only *procedural* protection against injury inflicted to

reputation and any "right to recover arises from the denial of a hearing to refute" any damage to reputation. *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) (internal quotation marks omitted). Here, Plaintiff has not alleged that he requested a name-clearing hearing from any specific Defendant in connection with a statement made by that Defendant (let alone one meeting the five elements above); instead, he only pleads, insufficiently and in a conclusory fashion, that Defendants refused to grant a request for a name-clearing hearing. (PageID.22, ¶ 115). Having failed to request a name-clearing hearing from any Defendant, his claim must be dismissed. *See Kaplan*, 10 F.4th at 584 (dismissing plaintiff's claim for failure to request name-clearing hearing).

And Plaintiff would not have been entitled to a name clearing hearing, even if he had requested one. First, Plaintiff fails to specify with any clarity which statements were purportedly stigmatizing and false, by whom the statements were made, or that those statements were made public by any Defendant in conjunction with a termination from employment. That too is fatal to Plaintiff's claims.

Second, as to the majority of Defendants – including Schmidtke, Towe, Austin, Stanley, Woodruff and Jeitschko – Plaintiff either fails to identify any actionable statements whatsoever, or only pinpoints nonpublic statements (which are insufficient to support his claim). Plaintiff fails to allege any statements whatsoever by Schmidtke. For Towe and Austin, the sole statement identified by each is limited to an internal memorandum that each prepared. (PageID.24, ¶¶ 127-128). Defendant Stanley is only alleged to have agreed with *another* individual's statements. (*Id.* ¶ 91, PageID.18). And Defendant Woodruff's remarks during a meeting of the MSU Faculty Senate one month after Plaintiff resigned that MSU policies and procedures were being followed, and that the decision regarding Plaintiff "was neither capricious nor malicious," were not, among other things, false stigmatizing statements about Plaintiff made in conjunction with his resignation.

(*Id.* ¶ 130, PageID.25).  Similarly, Defendant Jeitschko's alleged statements to individuals in October of 2022 at Homecoming months after Plaintiff's resignation that there were "rationales" for Plaintiff stepping down and that he had engaged in "numerous wrongful behaviors," are true and were merely about his inadequate performance as Dean.  (*Id.* ¶ 131).

The only applicable public statements about Plaintiff he specifies in his Complaint are statements by the University's Spokesperson, Defendant Guerrant, stating that Plaintiff had resigned, he did not comply with his mandatory reporting obligation, and there were "concerns about his leadership" and "poor administrative oversight."  (*Id.* ¶ 129).  But these statements are insufficient to establish a liberty interest because they do not rise above "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance" as the second element requires.  *Brown*, 214 F.3d at 722 (internal quotation marks omitted).  Further, these statements are true, which dismantles a claim under the fourth element.

Accordingly, because Plaintiff has not stated a due process violation, his Section 1983 claim fails as a matter of law.

### 4.  Plaintiff's Procedural Due Process Claim Fails Even if Plaintiff Could Identify a Protected Interest

Plaintiff's procedural due process claim is unavailing for an additional reason: Plaintiff was not deprived of notice or an opportunity to be heard.  Rather, Plaintiff admits he was interviewed by OIE after receiving notice of a "potential mandatory reporting failure" and was provided an opportunity to provide a statement.  (PageID.9, ¶ 36).  The law is well established that there are two basic due process requirements: (1) notice; and (2) opportunity to be heard.  *See*, *e.g.*, *Gilbert v. Homar*, 520 U.S. 924, 930 (1997); *Frumkin v. Bd. of Trustees, Kent State Univ.*, 626 F.2d 19, 22 (6th Cir. 1980) (noting that "universities have traditionally been afforded broad discretion in their administration of internal affairs" and that intervention by the courts is

unnecessary when there is no showing the overall procedure was prejudicial to the rights of a terminated employee).  That is all.  Here, Plaintiff admits he received both.

The Mandatory Reporting Protocol unmistakably sets forth the process for investigation of reporting failures and that process was followed in good faith in this case: an investigation initiated; an opportunity for Plaintiff to make a statement; a memorandum prepared; and submission to the employing unit to determine additional action, if any.  This is the same notice and process that every other subject of an OIE reporting failure investigation receives and Plaintiff points to no policy or practice which would require any additional notice or process by OIE in such a case.  Ultimately, FASA recommended that Plaintiff no longer serve in his at-will Dean position, and Woodruff considered that recommendation to make her decision, met with Plaintiff to discuss these concerns, and offered him the opportunity to resign, which he did.  No additional process was due.

For all these reasons, Plaintiff's Section 1983 claim fails and should be dismissed.

