## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| SANJAY GUPTA, an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 1:23-cv-00201-PLM-RSK |
| v. | ) |
| | ) |
| TERESA K. WOODRUFF; THOMAS | ) |
| JEITSCHKO; SAMUEL L. STANLEY; | ) |
| JR.; NICOLE SCHMIDTKE; | ) |
| ALLISON TOWE; ANN AUSTIN; | ) |
| EMILY GERKIN GUERRANT; and | ) |
| BRIAN QUINN, current and former | ) |
| employees of Michigan State | ) |
| University, sued in his or her personal | ) |
| and official capacities, jointly and | ) |
| severally; and the BOARD OF | ) |
| TRUSTEES, by and through Trustees | ) |
| DIANNE BYRUM, DENNIS DENNO, | ) |
| DANIEL KELLY,RENEE KNAKE | ) |
| JEFFERSON, SANDY PIERCE, | ) |
| BRIANNA SCOTT, KELLY TEBAY, | ) |
| and REMA VASSAR, sued in his or | ) |
| personal and official capacities, | ) |
| jointly and severally, | ) |
| | ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

# TABLE OF CONTENTS

INTRODUCTION.................................................................................. 1

JURISDICTION AND PARTIES............................................................. 4

FACTS............................................................................................... 7

    Sanjay Gupta's Successful MSU Leadership....................................... 7

    Gupta's June 16, 2022, Review........................................................ 10

        Defendants' Scheme to Violate Gupta's Rights and Stigmatize His Good Name to Eliminate Woodruff's Competition in Her Personal Pursuit of the Presidency.......................................... 11

    The Facts About the MBA Professor and OIE Reporting....................... 14

    OIE's Flawed Processes................................................................. 17

    August 12, 2022, Termination.......................................................... 22

    Woodruff's Pretextual Reasons for the Adverse Employment Actions........ 28

    Defendants' Violations of Gupta's Due Process Rights........................... 31

    Defendants' Violations of Gupta's Equal Protection Rights..................... 32

    The Quinn Emanuel Investigation: Gupta's Transparency and Full Cooperation and Defendants' Efforts to Stop and Interfere with the Investigation................................................................................. 34

    Defendants' False and Defamatory Statements................................... 36

    Irreparable Harm Suffered by Gupta as a Result of Defendants' Actions.... 36

COUNT I- 42 U.S.C. §1983 – Fourteenth Amendment Procedural Due Process Property and Liberty Interests....................................................... 37

COUNT II – 42 U.S.C. §1983 – Fourteenth Amendment Equal Protection Rights............................................................................................. 43

COUNT III – Tortious Interference with Breach of Contract........................... 45

COUNT IV – Aiding and Abetting Tortious Interference with Contract............. 47

COUNT IV – Defamation.................................................................... 48

RELIEF REQUESTED........................................................................ 49

JURY DEMAND................................................................................ 50

i

## EXHIBITS

Ex. A – Quinn Emanuel's Report

Ex. B – Jones Day's 2017 Report

Ex. C – 2019 OCR Agreement with Michigan State University

Ex. D – 2015 Employment Agreement of Dr. Sanjay Gupta

Ex. E – Discipline Policy of Michigan State University

Ex. F – Broad College Policies on Named/Endowed Faculty Positions

Ex. G – August 2022 Press Releases Regarding Dr. Sanjay Gupta

Plaintiff Sanjay Gupta, by and through his attorneys, Katten & Temple, LLP, for his First Amended Complaint against Defendants, states as follows:

<u>Introduction</u>

1.      Plaintiff Sanjay Gupta loyally served his alma mater, Michigan State University, as a tenured faculty professor and as the most successful and widely respected Dean of the Eli Broad College of Business in the history of the College until Defendants improperly and unjustifiably removed Gupta's appointment as Dean and endowed chair position based on false pretexts, violating his constitutional due process and equal protection rights, violating state law and MSU policies, breaching Gupta's employment agreement, and intentionally defaming and stigmatizing him with false statements that Defendants voluntarily made.

2.      Defendant Teresa Woodruff, then-Provost and now Interim President, orchestrated multiple violations of Gupta's due process rights, tortiously interfered with his contract and business relationship with MSU, and defamed him in a power scheme to ensure that Gupta would not be named successor to outgoing former President Samuel Stanley, Jr., and to enhance Woodruff's personal ambition to become President.  Defendants Stanley, Jeitschko, Austin, and Guerrant (together with Woodruff, the "Administrative Defendants"), Quinn (the "OGC Defendant"), and Schmidtke and Towe (the "OIE Defendants") aided and abetted and participated in violating Gupta's rights and defaming him.

3.      The facts establish that Gupta did *not* violate any mandatory reporting policy, promptly acted to protect students and complied with MSU Title IX policies

1

(as stated by the OGC Defendant, other representatives of the MSU Administration, and a 2017 Jones Day Report published by MSU). At all times, Gupta acted with integrity, transparency and professionalism as Dean of the Eli Broad College of Business.

4.      Unlike the Administrative, OGC and OIE Defendants, Gupta fully cooperated in good faith with the Board's investigation into the circumstances of his termination. He has sought to clear his name and obtain due process ever since he was surprised by the abrupt and public termination on August 12, 2022, coupled with false and defamatory statements stigmatizing his good name and reputation. Despite Gupta's extensive efforts to air publicly the facts and to clear his name by attempting to work with Defendants and MSU's Administration, those efforts have failed and he has no choice but to resort to judicial assistance by bringing his claims as set forth below.

5.      On March 31, 2023, the MSU Board of Trustees released the report of investigative findings by Quinn Emanuel Urquhart & Sullivan LLP regarding Plaintiff's sudden ouster as Dean of MSU's Eli Broad School of Business, other personnel actions taken by the Administrative Defendants against Gupta, and MSU's flawed process for investigating alleged violations of Title IX (the "Report"). (**Ex. A**) The Administrative and OGC Defendants publicly opposed Quinn Emanuel's investigation into the facts, refused to cooperate in that investigation, and intimidated other MSU employees not to cooperate. *See id.* at 11-13, n.23. The OIE Defendants refused interviews and avoided answering questions by Quinn

Emanuel. Twenty-two individuals "with relevant information" ignored or rejected interview requests, including some of the Defendants. *Id.* at 4. While over 9,300 documents were analyzed, MSU redacted some of those documents, and Quinn Emanuel did not examine electronically stored information on any witness's personal device, such as text communications. *See id.*

6.      Plaintiff's allegations are based on Plaintiff's personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia,* the Report of Quinn Emanuel's investigation, the investigation conducted by Plaintiff's counsel, review and analysis of public statements by Defendants, public documents, press releases, media reports, interviews, and review of other available documents, including on the Internet. Based on these sources, Plaintiff believes that substantial evidence exists to support the allegations in this First Amended Complaint, and will be shown after a reasonable opportunity for discovery. Many of the facts and evidence are known only to Defendants or exclusively within their control.

7.      Despite the limitations on Quinn Emanuel's investigation, the Report revealed that Defendants' actions against Dr. Gupta breached his employment agreement and were based on false statements and violations of MSU policies, including procedural safeguards protecting Gupta and his property interest in his employment agreement. *See id.* at 5-8, 65-75. The Report concluded that "the personnel actions taken against Gupta appear disproportionate, out of sequence

with the underlying investigation, and based on a factual record that included errors and omissions of relevant information and context." *Id.* at 8.

## Jurisdiction and Parties

8.     This is an action for due process and equal protection violations under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983; and state law claims for breach of contract, tortious interference, aiding and abetting, violations of Michigan's Elliott-Larsen Civil Rights Act, MCL §37.2202, and defamation.

9.     This Court has federal subject matter jurisdiction over Gupta's 42 U.S.C. §1983 claims pursuant to 28 U.S.C. §§1331 and 1343. This Court has supplemental jurisdiction over Gupta's state law claims pursuant to 28 U.S.C. §1367.