**D.    Defendants Are Also Entitled to Governmental Immunity Under Michigan Law on Plaintiff's State Law Claims (Counts II-IV)**

Defendants are each also entitled to qualified immunity under Michigan's Governmental Tort Liability Act, as to Plaintiff's defamation and tortious interference claims.  Mich. Comp. Laws § 691.1407(3) provides immunity to government employees for intentional tort claims when: (1) the conduct at issue was undertaken during the course of employment and the employee was acting, or reasonably believed that they were acting, within the scope of their authority; (2) the acts were undertaken in good faith, or were not undertaken with malice; and (3) the acts were discretionary, as opposed to ministerial.  *Kreipke v. Wayne State Univ.,* 807 F.3d 768, 784 (6th Cir. 2015).  A lack of "good faith," under the second element, is defined as "malicious intent, capricious action or corrupt conduct" or "willful and corrupt misconduct."  *Id.*

Michigan's law "takes great pains to protect governmental employees to enable them to enjoy a certain degree of security as they go about performing their jobs" and "a plaintiff's mere allegations are not enough to avoid the broad sweep of immunity." *Walsh v. Taylor,* 689 N.W.2d 506, 512-513 (Mich. Ct. App. 2004).  Accordingly, "whenever a plaintiff alleges facts in avoidance of immunity, or when a defendant claims that immunity applies, the trial court should be obligated to evaluate the specific conduct alleged to determine whether a valid exception exists." *Id.*  And when it appears "clearly on the face of the complaint," a court may dismiss a complaint under Rule 12(b)(6) on immunity grounds.  *Kreipke*, 807 F.3d at 784.

Defendants' alleged actions are discretionary actions that fall squarely within the scope of their authority.   Investigating a report of misconduct (Defendant Towe, with Defendant Schmidtke's supervision) is required under MSU policy and is indisputably an OIE function. Other than his subjective disagreement with the results of the OIE investigation, Plaintiff alleges no facts to support that any Defendant engaged in "willful and corrupt" misconduct.  *Doe v. N. Michigan Univ.,* 393 F. Supp. 3d 683, 700 (W.D. Mich. 2019) (holding investigation within the scope of Title IX department's authority and plaintiff's failure to provide more than "conclusory allegations of gross negligence" insufficient to overcome governmental immunity on a motion to dismiss).

It is also axiomatic that evaluating a misconduct concern and related investigatory findings to make a recommendation or determination regarding Plaintiff's employment are discretionary job functions within the scope of the authority of Defendants Woodruff, Austin, Stanley, and Jeitschko.  Plaintiff's appointment as Dean was subject to the discretion of Defendant Woodruff and Defendant Stanley, and Defendants Austin and Jeitschko's job functions included working for and with the Provost's office.   Indeed, Plaintiff's appointment was at-will and could be

"discontinued by the President and Provost at any time."  Ex. 1; *see also Galli v. Kirkeby*, 248

N.W.2d 149, 152 (Mich. 1976) (determining that the employment and supervision of a government

employee fall within the exercise of a governmental function); *George v. Wayne Cty.*, 1997 WL

33350581, at *2 (Mich. Ct. App. Apr. 18, 1997) (holding that termination determinations are

within the scope of governmental employee's functions and that governmental immunity applied,

dismissing interference with contract/business relationship claims).

It is also evident that communications by MSU to the public about MSU's actions,

including determinations on appointments, is a governmental function of certain MSU

administrators, including the Vice President and University Spokesperson, Defendant Guerrant.

*Kreipke*, 807 F.3d at 784 (holding university president entitled to immunity for communicating to

press his opinion that plaintiff's lawsuit against the university lacked merit).

While greater analysis concerning Plaintiff's failure to state legal claims of defamation or

tortious interference with contract/business relationship is below, ultimately, his Complaint fails

to assert *any* facts from which it could be inferred that Defendants acted in a "willfully corrupt" or

malicious manner while performing their discretionary, governmental functions.  Against that

presumption, Defendants are entitled to immunity from Plaintiff's state law claims.  *Id.*; *see also*

*16630 Southfield Ltd. P'ship,* 727 F.3d at 506 ("'[N]aked assertions devoid of further factual

enhancement' contribute nothing to the sufficiency of the complaint."); *Guzall v. Michigan State*

*Univ.*, Case No. 20-000189-MK, at *14 (Mich. Ct. Cl. Feb. 1, 2020) ("scant allegations" of alleged

wrongful conduct are insufficient to overcome immunity for government agents in dismissing

negligent misrepresentation claim).  Plaintiff's failure to identify and allege any corrupt and

intentionally malicious acts by any of the Defendants entitles each of them to governmental

immunity.

**E.      Plaintiff's Defamation Claim is Insufficiently Pled and Fatally Flawed (Count IV)**

Plaintiff's defamation claim is equally defective.  Under Michigan law, the elements of defamation are: "(1) a false and defamatory statement about the plaintiff; (2) an unprivileged communication to a third party; (3) fault amounting, at least, to negligence on the part of the publisher; and (4) actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication."  *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP ("Thomas M. Cooley II")*, 759 F.3d 522, 527 (6th Cir. 2014).  Plaintiff's claim fails because: (1) he has failed to allege special harm or defamation *per se*; (2) he has failed to plausibly allege the requisite degree of fault, including with respect to privilege; and (3) he has not specifically identified any alleged statements that defamed him.