10.     Plaintiff Sanjay Gupta, Ph.D., is a tenured faculty member of MSU. Gupta served as the Dean of the Eli Broad College of Business of MSU pursuant to his 2015 contract, which MSU renewed for another five-year term in 2020. Gupta's claims arise out of actions taken against him by Defendants for alleged failure to re-report intoxication of a college professor that had already been reported to MSU's Office of Institutional Equity ("OIE"), and other false statements of purported leadership failures, including a purported failure to "investigate" a possible violation of MSU's Relationship Violence and Sexual Misconduct Policy under Title IX, 20 U.S.C. §1681, *et seq.*

4

11.     Defendant Teresa K. Woodruff is Interim President of MSU who joined MSU in August 2020 as the Provost and Executive Vice President of Academic Affairs, responsible for oversight of Dean Gupta. Woodruff reportedly left Northwestern University in 2020 two months after a petition by black, Latinx, Indigenous, LGBTQ+ and other students of marginalized identities called for her removal. *See* https://dailynorthwestern.com/2020/05/07/campus/tgs-dean-teresa-woodruff-to-depart-for-msu-after-25-years-at-northwestern-leaving-behind-a-mixed-legacy/.

12.     Defendant Thomas D. Jeitschko is Interim Provost and Executive Vice President of Academic Affairs of MSU and formerly the Senior Associate Provost, responsible for assisting the Provost.

13.     Defendant Samuel Stanley, Jr., is the former President of MSU who resigned effective November 4, 2022. Stanley had responsibility for oversight of the Provost.

14.     Defendant Nicole Schmidtke is MSU's Title IX Coordinator, responsible for MSU's compliance with Title IX, including oversight and implementation of Title IX policies and grievance procedures and training.

15.     Defendant Allison Towe is MSU's OIE Civil Rights Investigator, responsible for investigating OIE reports.

16.     Defendant Ann Austin is MSU's Interim Associate Provost and Associate Vice President for Faculty and Academic Staff Affairs, known as FASA, supervised by Defendants Woodruff and Jeitschko.

5

17. Defendant Emily Gervin Guerrant is MSU's Vice President and University Spokesperson, responsible for media and communications.

18. Defendant Brian Quinn is the General Counsel of MSU, responsible for the Office of General Counsel, or OGC, at MSU. Quinn was responsible for OGC's improper interference with the OIE investigation process related to Gupta, facilitated the improper termination of Gupta, and denied Gupta a name-clearing hearing.

19. MSU's Board of Trustees currently consists of Defendants Dianne Byrum, Dennis Denno, Daniel Kelly, Renee Knake Jefferson, Sandy Pierce, Brianna Scott, Kelly Tebay, and Rema Vassar (the "Trustee Defendants"). The Michigan Constitution vests MSU's Board of Trustees with "general supervision of its institution." Const. 1963, Art. VIII, §5. Under the Board's Bylaws, it "exercises the final authority in the government of the University." The Trustee Defendants have the duty to ensure that MSU employees are treated "in accordance with the law and [MSU's] internal policies and regulations" and they can take "prompt action on urgent . . . personnel matters necessary to the best interests" of MSU. By-Laws of the Board of Trustees, Art. VII. The Trustee Defendants' Code of Ethics and Conduct requires the Trustees to uphold the Board's role as the supervisory and policymaking body of MSU, to properly evaluate the President, and to hold the President and the Administration accountable to the Board. The Trustee Defendants have established that Board's Committee on Audit, Risk and Compliance, which is required to review any violations and failure to comply with

6

federal, state and local laws, rules and regulations, and MSU policies. The Trustee Defendants have the authority and duty to take prospective injunctive relief in favor of Gupta in their official capacity, particularly in light of the Report commissioned by the Board showing that the Administrative Defendants, the OGC Defendant and the OIE Defendants violated Gupta's civil rights, breached his contract, defamed him, and violated MSU policies.

20.     All of the individual Defendants are sued both in their personal and official capacities. Pursuant to *Ex parte Young,* 209 U.S. 123 (1908), the Court has authority to enjoin each Defendant in his or her official capacity from violating Gupta's federal rights under Section 1983, and to issue prospective injunctive relief and ancillary relief thereto. This Court also has authority to award nominal, compensatory and punitive damages against each Defendant in his or her personal capacity pursuant to Section 1983.

21.     The events at issue in this Complaint occurred in East Lansing, Michigan, and thus venue is proper in this District.

<u>Facts</u>

<u>Sanjay Gupta's Successful MSU Leadership</u>

22.     Sanjay Gupta earned his Ph.D. from MSU, after earning a Master of Accountancy from Bowling Green State University, a Bachelor of Laws from Calcutta University in India, and a Bachelor of Commerce from the University of Mumbai.

23.     After graduating from MSU's Ph.D. program, Gupta served at the W. P. Carey School of Business at Arizona State University, earning tenure and holding several positions over his 17 years there, including the first Henry & Horne Professorship in Accountancy, Dean's Council of 100 Distinguished Scholars, and faculty director of the Master of Accountancy and Information Systems and the Master of Taxation programs.

24.     Gupta returned to MSU to give back to his alma mater, joining the Broad College in 2007 as the Russell E. Palmer Endowed Professor of Accounting and Chair of the Department of Accounting and Information Systems. He was appointed associate dean for the MBA and professional master's programs in July 2012. He served as the Eli and Edythe L. Broad Dean of the Broad College from 2015 until August 12, 2022.

25.     As associate dean, Gupta instituted successful curricular innovations in the MBA and professional master's programs, the Executive and Weekend MBA programs, and facilitated the launch of new master's programs in business analytics. Under Gupta's leadership, the average GMAT scores of entering students rose by 25 points, and the MBA program increased its position in global and national rankings.

26.     As the eleventh Dean of the Broad College, Gupta was highly successful. Collaborating with faculty, staff, students, alumni and other stakeholders, Gupta led the Broad College by initiating and implementing comprehensive strategic planning, aligned with MSU's strategic priorities and core

values, enhancing recognition, reputation, and rankings of the Broad College and its people.

27.     Specifically, as Dean, Gupta championed five strategic themes: (1) digital transformation of business, (2) global mindset, (3) entrepreneurship and innovation, (4) ethics and integrity, and (5) diversity, equity and inclusion ("DEI"). Gupta's guiding principles for execution as Dean were "speedy action, commitment to excellence, continuous measurement, robust collaboration, and complete accountability and transparency."

28.     As Dean, Gupta outperformed his goals, achieving top 25 rankings overall in the undergraduate program with six Broad College programs ranked in the top 25 nationally, and top 20 among public universities for the MBA program. Under Gupta's leadership, the Broad College's research rankings, programs, facilities and services for students flourished.

29.     Gupta's strategic thinking and leadership extended more broadly university-wide. Under his vision, the Broad College is leading the first comprehensive cross-college initiative to support entrepreneurship and innovation education at MSU.

30.     Gupta also led the Broad College's leadership role in the university-wide ethics initiative to create the MSU Ethics Institute to support curriculum development, research and scholarship, and institutional transformation.

31.     Also, as Dean, Gupta initiated significant DEI programs within the Broad College, including appointing a new tenure position of Associate Dean for

DEI, and promoting women, minorities and other diverse backgrounds for leadership roles.

32.     Finally, Gupta, as a result of his efforts in leading the Broad College to recognition, ranking, research and academic success, was able to recruit and obtain significant donations to the Broad College and MSU, exceeding his capital campaign goals by 143% and obtaining the largest single donation ever to MSU.

33.     Not surprisingly, therefore, prior to Defendants' misconduct, Gupta was considered as a highly respected candidate to serve as the next President of MSU.

## Gupta's June 16, 2022, Review

34.     On or about June 16, 2022, Gupta met with then-Provost Woodruff for his annual review, which was very positive as Woodruff complimented Gupta on his success as Dean of the Broad College, including the rankings, research, the development of the MSU Ethics Institute, and Gupta's implementation and promotion of the Diversity, Equity and Inclusion Plan and with the Relationship Violence and Sexual Misconduct Plan.

35.     During that review, Woodruff asked Gupta about his future aspirations, and he told her that if asked, he would be happy to serve upon the conclusion of then-President Stanley's term.

**Defendants' Scheme to Violate Gupta's Rights and Stigmatize His Good
Name to Eliminate Woodruff's Competition in Her Personal Pursuit of the
Presidency**

36.     Also on June 16, 2022, the OIE Title IX Director, Defendant

Schmidtke, emailed an "early" notification to Gupta as Dean of the Broad College,

the unit administrator for a professor who was the subject of the OIE reports on

April 23, 2022, regarding the April 22, 2022, end-of-year MBA program event.