First, Plaintiff does not allege special harm or defamation *per se*.  In Michigan, only accusations of crimes or "lack of chastity" constitute defamation *per se*.  *See* Mich. Comp. Laws § 600.2911.  Plaintiff does not claim any Defendant made statements that would qualify as either. Thus, to state a claim for defamation, he must allege that the publication of the statements he claims are defamatory caused cognizable special damages.  *See Nehls v. Hillsdale Coll. ("Nehls II")*, 65 F. App'x 984, 991 (6th Cir. 2003); *Heike v. Guevara ("Heike II")*, 2010 WL 538300, at *5 (E.D. Mich. Feb. 9, 2010), *aff'd*, 519 F. App'x 911 (6th Cir. 2013). Because he has failed to do so, Plaintiff's defamation claim fails at the outset.  *See* Fed. R. Civ. P. 9(g).[26]

Further, where alleged defamatory statements are made in the context of employment, "employers have a qualified privilege 'to defame an employee by making statements to other employees whose duties interest them in the subject matter.'"  *Whiting v. Allstate Ins. Co.*, 433 F.

---

[26] Additionally, Plaintiff has not alleged that he sought a retraction for the alleged defamatory statements, which is required to recover punitive or exemplary damages.  MCL 600.2911(2)(b).

App'x 395, 398 (6th Cir. 2011) (quoting *Gonyea v. Motor Parts Fed. Credit Union*, 480 N.W.2d 297, 300 (Mich. Ct. App. 1991)); *see also Tumbarella v. Kroger Co.,* 271 N.W.2d 284 (Mich. Ct. App. 1978). That is because "[s]upervisory employees frequently have the need, sometimes the duty, to comment on the behavior and work habits of their charges." *Whiting*, 433 F. App'x at 398. The only way to overcome this qualified privilege is "by showing actual malice." *Id.*

Moreover, defamation claims asserted by "public officials" and "public figures" are subject to the actual malice standard. *See Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966) (public officials); *Thomas M. Cooley II*, 759 F.3d at 527 (public figures). Plaintiff is both. As the former Dean of Broad College, Plaintiff is a "public official." *See, e.g.*, *Grossman v. Smart*, 807 F. Supp. 1404, 1408 (C.D. Ill. 1992) (holding professor and vice chancellor of University of Illinois to be public officials). And having been "drawn into a particular public controversy" – *i.e.*, the controversy surrounding Plaintiff's reporting failure and subsequent resignation – Plaintiff has become a "limited" public figure for First Amendment purposes. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). Thus, the actual malice standard is doubly applicable.

Plaintiff does not plausibly allege actual malice, nor could he. "To show actual malice, plaintiffs must prove that the defendant made the statement with knowledge that it was false or with reckless disregard of the truth." *Glazer v. Lamkin*, 506 N.W.2d 570, 573 (Mich. Ct. App. 1993). Alleging actual malice in a conclusory fashion is insufficient. "Under federal pleading requirements, a complaint asserting a defamation claim as to which the actual malice standard applies must set forth facts establishing that the statements were made with malice to avoid dismissal." *Green v. Mason*, 504 F. Supp. 3d 813, 831 (S.D. Ohio 2020) (alterations and internal quotation marks omitted); *see also Prysak v. R.L. Polk Co.*, 483 N.W.2d 629, 636 (Mich. Ct. App. 1992) ("General allegations of malice are insufficient to establish a genuine issue of material

fact."). Importantly, actual malice does not arise from a mere failure to investigate, nor does it derive from a defendant's preconceived objectives, or even from a defendant's hatred toward the plaintiff. *Tomkiewicz v. Detroit News, Inc.*, 635 N.W.2d 36, 46 (Mich. Ct. App. 2001). Here, Plaintiff's general, conclusory allegations of malice fail to meet this standard.

Plaintiff alleges that Defendants worked in concert to "prevent him from being a viable candidate for the Presidency for their own personal benefit in promoting Defendant Woodruff as President." (PageID.30, ¶ 166). The existence of this far-fetched conspiracy is implausible on its face, and Plaintiff alleges nothing in support of it. Furthermore, even if it were true, it would not be sufficient to establish actual malice – *i.e.*, that Defendants made the statements at issue with knowledge of falsity or with reckless disregard for their truth.