37.     MSU's Title IX policies and procedures provided that OIE was

responsible for making an "early notification" of any OIE reports to Faculty and

Academic Staff Affairs ("FASA"), which is part of the Office of the Provost.

38.     Defendant Schmidtke therefore sent her June 16, 2022, early

notification email not only to the unit administrator (Dean Gupta), but also to

FASA.

39.     As Dean, Gupta promptly arranged for his staff to contact FASA to

seek guidance regarding and to collaborate as to next steps.

40.     The FASA employee promptly notified Defendant Jeitschko about the

early notification of the Broad College professor.

41.     On or about Friday, June 17, 2022, and continuing on Monday, June

20, 2022, Defendant Jeitschko, Gupta, and others at OIE and FASA collaborated to

send a notice to the professor.

42.     Gupta reminded FASA and OIE that the professor was leaving MSU

as of June 30, 2022, as previously planned, and that the professor had not been

interacting with students since the semester ended in April.

43.     On or about June 20, 2022, Gupta spoke to FASA and voluntarily disclosed the limited information known to him, which was "intoxication" and "inappropriate" conduct told to him by his administrators when they were reporting to OIE and the professor telling Gupta he was very sorry for having become intoxicated.

44.     On or about June 22, 2022, members of the Board of Trustees advised Defendant Stanley that they had lost confidence in him as President and his Administration's handling of MSU's Title IX reporting process and asked him about possible successors. Stanley identified the three executive vice presidents who reported directly to him (which included Defendant Woodruff), and when asked to identify someone outside of his administration, he identified Gupta. Defendant Woodruff knew Gupta was interested in and being considered for the President role.

45.     One or more of the Administrative Defendants then directed OIE to open up an investigation into Gupta for an alleged mandatory reporting failure based on false allegations, including but not limited to the false assertion that students had reported possible RVSM violations only to Gupta.

46.     Later that day on June 22, 2022, Defendant Towe, an OIE investigator, contacted Gupta, purportedly for information "involving *a* potential mandatory reporting failure," but OIE did not inform Gupta that it was *his* purported reporting failure.

47.     OIE never issued any written notice to Gupta of an alleged OIE report filed as to him.

48. Gupta fully and timely disclosed all information he had, fully cooperated with OIE, and was transparent at all times.

49. Gupta had no duty to re-report anything that had already been reported to OIE by his direct reports as a possible RVSM Policy issue under MSU's clearly established policies, which were communicated to Gupta by the OGC, and as to which the OGC Defendant has stated does not require administrators to re-report possible violations reported by others. The policies published by MSU in the 2017 Jones Day Report of alleged sexual assault within MSU's football program confirm the re-reporting by administrators is not required under MSU's reporting policies. Attached as Exhibit B, and incorporated into this Complaint, is a true and correct copy of the 2017 Jones Day Report published by MSU that clearly sets forth MSU's policies that no administrator has a duty to "re-report" a possible RVSM matter that has been reported by another person.

50. Moreover, MSU's OIE training of administrators by FASA, as supervised and authorized by the Administrative Defendants, expressly confirms that administrators who become aware of OIE reports of possible RVSM Policy matters that have been made by those under the administrators' supervision do not have any duty to "re-report" under the mandatory reporting policy.

51. No administrator other than Gupta has been removed or disciplined as a result of a failure to "re-report" to OIE. Verbal counseling or training are the common results of a mandatory reporting failure.

52.     In addition, the 2017 Jones Day Report clearly establishes that all persons are *prohibited* from making any inquiries or investigating any possible RVSM matter, particularly once that matter has been reported to OIE for investigation. Indeed, MSU disciplined an employee for making inquiries and investigating allegations of possible sexual misconduct as reported in the 2017 Jones Day Report.

53.     Gupta fully complied with MSU's RVSM reporting policies.

### The Facts About the MBA Professor and OIE Reporting

54.     On Friday, April 22, 2022, classes for the MBA program ended for the semester. The MBA program held an end-of-the-year event that evening.

55.     The average age of the graduate students in the MBA program is approximately 28 years old. Students in the successful MBA program were 100% employed in internships and full-time employment positions, and promptly left campus at the end of the semester for those opportunities.

56.     Gupta did not attend nor have the MBA program end-of-the-year event on his calendar.  He traveled out of town for a business conference from April 23, 2022, returning later on April 26, 2022.

57.     While Gupta was traveling on April 26, he received a phone call from one of his administrative personnel in the MBA program who told Gupta that one or more students had informed another MBA program administrator that a professor had become intoxicated at the end-of-the-year event and had acted

14

"inappropriately." The first administrator told Gupta the matter was being reported to OIE.

58.     Gupta subsequently spoke to the second administrator who told Gupta the professor's name and repeated that one or more students had said that the professor had become intoxicated and danced suggestively. The second administrator told Gupta that he had reported or was reporting the matter to OIE.

59.     Neither administrator observed any of the alleged conduct they reported to OIE.

60.     At no time did either administrator inform Gupta that there were any allegations of any relationship violence, stalking, or any sexual misconduct.

61.     Gupta took into account that the professor would not have any potential contact with any students because the semester had ended, after which students had generally left campus for their internships.

62.     In addition, when Gupta's administrator told Gupta the name of the professor who was being reported to OIE in late April 2022, Gupta was not aware of any prior allegations of any OIE issues concerning that professor, and it was subsequently confirmed that the professor had never had any prior allegations or possible issues concerning any potential OIE issues during the professor's employment at MSU.

63.     Independent of and in advance of the April 22, 2022, event, in March 2022, the professor had notified Gupta and others at MSU that he was leaving MSU for a position at another university due to personal reasons. Gupta had already

15

taken steps starting in March 2022 to replace this professor, who was expected to resign effective June 30, 2022.

64.    In compliance with MSU's policies, including but not limited to the 2017 Jones Day Report, MSU's Title IX training, and his prior OIE compliance, including explicit guidance from MSU's OGC on the terms of the RVSM Policy, Gupta did not "re-report" the intoxication and "inappropriate" dancing told to him by his administrators because that information had already been reported to OIE.

65.    OIE has stated that it received a report on April 23, 2022, and Quinn Emanuel found that multiple reports were made to OIE between April 24 and 26, 2022.

66.    Nor did Gupta commence any investigation or inquiry of the professor or any other person, in compliance with MSU's policies and practices, including but not limited to the 2017 Jones Day Report, and all of the Title IX training by MSU that Gupta received.

67.    Gupta promptly acted to consider student safety and welfare and properly concluded that no student was at risk after the end of the semester.

68.    Gupta has a strong track record of taking possible RVSM issues seriously, acting with integrity, diligently reporting alleged misconduct he has learned from potential claimants, and acting promptly and to the greatest extent of his authority to protect claimants. In his past involvement with Title IX matters at MSU, Gupta sought advice from the OGC who advised that Title IX's sexual harassment standard requires "persistent, severe, and pervasive" conduct, such that

Gupta believed intoxication and generalized "inappropriate" behavior on one occasion would not meet that standard.

69.     Gupta promptly directed the MBA administrators to implement procedures for serving alcohol at any future events attended by students to control and limit alcohol consumption by a ticket or token process and to require a responsible faculty member or administrator to remain at any event site until the end of the event and all students had left.

70.     On or about May 4, 2022, at the conclusion of a previously scheduled, regular meeting with the professor at issue regarding transition matters, the professor told Gupta that he was sorry he had become intoxicated.

71.     Again, Gupta did not investigate or inquire further of the professor as directed by MSU's Title IX policies and procedures, including in the 2017 Jones Day Report and in all of MSU's Title IX training, because the intoxication had already been reported to OIE for investigation.

<u>OIE's Flawed Processes</u>

72.     MSU's flawed Title IX and OIE investigation processes are widely reported.

73.     For example, on November 4, 2022, the MSU Board of Trustees published a report by the Honigman law firm that found that the administration had violated the requirement to certify all Title IX violations. The Honigman firm found that there were significant breakdowns in MSU's Title IX reporting processes.