Another – and perhaps more fundamental – flaw in Plaintiff's defamation claim is that he has not specifically identified any statements that defamed him. To state a claim of defamation, "[a] plaintiff cannot rely on general, conclusory allegations" but instead "must specifically identify the statements alleged to be defamatory." *Heike v. Guevara ("Heike I")*, 654 F. Supp. 2d 658, 674 (E.D. Mich. 2009), *aff'd*, 519 F. App'x 911 (6th Cir. 2013). As the Sixth Circuit held in *Ryniewicz v. Clarivate Analytics*, in Michigan, a "plaintiff claiming defamation must plead a defamation claim with specificity by identifying the *exact language that the plaintiff alleges to be defamatory*." 803 F. App'x 858, 867 (6th Cir. 2020) (emphasis added); *see also Gonyea*, 480 N.W.2d at 299 (holding that the elements of the defamation claim "must be specifically pleaded, including the allegations with respect to the defamatory words, the connection between the plaintiff and the defamatory words, and the publication of the alleged defamatory words"); *Rouch v. Enquirer & News of Battle Creek Michigan*, 487 N.W.2d 205, 220 (Mich. 1992) (Riley, J., concurring) ("[A] defamation plaintiff must plead with specificity who published the defamatory

statement, when it was published, and, most importantly, a plaintiff must identify the precise materially false statement published."). Accordingly, this Court's "review of whether statements are capable of defamatory meaning so as to survive a motion [to dismiss] is limited to those statements *that are specifically identified in the complaint*." *Sarkar v. Doe,* 897 N.W.2d 207, 220 n.13 (Mich. Ct. App. 2016) (emphasis added).  Whether a statement is capable of defamatory meaning is a question of law for the court to decide, *Ireland v. Edwards,* 584 N.W.2d 632, 638 (Mich. Ct. App. 1998), and "[t]he dispositive question . . . is whether a reasonable fact-finder could conclude that the statement implies a defamatory meaning." *Hildebrant v. Meredith Corp.,* 63 F. Supp. 3d 732, 738 (E.D. Mich. 2014) (second alteration in original) (quoting *Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 548 (Mich. 2010)); *see also Guzall*, Case No. 20-000189-MK, at *16-17 (holding dismissal of defamation claim warranted where plaintiff "leaves somewhat unclear which statements" were purportedly defamatory and asserts only "vague allegations" of actual malice).  Plaintiff's Complaint is devoid of the requisite particulars necessary to state a plausible defamation claim.

Moreover, the statements Plaintiff identifies as supposedly defamatory are either true, unactionable opinion, or not about Plaintiff.  Truth, of course, is an "absolute defense" to a defamation claim.  *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP ("Thomas M. Cooley I")*, 978 F. Supp. 2d 849, 857 (W.D. Mich. 2013), *aff'd*, 759 F.3d 522 (6th Cir. 2014).  And under Michigan law, "[i]f the gist, the sting, of the [statement] is substantially true, the defendant is not liable." *Id.* (alterations in original) (quoting *Fisher v. Detroit Free Press,* 404 N.W.2d 765, 767-68 (Mich. Ct. App. 1987)).

Further, statements "that cannot reasonably be interpreted as stating actual facts about an individual," such as opinions, are also insulated from a defamation claim.  *Seaton v. TripAdvisor*

*LLC*, 728 F.3d 592, 597 (6th Cir. 2013); *see also Milkovich v. Lorain J. Co., 497 U.S. 1, 20 (1990)* ("[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection."); *Nehls v. Hillsdale Coll. ("Nehls I")*, 178 F. Supp. 2d 771, 779 (E.D. Mich. 2001) ("Exaggerated language used to express opinion" is not actionable defamation.), *aff'd*, 65 F. App'x 984 (6th Cir. 2003).

Plaintiff's defamation claim is premised on five alleged statements, none of which are actionable.  (PageID.24-25, ¶¶ 126–131).  First, he alleges that the OIE Report "contains false statements, as [supposedly] detailed" elsewhere in the Complaint.  (*Id.* ¶ 127).  Second, he alleges that "Defendant Austin prepared a memorandum that was disseminated to others purportedly justifying the pretextual reasons for the wrongful termination, and that memorandum contains false and defamatory statements."  (*Id.* ¶ 128).  Third, he alleges that Defendant Guerrant made statements to the press that "were false and defamatory because they falsely state that [Plaintiff] voluntarily resigned because of his purported violation of the mandatory reporting policies, 'concerns about leadership,' and 'poor administrative oversight.'"  (*Id.* ¶ 129).  Fourth, he alleges that Defendant Woodruff falsely asserted during a Faculty Senate meeting that "MSU 'policies and procedures were all duly followed' in her termination of Dean Gupta, and that the decision was 'neither capricious nor malicious.'"  (*Id.* ¶ 130).  Fifth, he alleges that "Defendant Jeitschko made . . . false and defamatory statements to Broad College alumni during a Homecoming event on or about October 13, 2022, when he falsely stated that Gupta had engaged in numerous wrongful behaviors that were the rationales for termination" and additional "investigation would confirm these purported rationales."  (*Id.* ¶ 131).