74.     The MSU Board of Trustees Vice Chair and Chair of the Audit, Risk
and Compliance Committee of the Board stated publicly: "The investigation's
findings confirm that little, if anything, was done by the President to address the
certification concerns raised by the Board for over two years." *See*
https://www.wilx.com/2022/11/05/law-firm-determines-msu-did-not-properly-certify-
title-ix-violations-2021/.

75.     In 2019, the U.S. Department of Education, Office of Civil Rights,
required MSU to enter into a written Resolution Agreement to resolve the OCR's
investigation into MSU's violations of Title IX, and to ensure MSU's compliance
with Title IX. Attached as Exhibit C is a true and correct copy of the 2019 OCR
Agreement. In the 2019 OCR Agreement, MSU expressly agreed to take steps to
ensure that any Title IX and OIE investigative process is conducted independently
and without bias, conflicts of interest or undue influence or pressure from any
person within MSU.

76.     OIE's Title IX processes failed in this matter in multiple ways.

77.     First, one or more of the Administrative Defendants and the OGC
Defendant violated the 2019 OCR Agreement and MSU policies by interfering with,
providing false information to, and improperly influencing and pressuring the OIE
Defendants to investigate and find Gupta liable for a reporting failure and to find
the professor liable for a RVSM policy violation, despite the conflict of interest.
Indeed, OIE had drafted a report earlier in August 2022, reflecting that OIE had
determined to close its investigation and dismiss the OIE reports with respect to the

professor's alleged RVSM policy violation in August 2022. When the Administrative

Defendants and OGC Defendant learned of this decision by the OIE, on August 22

and 25, 2022, the Administrative Defendants in FASA and the OGC separately

intervened and unduly influenced the OIE process by directing the OIE Defendants

to re-open the investigation of the professor and ultimately to find that the

professor had purportedly violated the RVSM policy, even though *no* claimant was

ever identified. A sham OIE hearing was purportedly conducted at which *no*

claimant nor the professor ever testified or presented evidence. This interference by

the Administrative Defendants and the OGC Defendant violated MSU's 2015 policy

establishing OIE's independence and the 2019 OCR Resolution Agreement.

78.    Second, the OIE Defendants made multiple materially false

statements and failed to conduct any appropriate investigation. For example, in or

about June and July 2022, OIE falsely accused one of the administrators who had

reported the April 22, 2022 incident to OIE and who had told Gupta he was doing

so, of allegedly violating the mandatory reporting policy.

79.    OIE later admitted that its accusation was untrue because the

administrator had in fact reported to OIE in April 2022 as that administrator had

told Gupta, but OIE had failed to "upload[ the report] into our system."

80.    OIE failed to give proper written notice and due process to Gupta

regarding an alleged OIE reporting issue concerning Gupta's alleged failure to re-

report.

81.     The OIE Defendants' August 2022 memorandum that improperly concluded that Gupta had failed to report a mandatory reporting obligation with regard to the professor is riddled with inconsistencies and false statements.

82.     Unbeknownst to Gupta, OIE concluded that he had purportedly failed to report "sexual misconduct." Gupta, however, never was notified of any "sexual misconduct."

83.     Instead, as detailed above, Gupta was notified, in his capacity as Dean, by two of his administrative reports, that they had been informed of "intoxication" and "inappropriate" behavior at an event, and that they were reporting to OIE. Gupta had no duty to re-report under MSU's policies.

84.     Nor was there any duty to re-report when the professor subsequently told Gupta he was sorry he had been intoxicated.

85.     No MSU Title IX reporting policy requires reporting of "intoxication." Rather, the RVSM Policy requires reporting of relationship violence, sexual misconduct, and stalking. The professor being "very sorry" for become "intoxicated" was not new information compared to the information conveyed by the business school administrators, who had already reported to OIE.

86.     In any event, on June 2022 Gupta reported to OIE what the professor had said. After Gupta spoke with OIE in June 2022, however, OIE did not follow up with him.

87.     Despite all of the multiple reports and information received, OIE never bothered to open a formal investigation of the professor until July 28, 2022.

88.     On or about August 2, 2022, while Gupta was commencing an international business trip from August 2 to August 11, 2022, Gupta received an email from OIE with a written report dated August 8, 2022, falsely stating he had failed to report "sexual misconduct" that his two administrators had purportedly told him about in April 2022.

89.     The August 8, 2022, OIE report recommended that Gupta take a refresher training course on mandatory RVSM reporting training. The August 8, 2022, OIE report did not recommend any other discipline.

90.     Gupta had to contact OIE multiple times for the recommended refresher training course.  He promptly completed the 15-minute course which did not address re-reporting or any policies that would have required him to have reported anything to OIE regarding the professor at issue.

91.     Upon receipt of the August 2 email, Gupta saw that the OIE August 8 report was untrue and misstated the facts, including what he told OIE in June 2022. Gupta further noted that the OIE August 8 report was inconsistent on its face and contrary to public MSU Title IX policies, including but not limited to the 2017 Jones Day Report.

92.     Gupta promptly sent the August 2 email to then-Provost Woodruff to notify her and to arrange a meeting to discuss the OIE report flaws. Because Gupta was en route to the airport for his international business trip, he could not meet until after he returned the evening of August 11, 2022.

93.     Upon his return on August 11, 2022, Gupta learned that Defendant Woodruff had scheduled an 8:00 a.m. meeting with him on August 12, 2022.

94.     Consistent with MSU's policies, processes and practices, Gupta reasonably anticipated that he would have a meaningful opportunity to discuss the facts with Defendant Woodruff and correct the errors in the OIE report.

95.     Also consistent with MSU's policy of allowing for appeals of OIE reports and findings after investigations, Gupta timely requested of OIE that OIE afford him an extension of the 10-day time period to appeal any OIE report findings because of his international business trip to India from August 2 to August 11, 2022.

96.     OIE refused to allow Gupta any right to appeal, claiming he had no right to appeal its false report.

### August 12, 2022, Termination

97.      At the August 12, 2022, meeting, Defendant Woodruff commenced the meeting by informing Gupta that he had just "resigned" as Dean, purportedly because she had concluded he had a failure in leadership for several reasons. Defendant Woodruff did not provide any prior written notice of these purported reasons.

98.     Defendant Woodruff did not provide Gupta any meaningful opportunity to present the facts, which would have refuted her shocking statements.

99.    The purported "resignation" was involuntary. Defendant Woodruff terminated and removed Gupta as Dean of the Broad College and removed his endowed chair position.

100.    Defendant Woodruff's adverse personnel actions were orchestrated and planned out, substantially and knowingly assisted by the Administrative Defendants and the OGC Defendant, who prepared "talking points," the termination notices of the adverse personnel actions, and a press release. Defendant Woodruff's written notice stated: "Effective, August 12, 2022, you will return to the faculty as a tenured professor, unaccompanied by a named or endowed professorship."

101.    During his tenure as Dean from 2015 to August 12, 2022, Gupta had an endowed chair position. At the time of the termination on August 12, 2022, Gupta's endowed chair position provided for $60,000 annual compensation and up to $15,000 for expenses.

102.    Gupta's 2015 employment agreement appointing Gupta Dean of the Broad College expressly provides that "Upon your return to the faculty, *you will be appointed* as a John A. Hannah Professor, Broad Professor, or other available *endowed* professorship in the Broad College, with research support in effect at that time." (Emphasis added.)Attached as Exhibit D is a true and correct copy of Gupta's 2015 employment agreement.

103.    Defendant Woodruff, however, refused to appoint Gupta with an endowed professorship, with research support, upon his return to faculty on August 12, 2022.

104.    Defendant Woodruff's written termination notice notified Gupta that as a result of her termination of his Deanship, he was being returned to the faculty and his annualized salary was immediately being changed to a 9-month, academic salary, resulting in a reduction in annual compensation of approximately $100,000. Prior to the termination, Gupta had already earned the right to take sabbaticals, and the termination notice reminded him of that opportunity, but he has declined to take any sabbatical to date and was returned to the faculty.

105.    Defendant Woodruff violated MSU policy by failing to consult with and obtain the prior approval of the then-President, Defendant Stanley, of her adverse personnel actions.