None of these alleged statements is attributed to Defendants Stanley or Schmidtke, making dismissal as to them plainly warranted.[27]  As to the other Defendants, their allegedly defamatory statements are not actionable for the following reasons.

### 1.      Defendant Towe

Defendant Towe seemingly is alleged to have defamed Plaintiff because she authored the OIE Report – though Plaintiff fails to identify any specific statement in the Report that is the basis for his claim, let alone one that is false.  (*Id.* ¶ 127, PageID.24).  Rather, the report outlines MSU's Mandatory Reporting Protocol and sets forth the statements of Plaintiff and the Associate Director and Director of the MBA program.  Based on those statements provided to and summarized by Defendant Towe, OIE made a determination by a preponderance of the evidence that Plaintiff failed to mandatorily report as required under the Mandatory Reporting Protocol.  Plaintiff's subjective disagreement with that investigatory conclusion does not convert the report's content into defamatory statements.  And even if Plaintiff could point to a false statement, Plaintiff would be required to show actual malice by Defendant Towe, both because Plaintiff is a public official and public figure, and because Defendant Towe created the report in the context of a work-related duty.  Plaintiff's Complaint does not sufficiently plead such facts.

---

[27] Elsewhere in the Complaint, Plaintiff alleges that Defendant Stanley "publicly stated that he approved of, agreed with and endorsed all of Defendant Woodruff's statements and conduct in terminating [Plaintiff]," (PageID.18, ¶ 91), but does not identify any statements Stanley made *about him.*  At best, Plaintiff alleges that Defendant Stanley stated his opinion about Defendant Woodruff's actions, which standing alone cannot be a defamatory statement.  *See e.g., Orr v. Argus-Press Co.*, 586 F.2d 1108, 1113 (6th Cir. 1978) ("Everyone . . . has the right to comment on matters of public importance, and expressions of opinion and even misstatements of fact are not actionable.").  Furthermore, here, as in *Kreipke*, a university "[p]resident is entitled to immunity" against a claim of defamation where he was "acting within the scope of his employment when he authored the allegedly defamatory commentary," he was "clearly speaking on behalf of [the university]," and "there are no facts alleged in the . . . complaint from which it could be inferred that [the] President acted with a malicious intent."  807 F.3d at 784.

### 2.    Defendant Austin

Plaintiff's claim against Defendant Austin appears to be based on an internal memorandum from Defendant Austin to Defendant Woodruff setting forth views on Plaintiff's leadership response (*Id.* ¶ 128, PageID.24-25; Ex. 5), which is subject to qualified privilege as it is a "statement[ ] to [an]other employee[ ] whose duties interest [her] in the subject matter." *Tumbarella*, 271 N.W.2d at 289.  And in any event, yet again, Plaintiff does not identify any specific statement that he alleges is false and defamatory at all, let alone a statement about him made by Austin with actual malice.  Indeed, there is nothing in the Complaint to suggest that Defendant Austin did not subjectively believe what she included in the internal memorandum or that she acted with reckless disregard for the truth of any statement.

### 3.    Defendant Guerrant

Plaintiff's defamation claim against Guerrant is based solely on the University statement she forwarded to reporters who inquired about Plaintiff's resignation on August 12 and 15. (PageID.25, ¶ 129).  Plaintiff's defamation claim against Guerrant fails first because she is entitled to governmental immunity.  She was plainly acting within the scope of her employment as University Spokesperson when communicating the University's statements to the press, and her actions in so communicating are discretionary.  And Plaintiff has alleged nothing to suggest that Guerrant acted with malice.  Plaintiff has not alleged any facts suggesting that Guerrant had any reason to question the complete truth of MSU's press statement.

Setting aside that the statement is, in fact, true, Guerrant plays no role in investigating RVSM violations or making faculty employment decisions, and Plaintiff does not allege that she does or did in this case.  Thus, even if some aspect of the press statement was false and defamatory (it is not), Plaintiff has not sufficiently alleged Guerrant was negligent, much less malicious, in

believing it to be true.  It follows that Plaintiff has failed to allege a viable defamation claim against Guerrant.

Furthermore, rather than providing the Court with the University's actual alleged statement, Plaintiff attempts to characterize it by quoting fragments, none of which even amount to a complete sentence.  (*Id.*).  These allegations are insufficient to establish a defamation claim. *Ryniewicz*, 803 F. App'x at 867  ("[P]laintiff claiming defamation must plead a defamation claim with specificity by identifying the exact language that the plaintiff alleges to be defamatory." (internal quotation marks omitted)).  And even assuming the truth of Plaintiff's characterization of the sentence fragments quoted in the Complaint, he still has not alleged a viable defamation claim. Statements such as "concerns about leadership" and "poor administrative oversight" are too subjective to support a viable defamation claim.  *Kevorkian v. Am. Med. Ass'n*, 602 N.W.2d 233, 236 (Mich. Ct. App. 1999).  And the only thing he alleges arguably factual enough to support a defamation claim – that he resigned "because of his purported violation of the mandatory reporting policies" – is true.  (PageID.17, ¶¶ 83-85).  The defamation claim against Guerrant should also be dismissed.