106.    Defendant Stanley, however, subsequently stated publicly that he approved of, agreed with and endorsed all of Defendant Woodruff's statements and conduct in terminating Gupta.

107.    Unbeknownst to Gupta, Defendants Woodruff, Jeitschko, and Austin, assisted by the OGC Defendant, pre-planned the August 12, 2022, termination, orchestrating the process behind-the-scenes in an effort for Woodruff to smear and stigmatize Gupta's good name and thereby eliminate her competitor. Defendant Austin drafted a false and misleading FASA memo in order to provide false

24

justification and pretext for the Administrative Defendants to take the adverse personnel actions against Gupta.

108.    The OIE Defendants also facilitated the wrongful termination of Gupta, working with the Administrative and OGC Defendants to change the OIE findings to support the pretextual termination and harsh discipline.

109.    After the August 12, 2022, 8:00 a.m. termination meeting, Defendants, including Defendant Guerrant, publicly disseminated defamatory statements, falsely alleging that Gupta had "submitted" his resignation and that he had resigned because he had violated the RVSM Policy. Attached as Exhibit G are true and correct copies of the false and defamatory statements issued by Guerrant to the press regarding Gupta from August 12, 2022 to August 15, 2022. The Administrative and OGC Defendants knowingly disseminated false and misleading statements in the MSU press release, falsely implying that Gupta lacked integrity and professionalism, was "poor" in his administrative oversight, and implied that Gupta was facilitating another Larry Nassar-type situation and attempting to cover up sexual misconduct by not reporting it. Defendant Guerrant purposely engaged in false and misleading statements to aid and abet the Administrative Defendants' scheme to oust Gupta, affirmatively contacting the press to provide false and misleading statements to link Gupta to Larry Nassar in a disparaging manner.

110.    The August 12, 2022 MSU press release drafted, reviewed and disseminated by the Administrative and OGC Defendants, falsely stated that Gupta had voluntarily resigned. The MSU press release stated: "Former Dean Gupta

25

resigned amid concerns about his leadership of the college and also a failure to report under our mandatory reporting policies," and "[t]hose who take on leadership roles at MSU are expected to conduct themselves with careful and consistent attention to integrity and professionalism. This leadership transition is the result of poor administrative oversight, including a failure to adhere to our mandatory reporting guidelines." (Exhibit G) This MSU press release was intentionally false and defamatory, implying that Gupta lacked integrity and professionalism and was "poor" in his administrative oversight, and falsely implies he voluntarily resigned as an admission of purported wrongdoings.

111.    The MSU press release also stated: "Our recent institutional history underscores the significance of a failure to report and the devastating impact it can have on individuals across our campus and beyond. It is incumbent upon our leaders to understand their reporting responsibilities to further a safe, welcoming space for all students, employees and guests." (Exhibit G) This false and misleading statement was used by the Administrative and OGC Defendants to imply that Gupta had somehow had a "devastating impact" akin to the scandalous Larry Nassar crimes against scores of victims.

112.    On August 30, 2022, the Lansing State Journal publicly stated that "MSU officials pointed to the Larry Nassar scandal and other instances of sexual misconduct at MSU to highlight the importance of mandatory reporting." Defendant Guerrant made these defamatory statements to the Lansing State Journal on behalf of the other Defendants and MSU. These false and defamatory

statements led to unsolicited and inflammatory comments to Gupta, including one from an MSU employee holding an administrative leadership position who stated: "Not only will your legacy be failing victims of abuse, but also profoundly damaging the entire University. Congratulations, you are the new Larry Nassar."

113.    As a result of the Administrative and OGC Defendants' false and misleading press release about Gupta's termination and their related communications with the press surrounding the termination, Gupta suffered reputational injury, emotional distress, and lost business opportunities. He had to resign from a prestigious national board to which he was elected, withdraw from being considered for other board service, and was precluded from seeking alternative employment at another university.

114.    As a result of Defendants' defamatory statements, it was publicly reported and widely believed that Gupta had engaged in sexual misconduct himself. For example, on August 18, 2022, The American Bazaar reported: "Sanjay Gupta Quits MSU Amid Allegations of Sexual Misconduct." Those public reports were absolutely false, as Defendants know.

115.    In addition, the August 2022 OIE Memo by Defendant Towe regarding Gupta was false and defamatory by falsely asserting that Gupta knew of sexual misconduct when he did not. Defendant Towe refused to make corrections and intentionally disseminated the August 2022 OIE Memo to Defendants Woodruff and Austin and Defendants subsequently provided copies to the press.

116.   Defendants, however, refused to publish a retraction of their false and defamatory statements about Gupta.

117.   Also immediately after the August 12, 2022 8:00 a.m. termination meeting, Defendant Woodruff telephoned a prominent MSU alum, well known to Gupta and from whom Gupta had arranged to make one of the largest donations ever to MSU. Gupta had previously introduced Woodruff to the donor.

118.   Defendant Woodruff telephoned the donor after terminating Gupta as part of her scheme to attempt to take control of and to take credit for such donor relationships cultivated by Gupta and to secure her power base.

### Woodruff's Pretextual Reasons for the Adverse Employment Actions

119.   Because of Gupta's stellar record and reputation for high integrity, many people were surprised about Defendants' very public termination and defamatory statements about Gupta, including the Board of Trustees.

120.   The Board of Trustees requested that Defendant Woodruff provide an explanation of the basis for the removal of Gupta as Dean and other adverse employment actions.

121.   On or about August 18, 2022, Defendant Woodruff provided a written statement to the Board of Trustees stating her five purported rationales for her decision to remove Gupta as Dean and to remove his endowed chair position.

122.   The Report by Quinn Emanuel found that each of Defendant Woodruff's stated rationales was based on false statements and misstatements contrary to MSU's policies. The Report further found that Defendant Woodruff did

not treat Gupta equally compared to similarly situated personnel and that the

harsh discipline she imposed on him was unwarranted.

123.    Each of the five purported rationales was a pretext and violates MSU's

policies.

124.    Defendant Woodruff's first purported rationale for the harsh discipline

falsely claimed that Gupta had a duty to re-report, but as set forth in detail above

he did not.

125.    Nor are the adverse personnel decisions supported by the Report's

tortured conclusion that Gupta should have reported to OIE that on May 4, 2022

the professor told Gupta the professor had been intoxicated and was very sorry.

First, Quinn Emanuel ignores that Gupta *did* voluntarily inform OIE just weeks

later in mid-June 2022 what the professor had said. The OIE Defendants, however,

never faulted other MSU employees who first reported what they knew *five months*

*later* in September 2022.

126.    Second, the Report overlooked that, according to clear MSU policies

and training, Gupta was not required to re-report information already reported to

OIE. The Report acknowledged that the MSU mandatory reporting policy is

ambiguous, but it ignored that the OGC Defendant and other MSU officials in the

Administration had represented that re-reporting information already reported to

OIE was *not* required.

127.    Defendant Woodruff's second stated rationale falsely claimed that

Gupta should have investigated and questioned the professor at issue about the

events at the end-of-the-year event. As set forth in detail above, and as the Report

by Quinn Emanuel confirmed, Gupta was *prohibited* from investigating and

questioning the professor, and Woodruff was wrong about MSU policies.

128.   Defendant Woodruff's third stated rationale falsely claimed that Gupta

had a duty to notify FASA about the OIE reporting. MSU's Title IX policies and

procedures impose any reporting duty on OIE, not the Dean, as Quinn Emanuel

confirmed in its Report. In any event, OIE did notify FASA and Gupta promptly

directed his staff to consult  with FASA upon his receipt of the early OIE

notification.

129.   Defendant Woodruff's fourth stated rationale falsely claimed that

Gupta had somehow allowed the professor to resign in response to the OIE report,

and to submit papers to human resources personnel in FASA for certain leave-to-

retire benefits in an effort to cover up the professor's alleged wrongdoing. Those

allegations are false as confirmed by Quinn Emanuel. As set forth above, in March

2022, the professor had informed appropriate personnel that he was leaving MSU,

which would be effective June 30, 2022. As for the leave benefits, Gupta was not

aware of nor involved in any of the administrative process regarding leave benefits

that the professor had applied for or may have been entitled to receive.