### 4.    Defendant Woodruff

Plaintiff's claim against Defendant Woodruff is premised on statements allegedly made during a Faculty Senate meeting – specifically, that MSU followed its policies and procedures in connection with Plaintiff's removal and that the University's decisions were "neither capricious nor malicious."  (*Id.* ¶ 130, PageID.25.)  As statements of opinion that do not make any factual assertions about Plaintiff, they are plainly not defamatory.  *See Kevorkian*, 602 N.W.2d at 236; *Seaton*, 728 F.3d at 597; *Milkovich*, 497 U.S. at 20.  Nor has Plaintiff plausibly alleged actual malice.  There is nothing in the Complaint to suggest that Defendant Woodruff did not subjectively believe the statements in question or that she acted with reckless disregard for their truth.  Despite

Plaintiff's disagreement with the University's decision that he should no longer be Dean, the actual policies at issue (and his own allegations) make clear that Plaintiff failed to promptly report his knowledge surrounding a potential violation of the RVSM Policy to OIE and failed to act with respect to a direct report who admitted having engaged in inappropriate behavior. And regardless of Plaintiff's opinion of the finding, the indisputable truth is that OIE concluded that Plaintiff *violated the RVSM Policy's reporting requirements* (Ex. 4) and that the Provost concluded, after consultation within the Provost's Office (including with FASA), the President's Office, and other MSU units, that she no longer supported Plaintiff as Dean based on his leadership response. (Ex. 5). Thus, the "gist" of any statements made by Woodruff and other Defendants concerning Plaintiff's mandatory reporting failure and their opinions on Plaintiff's leadership are substantially true, defeating Plaintiff's defamation claim.[28]

### 5. Defendant Jeitschko

With respect to Defendant Jeitschko, Plaintiff fails to identify with any specificity the allegedly defamatory statements, other than generalizing that Jeitschko stated that: (1) Plaintiff engaged in wrongful behaviors; (2) there was a rationale for Plaintiff's removal from the position of Dean; and (3) in Jeitschko's opinion, an investigation being conducted would confirm the rationale behind the decision. Yet again, other than a conclusory allegation that such statements were made with "malice," (PageID.25, ¶ 131), Plaintiff sets forth no facts to support his contention and fails to identify how these statements or opinions are objectively false factual statements.

---

[28] While Plaintiff also alleges Woodruff's explanation of actions to the Board were untrue or a pretext, he does not allege that they were defamatory.

**F.      Plaintiff Fails to State a Tortious Interference Claim (Counts II and III)**

The Court should also dismiss Plaintiff's tortious interference claims.  Plaintiff alleges that

Defendants Woodruff, Jeitschko, Stanley, and Austin intentionally interfered with his 2015 Offer

Letter by removing him as Dean, removing an endowed chair position, and failing to return

Plaintiff to the faculty with an endowed professorship.[29]   Plaintiff fails to state a legal claim

because he has not identified any interference by a *third* party to the business relationship, as

Defendants are all employees or executive officers of MSU.  Nor has he plausibly alleged the

"improper motive" necessary to establish tortious interference.  With respect to his removal as

Dean (and his previous relinquishment of his endowed chair title), Plaintiff has also failed to allege

an underlying breach of contract, which is required for a tortious interference with contract claim.

Under Michigan law, "tortious interference with a contract or contractual relations is a

cause of action distinct from tortious interference with a business relationship or expectancy."

*Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 690 (E.D. Mich. 2012).  "[A] claim for tortious

interference with contract has three elements: (1) the existence of a contract; (2) a breach of the

contract; and (3) an unjustified instigation of the breach by the defendant."  *Gardner v. Heartland

Indus. Partners, LP*, 715 F.3d 609, 614 (6th Cir. 2013) (internal quotation marks omitted).  The

elements of interference with business relations are: "(1) the existence of a valid business

relationship or expectancy that is not necessarily predicated on an enforceable contract, (2)

---

[29] To the extent Plaintiff is alleging that any of the Defendants' statements caused a business
interference, "[a]s with defamation actions . . . privileged speech is a defense," actual malice is
required due to Plaintiff's status as a public official or figure, and the arguments set forth in section
E apply.  *See Lakeshore Cmty. Hosp., Inc. v. Perry*, 538 N.W.2d 24, 27 (Mich. Ct. App. 1995).
Here, Plaintiff vaguely supports these claims on "statements about the purported rationales"
relating to Plaintiff no longer serving as Dean (PageID.28-30, ¶¶ 153, 161), but such statements
are protected by qualified privilege, and Plaintiff has not alleged actual malice.  Counts II and III
therefore should be dismissed with respect to all Defendants.

knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." *Courser v. Allard*, 969 F.3d 604, 620 (6th Cir. 2020).