130.   The fifth stated rationale by Defendant Woodruff was similarly a false

pretext. She falsely claimed that Gupta had somehow improperly allowed the

professor to teach at another school during the summer break contrary to MSU

policies. But for several years, the Provost Office had previously reviewed and

approved in writing the professor's summer teaching. Moreover, Gupta as Dean was not involved in the process of that review and approval, which was handled by other Broad College administrative personnel working with the Provost Office.

131.   Defendant Austin's August 2022 FASA memo purporting to justify the adverse personnel actions also contains numerous false statements, as Quinn Emanuel's investigation revealed in its Report. Defendant Woodruff used Defendant Austin's August 2022 FASA memo to justify Woodruff's termination and discipline of Gupta.

132.   Thus, Defendant Woodruff's stated rationales for the removal of Dean Gupta and other adverse employment actions were false and pretextual.

### Defendants' Violations of Gupta's Due Process Rights

133.   Defendants failed to give proper written notice of any purported policy violations or other due process to defend himself.

134.   Specifically, the OIE Defendants failed to give Gupta proper written notice that he allegedly failed to report to OIE.

135.   Defendant Woodruff failed to give Gupta any notice of her purported rationales for terminating him and returning him to the faculty without an endowed professorship. Defendant Woodruff never afforded Gupta any meaningful opportunity to respond to any of the five purported rationales.

136.   As the Report concluded, Defendant Woodruff further violated MSU's Discipline Policy that contains procedural safeguards by failing to apply that Policy at all.

137.    Defendants failed to comply with MSU policies and procedures and Broad College policies and procedures that required proper review by a properly constituted committee prior to removal of any endowed chair position. Moreover, Defendants failed to comply with those policies and procedures which required that any endowed chair position be removed only for cause.

138.    Defendants refused to permit Gupta to refute or appeal the false findings in the OIE August 8 report.

139.    Defendants refused to permit Gupta to file a grievance for the adverse employment actions.

140.    Defendants refused to grant Gupta's request for a name-clearing hearing. Specifically, the OGC Defendant denied the request for a name-clearing hearing in February 2022 prior to the filing of the Complaint in this action.

### Defendants' Violations of Gupta's Equal Protection Rights

141.    Defendants' disciplinary and adverse employment actions – immediate termination of the Dean appointment and immediate termination of the endowed chair position – were unwarranted and overly harsh as compared to all other similarly situated personnel and violated Gupta's federal and state equal protection rights.

142.    On information and belief, Defendants discriminated against Gupta in treating him far differently from any other person who was not Indian.

143.    All other MSU faculty and administrators who allegedly violated the mandatory reporting policy were treated far differently than Defendants treated

Gupta. No other MSU personnel were removed from their administrative position, endowed chair, or publicly excoriated in the same manner that Defendants imposed on Gupta.

144. The Report by Quinn Emanuel reveals the starkly unequal treatment Gupta received compared to others similarly situated. Of the nineteen cases at MSU finding a mandatory reporting failure from 2018 to 2022, eight cases had no record of discipline; nine cases resulted in verbal counseling or additional training; and the remaining two cases resulted in a verbal warning and a three-day suspension. Ex. A, pp. 69-70. No case has involved Gupta's extreme, publicly disclosed, and defamatory punishment. Another employee with a reporting failure for the same incident as Gupta only received additional training, as customary. *Id.,* pp. 7, 71-72. Two other employees were never investigated despite waiting approximately five months to report to OIE due to their understanding of not being obligated to re-report duplicate information. *See id.* Within weeks, Gupta was freely discussing with FASA and OIE what he had heard from others. *Id.*, pp. 65-75.

145. The Report further found that Defendant Woodruff never considered Gupta's prior track record, as set forth in MSU's Discipline Policy. *Id.,* p. 73. Gupta had never been investigated for failing to report, and Gupta had diligently reported at least two other incidents he learned about from potential claimants. *Id.,* pp. 69-75. Defendant Woodruff and the other Administrative Defendants, however, nonetheless continued to justify their misconduct by falsely stating that Gupta was "intentionally cover[ing] up the [professor's] alleged misconduct." *Id.,* pp. 27, 74.

33

**The Quinn Emanuel Investigation: Gupta's Transparency and Full Cooperation and Defendants' Efforts to Stop and Interfere with the Investigation**

146.    On or about August 30, 2022, because Defendant Woodruff's purported rationales for terminating Gupta raised many questions, the Board of Trustees retained outside counsel, Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel"), to conduct two important independent reviews and to report its findings to the Board.

147.    As the Board publicly explained on October 11, 2022, the first review involved a comprehensive assessment of the policies and procedures of the Office for Civil Rights and Title IX Education and Compliance. The second review examined the circumstances surrounding the departure of Sanjay Gupta as the Dean of the Eli Broad College of Business.

148.    The Board wrote on October 11, that the Board's "Bylaws make clear that the Board is tasked with ensuring that University employees are treated 'in accordance with the law and [the University's] internal policies and regulations, including oversight of a program structured along the fundamentals of basic due process[] for the hearing and resolving of important, significant, and serious employee complaints,' and the Board must take 'prompt action on urgent . . . personnel matters necessary to the best interests of the University.'" (Oct. 11, 2022 Email from Board of Trustees, quoting the Bylaws, Art. 7, ¶¶ 4, 5, 15).

149.    The Board also noted that its Policy Manual required the Board and the Committee on Audit, Risk and Compliance to protect the University from risk,

34

"drive accountability," and "'review any violations and failures to comply with federal, state, and local laws, rules and regulations, as well as institutional policies.'" (Oct. 11, 2022, Email from Board of Trustees, quoting the Policy Manual, 01-01-09).

150.   The Board stated that it expected the Quinn Emanuel investigation would "provide clarity regarding the facts leading to Dr. Gupta's departure, including whether the University's procedures were carried out in compliance with federal, state, and local laws, rules and regulations, and institutional policies.

151.   Defendants Stanley and Woodruff, however, publicly opposed the investigation into their conduct and refused to cooperate in the investigation. Defendants Stanley and Woodruff publicly discouraged MSU personnel from providing facts to Quinn Emanuel.

152.   Defendant Jeitschko, who has authority as Interim Provost to review and approve promotions submitted by Broad College, has also intimidated MSU employees from cooperating and providing facts in the investigation. He provided a statement to Quinn Emanuel describing his opposition to the investigation. Ex. A at 100.

153.   The OIE Defendants refused to be interviewed and then did not give substantive answers and no information in response to Quinn Emanuel's questions.

154.   Defendant Woodruff refused to be interviewed until January 2023, after learning that Gupta had spent hours being transparent with Quinn Emanuel.

155.   Quinn Emanuel identified 33 relevant witnesses it wished to interview but only 11 agreed to be interviewed and 22 refused, including the two Broad College administrators who had reported to OIE.

## Defendants' False and Defamatory Statements

156.   As detailed above, Defendants have publicized repeated false and defamatory statements regarding Gupta that are defamatory *per se*.

157.   First, the August 8 OIE Report contains false statements as detailed above.

158.   Second, Defendant Austin's FASA memorandum that was disseminated to others purportedly justifying the pretextual reasons for the wrongful termination, and that memorandum contains false and defamatory statements.

159.   Third, the press release and statements to the press by Defendant Guerrant regarding Gupta on or about August 12 and August 15, 2022, were false and defamatory because they falsely state that Gupta voluntarily resigned because of his purported violation of the mandatory reporting policies, "concerns about leadership," and "poor administrative oversight." Defendant Guerrant's statement impugned Gupta's "integrity and professionalism."

160.   At a MSU Faculty Senate meeting on September 13, 2022, Defendant Woodruff made further false and defamatory statements, falsely asserting that MSU "policies and procedures were all duly followed" in her termination of Dean Gupta, and that the decision was "neither capricious nor malicious." Defendant

Woodruff knew these statements were false and made these statements with malice and with knowledge of or reckless disregard for the truth.

161.    In addition, Defendant Jeitschko made further false and defamatory statements to the Broad College Advisory Board during a Homecoming event on or about October 13, 2022, when he falsely stated that Gupta had engaged in numerous wrongful behaviors that were the rationales for termination and that the Quinn Emanuel investigation would confirm these purported rationales. These statements were false and defamatory and made with malice and with knowledge of or reckless disregard for the truth.