The first problem with Plaintiff's tortious interference claims is that Defendants are employees and executive officers of MSU. "An essential element of a tortious interference claim is that the defendant is a third party to the contract or business relationship." *Maiberger v. City of Livonia*, 724 F. Supp. 2d 759, 772 (E.D. Mich. 2010) (holding that corporate agents, such as mayor and chief of police, were not third parties). It is "settled law that corporate agents are not liable for tortious interference with the corporation's contracts unless they acted solely for their own benefit with *no benefit* to the corporation." *Id.* (emphasis added) (quoting *Reed v. Michigan Metro Girl Scout Council*, 506 N.W.2d 231, 233 (Mich. Ct. App. 1993)); *see also Terhune v. Frank*, 1993 WL 316006, at *6 (W.D. Mich. Apr. 23, 1993); *Foote v. Dow Chem. Co.*, 2010 WL 173777, at *4 (Mich. Ct. App. Jan. 19, 2010). Indeed, "[i]t is the interference of third parties, not the 'fairness' of the employment decision that is actionable." *Chambers v. City of Detroit*, 786 F. Supp. 2d 1253, 1275 (E.D. Mich. 2011).

Plaintiff does not allege any facts to support a claim that any Defendant was acting solely for their own benefit in any respect, barring his tortious interference claims. And even taking Plaintiff's allegation as true that Defendant Woodruff wanted to be considered for the role of President upon Stanley's departure, the Complaint does not plausibly allege that Woodruff or any of the Defendants "acted solely for [their] own benefit with no benefit to [MSU]." *Reed*, 506 N.W.2d at 233. Defendants' actions vis-à-vis Plaintiff were taken on the basis of OIE's determination that Plaintiff violated the Mandatory Reporting Protocol after which OIE forwarded

its report, pursuant to University policy, to the Provost's office to consider what action to take, which led to the Provost taking action, after internal consultation within her office (including FASA), the President's office, and other University units (and others).  It therefore cannot be said that Woodruff, or any of the Defendants, were acting solely for their own personal benefits without any benefit to MSU.  *See Maiberger*, 724 F. Supp. 2d at 772; *Terhune*, 1993 WL 316006, at *7; *see also Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 630-31 (6th Cir. 2013) (affirming that the plaintiff could not establish a tortious interference claim because the defendant employee was not a "third party" to the contract and was acting for the benefit of his employer when an internal investigation into the plaintiff was required by department policy).  As discussed above, the allegation that OIE, FASA, and Defendant Stanley all conspired with Woodruff to oust Plaintiff is unsupported and implausible.[30]  The reality is that Plaintiff only has himself to blame for no longer being Dean.  Far from acting solely for their own benefit, Defendants' actions ensured that the University community could trust that MSU expected its leaders to report misconduct against students and to take action when learning that personnel under their leadership had acted inappropriately.

By the same token, Plaintiff's tortious interference claims fail because Plaintiff has not alleged, as he must, an intentional interference, meaning "a *per se* wrongful act or a lawful act with malice and without justification for the purpose of invading the contractual rights or business relationship of another."  *See Crestmark Bank v. Electrolux Home Prod., Inc.*, 155 F. Supp. 3d 723, 745 (E.D. Mich. 2016) (quoting *Urban Assocs., Inc. v. Standex Elecs., Inc.*, 216 F. App'x. 495, 514 (6th Cir. 2007)).  "A *per se* wrongful act is one that is 'inherently wrongful or an act that

---

[30] Plaintiff's allegation that Woodruff was trying to eliminate him as competition is nonsensical. For example, and as discussed above, Plaintiff himself alleges that Woodruff gave him a "very strong" performance review just weeks before she allegedly began conspiring to oust him. (PageID.7, ¶ 25).

can never be justified under any circumstances.'" *Id.* (quoting *Urban Assocs.*, 216 F. App'x at 514); *see also Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.,* 602 F. Supp. 2d 829, 891 (W.D. Mich. 2008) (same). Where a party's actions are "motivated by legitimate business reasons, a court will not find the improper motive necessary for" a tortious interference claim to survive dismissal. *Crestmark Bank*, 155 F. Supp. 3d at 745 (internal quotation marks omitted).