### Irreparable Harm Suffered by Gupta as a Result of Defendants' Actions

162.    Gupta has suffered irreparable harm to his reputation. For example, as a result of Defendants' defamatory statements, members of the public continue to believe that Gupta was removed because he purportedly committed a sexual offense.

163.    Gupta's good name has been stigmatized by the public, defamatory statements described above.

164.    If the OIE report is not corrected and Gupta is not reinstated as Dean, he will continue to suffer irreparable harm to his reputation, and he will be unable to obtain employment commensurate with his expertise and experience.

165.    Indeed, Gupta has already been foreclosed from career opportunities as a result of the due process and equal protection violations, breaches of contract

including violations of MSU policies, tortious interference, and defamation by
Defendants, including opportunities to serve on boards of directors.

166.    Gupta has suffered substantial monetary damages as well, by having
his annual compensation reduced in August by approximately $160,000 and by
being deprived of his endowed chair benefits of reimbursement of up to $15,000 in
expenses.

167.    The Trustee Defendants, along with the other Defendants, have the
authority to grant any and all equitable relief to Plaintiff to rectify Defendants'
constitutional violations.

### COUNT I – 42 U.S.C. §1983 – Fourteenth Amendment
### Procedural Due Process
### Property and Liberty Interests
(as to all Defendants in their Official Capacities as to Prospective Relief and
as to all Defendants in their Personal Capacities as to Legal Relief)

168.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set
forth herein.

169.    The Fourteenth Amendment to the United States Constitution
provides that no state shall "deprive any person of life, liberty, or property, without
due process of law."

170.    Fourteenth Amendment due process protections are required in higher
education disciplinary decisions at public institutions.

171.    Plaintiff had a property interest in his 2015 employment agreement in
having Defendants comply with the express terms of that employment agreement
and the MSU policies and procedures. The 2015 employment agreement and MSU

38

Bylaw 2.1.4.5 required that any termination of Gupta's deanship could be accomplished only by a decision of the Provost *and* the President, but here Defendant Woodruff violated that contract and MSU Bylaw 2.1.4.5 by unilaterally terminating Gupta's deanship.

172.   Second, the 2015 employment agreement also provided that upon the end of Gupta's deanship, he would be returned to the faculty and "[u]pon [his] return to the faculty, [he] will be appointed as John A. Hannah Professor, Broad Professor, or other available endowed professorship in the Broad College, with research support in effect at that time." Defendant Woodruff, however, breached that contract provision by directing Gupta in writing on August 12, 2022 that he would "return to the faculty as a tenured professor, unaccompanied by a named or endowed professorship." The Report concluded that Gupta was removed and "not given the John A. Hannah Professor endowed chair (or its equivalent) upon his return to the faculty, as his contract guaranteed."

173.   Defendants Austin, Jeitschko and the OGC Defendant knowingly provided substantial assistance to Defendant Woodruff in Woodruff's violations of Gupta's property rights in his 2015 employment contract and MSU Bylaw 2.1.4.5, including by preparing the August 12, 2022 termination papers that Defendant Woodruff delivered to Gupta on that date, drafting "talking points" ahead of time, and contacting Judith Whipple, whom they intended to name as Interim Dean after Gupta's deandship was terminated on August 12, 2022.

174.    Additionally, Defendant Stanley knowingly provided continued and substantial assistance to Defendant Woodruff in an attempt to cover up the due process violations by stating after the deanship termination that he "fully supported" Woodruff's decision. Defendant Stanley also refused to cooperate in Quinn Emanuel's investigation and publicly opposed the investigation.

175.    The MSU policies and procedures that the Administrative Defendants violated include the MSU Discipline Policy that the Report found Defendant Woodruff failed to apply at all and that if applied, the discipline actually imposed was unduly harsh, unprecedented and unwarranted. The MSU Discipline Policy is attached as Exhibit E.

176.    In addition, MSU had a separate written policy preventing any removal of Gupta's endowed chair except pursuant to cause as found by a properly constituted committee. None of the Defendants complied with that policy, which is attached as Exhibit F.

177.    Plaintiff was entitled to notice and a meaningful opportunity to be heard, and prior to the deprivation of his property interest.

178.    Plaintiff has a protected liberty interest in his good name, reputation, honor, and integrity of which he cannot be deprived by the state absent due process.

179.    As described in detail above, the Administrative and OIE Defendants employer made stigmatizing statements in conjunction with Plaintiff's termination and adverse personnel actions; Defendants' statements in the August 2022 OIE Memo and public press release are more than mere allegations of improper or

inadequate performance; the statements were made public; the statements are false; and Defendants' public dissemination of the statements was voluntary.

180.  Plaintiff requested a name-clearing hearing in February 2023 prior to filing suit, but that request was categorically denied by the OGC Defendant on behalf of all Defendants.

181.  Plaintiff is entitled to process commensurate with the seriousness of the allegations and the discipline imposed and repercussions he was facing. Here, the allegations are of the utmost seriousness, have lifelong ramifications, and are extremely defamatory in nature.

182.  As demonstrated above, each of the Administrative, OGC and OIE Defendants actively and voluntarily participated in the violation of Plaintiff's constitutional rights. Defendants know that Plaintiff has a clearly established right to due process and equal protection protections, and a reasonable person would know that failing to apply those standards of review would violate Plaintiff's due process rights.

183.  Additionally, since Quinn Emanuel reported its findings to the Board, and by no later than the publication of the Report, the Trustee Defendants have been aware of the ongoing violations of Plaintiff's civil rights described above and continue to fail to correct those continuing civil rights violations. As set forth above, the Trustee Defendants have the authority and responsibility to act to rectify these wrongdoings.

184.   Providing a due process protection imposes no administrative burden on MSU, which provides due process for persons accused of violating the RVSM Policy. Here, Gupta was given no opportunity to correct the false statements in the August 8, 2022 OIE Memorandum sent by Defendant Towe to Defendants Woodruff and Austin on August 2, 2022.

185.   Nor was Gupta ever provided any notice of the five purported rationales Defendant Woodruff has given justifying her termination decision. According to the Report, on August 18, 2022, Defendant Woodruff sent a written memo to the Board of Trustees articulating her five purported rationales. No Defendant has ever provided Gupta with the August 18 memo and no Defendant has given Gupta any meaningful opportunity to respond to the false assertions by Defendant Woodruff.

186.   In sum, Defendants violated Gupta's due process rights both pre-termination and post-termination. Defendants did not afford Gupta meaningful notice and opportunity to be heard prior to the adverse personnel actions and Defendants did not afford and continue to not afford Gupta any post-termination opportunity to clear his name.

187.   As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, continues to suffer, and will suffer irreparable harm, injury, and damages, including but not limited to the loss of the Dean appointment, the loss of the endowed chair, loss of board and other future opportunities, mental and

emotional distress, humiliation and embarrassment, and loss of personal and professional reputation.

188.   Gupta's injuries are ongoing and can be corrected by granting prospective relief by ordering Defendants in their official capacities to correct the false and defamatory public statements regarding Gupta, correcting the false OIE memorandum, reinstating Gupta as Dean of the Eli Broad College of Business, reinstating Gupta to an endowed chair position, and directing Defendants not to retaliate against Gupta for exercising his civil rights. Gupta requests this prospective relief from all Defendants in their official capacities. Gupta has specifically named the Trustee Defendants to seek this relief because the Administrative Defendants have asserted that they lack authority to grant any such prospective relief.

189.   In addition, pursuant to Section 1983, Gupta seeks compensatory and punitive damages from Defendants in their personal capacities only, for the past wrongs and injuries suffered, along with attorneys fees and costs pursuant to Section 1988.

### COUNT II – 42 U.S.C. §1983 – Fourteenth Amendment Equal Protection Rights
(as to all Defendants in their Official Capacities as to Prospective Relief and as to all Defendants in their Personal Capacities as to Legal Relief)

190.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

191.    The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

192.    Fourteenth Amendment equal protection rights apply in higher education disciplinary decisions at public institutions.