Absent from Plaintiff's Complaint is a single fact concerning Defendants Stanley's, Austin's, or Jeitschko's malicious interference with Plaintiff's relationship with MSU. He makes only a bald conclusory statement that they assisted Defendant Woodruff in a far-fetched conspiracy planning the August 12, 2022 "removal" meeting, during which Plaintiff was offered an opportunity to resign. Such threadbare pleading bars his claims.[31] As for Defendant Woodruff, as well as the other Defendants, it is clear that their actions – the product of OIE's determination and referral of the matter to the Provost's office, FASA's recommendations, and consultation with Defendant Stanley and other University units – were "motivated by legitimate business reasons." *See Maiberger*, 724 F. Supp. 2d at 778 (dismissing tortious interference claim based on conclusory allegations of improper action with malice).

Plaintiff's claim for tortious interference with contract also fails because he had no contractual entitlement to his deanship or an endowed chair position. "Unjustified interference with a contractual relationship without a resulting breach of that contract does not constitute tortious interference with contract." *Appalachian Railcar Servs.*, 602 F. Supp. 2d at 891. The 2015 Offer Letter explicitly states that Plaintiff's role as Dean was at-will and that he relinquished

---

[31] Notably, Plaintiff's 2015 Offer Letter makes clear that *only* the Provost and President can remove him from the Dean position, and as such, Defendants Austin and Jeitschko could not have interfered with the 2015 Offer Letter.

his previous endowed chair position.  Without an underlying breach of contract, there can be no tortious interference with contract.[32]  *See id.*; *Gardner*, 715 F.3d at 614.

Ultimately, Plaintiff cannot overcome that his loss of support and determination that he should no longer serve as Dean was the product of his own actions, having failed for months to report known concerns of misconduct by his Associate Dean to anyone at MSU or to take action with respect to misconduct by his direct report.  Plaintiff's attempt to blame Defendants for his own actions is futile.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion and dismiss Plaintiff's Complaint in its entirety with prejudice and award Defendants any other relief that the Court deems appropriate under the circumstances.

---

[32] Notably, Plaintiff has not asserted a breach of contract claim against MSU, but has instead chosen to assert numerous deficient claims against individual MSU employees.  Whether this tactic is in an effort to force MSU to utilize inordinate and unnecessary resources in defending this litigation, animosity towards one or more of Defendants, or reflects some other strategy is unknown.

Respectfully submitted,

*/s/ Steven F. Stapleton*
Steven F. Stapleton
Maria Cesira Fracassa Dwyer
Clark Hill PLC (Grand Rapids)
200 Ottawa Ave., NW, Ste. 500
Grand Rapids, MI 49503
(616) 608-1145
Fax: (616) 608-1159
sstapleton@clarkhill.com
mdwyer@clarkill.com
*Counsel for Defendants Schmidtke
and Towe*

*/s/ Uriel Abt (with permission)*
Uriel Abt
Law Office of Uri Abt PLLC
517 Wildwood Dr.
East Lansing, MI 48823
(517) 858-9410
uri@abtlawfirm.com
*Counsel for Defendant Guerrant*

*/s/ Marisa Tara Darden (with permission)*
Marisa Tara Darden
Squire Patton Boggs LLP (Cleveland)
1000 Key Tower
127 Public Sq.
Cleveland, OH 44114
(216) 479-8627
Fax: (216) 479-8780
marisa.darden@squirepb.com
*Counsel for Defendant Austin*

*/s/  Charyn K. Hain (with permission)*
Charyn K. Hain
Varnum Riddering Schmidt & Howlett
LLP (Grand Rapids)
Bridgewater Place
333 Bridge St., NW
P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6297
ckhain@varnumlaw.com
*Counsel for Defendant Stanley*

*/s/ Paul Krieger (with permission)*
Krieger Kim & Lewin LLP
350 Fifth Ave., Ste. 7710
New York, NY 10118
(212) 390-9552
paul.krieger@kklllp.com
*Counsel for Defendant Woodruff*

*/s/ Adam Hollingsworth (with
permission)*
Adam Hollingsworth
Jones Day (Cleveland)
North Point
901 Lakeside Ave.
Cleveland, OH 44114-1190
(216) 586-7235
ahollingsworth@jonesday.com
*Counsel for Defendant Jeitschko*

DATED: May 22, 2023

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 22, 2023, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system which will send notification of such filing to all attorneys

of record.

/s/ Steven F. Stapleton
Steven F. Stapleton
Clark Hill PLC (Grand Rapids)
*Counsel for Defendants Schmidtke
and Towe*

## <u>CERTIFICATE OF COMPLIANCE</u>

As required under L. Civ. R 7.2(b)(i), I hereby certify that in accordance with the Court's Order Regarding Deadline to Respond to Complaint [ECF No. 11] this brief includes 14,094 words including headings, footnotes, citations, and quotations and not including the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits. This word count was generated by Microsoft Word 2010, the processing software utilized to draft the brief.

*/s/ Steven F. Stapleton*
Steven F. Stapleton
Clark Hill PLC (Grand Rapids)
*Counsel for Defendants Schmidtke
and Towe*