193.    Defendants know that Plaintiff has a clearly established right to equal protection, and a reasonable person would know that failing to treat Plaintiff in the same way as similarly situated personnel under federal and state law and MSU policies would violate Plaintiff's equal protection rights.

194.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered, continues to suffer, and will in the future suffer irreparable harm, injury, and damages, including but not limited to the loss of the Dean appointment, the loss of the endowed chair, loss of board and other future opportunities, mental and emotional distress, humiliation and embarrassment, and loss of personal and professional reputation.

195.    Gupta's injuries are ongoing and can be corrected by granting prospective relief by ordering Defendants in their official capacities to correct the false and defamatory public statements regarding Gupta, correcting the false OIE memorandum, reinstating Gupta as Dean of the Eli Broad College of Business, reinstating Gupta to an endowed chair position, and directing Defendants not to retaliate against Gupta for exercising his civil rights. Gupta requests this prospective relief from all Defendants in their official capacities. Gupta has

44

specifically named the Trustee Defendants to seek this relief because the Administrative Defendants have asserted that they lack authority to grant any such prospective relief.

196.   In addition, pursuant to Section 1983, Gupta seeks compensatory and punitive damages from Defendants in their personal capacities only, for the past wrongs and injuries suffered, along with attorneys fees and costs pursuant to Section 1988.

## COUNT III – Tortious Interference with Contract
(as to Defendant Woodruff in Her Personal Capacity)

197.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

198.   Plaintiff had a valid employment contract under Michigan law with MSU pursuant to his 2015 employment agreement.

199.   Plaintiff also had a contract with MSU under Michigan law based on MSU's Discipline Policy, MSU Bylaw 2.1.4.5, and the Broad College Endowed Position Guidelines. Gupta had legitimate and reasonable expectations that Defendants would comply with the provisions in his 2015 employment agreement and MSU's policies and bylaws.

200.   Although Plaintiff's Deanship position was "at-will" and the President could terminate that position, as Quinn Emanuel's Report states, Gupta could not be terminated if the reason was unlawful. Exhibit A, Report, p. 51. Gupta's termination as Dean was unlawful.

201.    First, Defendant Woodruff did not have unilateral authority as Provost to terminate his Deanship as set forth in his 2015 employment contract and pursuant to MSU Bylaw 2.1.4.5, which requires both the Provost and the President to participate in the decision to remove a Deanship. Defendant Woodruff represented to Quinn Emanuel that she alone had authority to remove Gupta as Dean, which is false and violates the contract and MSU's Bylaw.

202.    Second, Defendant Woodruff's termination of the Deanship was unlawful because it was based on false pretexts, and she violated his due process and equal protection rights in the termination process as described above.

203.    In addition, Defendant Woodruff violated Gupta's contract which required him to be appointed to an endowed professorship upon his return to the faculty, as Quinn Emanuel found. Returning Gupta to the faculty without his endowed chair also violated the University's Discipline Policy.

204.    Defendants knew about Plaintiff's 2015 employment contract appointing him Dean of the Broad College, which was renewed in 2020.

205.    Plaintiff's employment contract with MSU also included the policies and procedures for removal of an endowed chair position, which required certain processes and establishment of cause for removal.

206.    Defendant Woodruff intentionally interfered with Plaintiff's employment contract, causing MSU to breach the contract by, among other things, removing the endowed chair position without cause and without following the MSU policies; and failing to return Plaintiff to the faculty with an endowed professorship.

46

207.   Plaintiff suffered damage as a result of the tortious interference with his contract, including but not limited to loss of income and loss to personal and professional reputation.

208.   Defendant Woodruff tortiously interfered with Plaintiffs' contract by acting intentionally with malice and were unjustified in making their false statements about the purported rationales for termination and removal for the purpose of invading Plaintiff's contract rights.

### COUNT IV – Aiding and Abetting Tortious Interference with Contract
(as to Defendants Jeitschko, Stanley, Austin, Guerrant, Quinn, Schmidtke and Towe in their Personal Capacities)

209.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

210.   Plaintiff had a valid employment contract with MSU pursuant to his 2015 employment agreement.

211.   Defendants knew about Plaintiff's 2015 employment contract appointing him Dean of the Broad College, which was renewed in 2020.

212.   Plaintiff's employment contract with MSU also included the policies and procedures for removal of an endowed chair position, which required certain processes and establishment of cause for removal.

213.   Defendants named in this Count knowingly provided substantial assistance to Defendant Woodruff to assist her in her tortious interference with Plaintiff's employment contract, by, among other things, assisting in drafting memos purporting to justify the termination, drafting and publicizing false and

47

defamatory statements regarding Gupta and his termination, drafting termination papers dated August 12, 2022 to be issued to Gupta, drafting false OIE memos regarding Gupta, reversing course and re-opening the OIE file into the professor at issue at the behest of the OCG Defendant and the Administrative Defendants in an effort to cover up their wrongful and unjustified termination of Gupta. These Defendants continued to provide substantial assistance by refusing to cooperate in the Quinn Emanuel investigation. This aiding and abetting conduct caused and continues to cause MSU to breach the contract by, among other things, removing the endowed chair position without cause and without following the MSU policies; and failing to return Plaintiff to the faculty with an endowed professorship.

214.    Plaintiff suffered damage as a result of the tortious interference with his contract, including but not limited to loss of income and loss to personal and professional reputation.

### COUNT V – Defamation
(as to Defendants Woodruff, Jeitschko, Guerrant, Quinn and Towe in their Personal Capacities)

215.    Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

216.    Defendants named in this Count made repeated false and defamatory statements concerning Plaintiff, as detailed above.

217.    Defendants' false and defamatory statements were not privileged communications and were made to third parties, including the press, the Board of Trustees, MSU faculty members, and the Broad College Advisory Board.

218.    Defendants' false and defamatory statements were defamatory *per se* because they impugned Plaintiff's reputation and employment status.

219.    Defendants made such false and defamatory statements negligently, recklessly without regard to the truth, knowing that the statements were false, and/or acted with malice toward Plaintiff in making them in order to impugn Plaintiff and prevent him from being a viable candidate for the Presidency for their own personal benefit in promoting Defendant Woodruff as President.

**RELIEF REQUESTED**

Plaintiff demands judgment against Defendants as follows:

**A.  Equitable Relief:**

1.  A prospective injunction from this Court reinstating Gupta as Dean of the Broad College and reinstating his endowed chair position because the process that led to his removal was unconstitutional and deprived Plaintiff of due process and equal protection and violated his constitutional rights and the injuries and violations are ongoing;

2.  A ruling that, as a matter of law, Plaintiffs' due process and equal protection constitutional rights were violated and are continuing to be violated;

3.  An injunction from this Court prohibiting any further acts of civil rights violations, intimidation, or retaliation; and

4.  An ancillary award of interest, costs, and reasonable attorneys' fees; and

5.  Any additional equitable relief that appears appropriate at the time of final judgment.

**B.  Legal Relief:**

1.  Compensatory, economic, and noneconomic damages in whatever amount Plaintiff is found to be entitled;

2.  Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

3.  An award of interest, costs, reasonable attorneys' fees, and expert witness fees.

## JURY DEMAND

Plaintiff Sanjay Gupta, by and through his attorneys, demands a trial by jury of all of the issues in this cause that are so triable.

Dated: June 12, 2023                          Respectfully submitted,

                                             /s/ *Nancy A. Temple*
                                             Nancy A. Temple
                                             Richard Kapnick
                                             William Bruce
                                             Katten & Temple, LLP
                                             209 S. LaSalle Street, Suite 950
                                             Chicago, IL 60604
                                             (312) 663-0800
                                             ntemple@kattentemple.com
                                             rkapnick@kattentemple.com
                                             wbruce@kattentemple.com

50

CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on **June 12, 2023**, I electronically filed the foregoing **Plaintiff's First Amended Complaint** with the Clerk of the Court using the CM/ECF system which sent notification of filing to all counsel of record.

/s/  *Nancy A. Temple*
Nancy A. Temple
Richard Kapnick
William Bruce
Katten & Temple, LLP
209 S. LaSalle St., Ste. 950
Chicago, IL  60604
(312) 663-0800
ntemple@kattentemple.com
rkapnick@kattentemple.com
wbruce@kattentemple.com